UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>BLUEHIPPO FUNDING, LLC,<br><br>and<br><br>BLUEHIPPO CAPITAL, LLC,<br><br>Defendants. | JUDGE CROTTY<br><br>08 CV 1819<br><br>CIVIL NO.<br><br>RECEIVED<br>FEB 22 2008<br>U.S.D.C. S.D. N.Y.<br>CASHIERS |

**COMPLAINT FOR INJUNCTIVE AND
OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), through its undersigned attorneys, for its Complaint alleges:

1. Plaintiff brings this action under Sections 5(a)(1), 13(b), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 53(b), and 57b; the Commission's Trade Regulation Rule Concerning the Sale of Mail or Telephone Order Merchandise (the "Mail Order Rule"), 16 C.F.R. Part 435; the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. Part 205; and the Truth In Lending Act ("TILA"), 15 U.S.C. §§1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226, to secure injunctive and other equitable relief against defendants for engaging in unfair or deceptive acts or practices in violation of the FTC Act, the Mail Order Rule, EFTA and Regulation E, and TILA and Regulation Z.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337(a), and under 15 U.S.C. §§ 45(a), 53(b) and 57b.

3. Venue in the Southern District of New York is proper under 15 U.S.C. § 53(b) and under 28 U.S.C. §§ 1391(b) and (c) and 1395(a).

## THE PARTIES

4. Plaintiff Federal Trade Commission is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC may initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act and secure appropriate equitable relief, including restitution and other equitable relief for injured consumers. 15 U.S.C. § 53(b).

5. Defendant BlueHippo Funding, LLC ("BHF") is a Maryland limited liability company with its office and principal place of business at 7000 Security Blvd., Baltimore, Maryland 21244. BHF is a retail lender licensed in 2001 by the State of Maryland to make retail loans to consumers. BHF transacts or has transacted business in the Southern District of New York.

6. Defendant BlueHippo Capital, LLC ("BHC") is a Virginia limited liability company with its office and principal place of business at 7000 Security Blvd., Baltimore, Maryland 21244. BHC transacts or has transacted business in the Southern District of New York.

## COMMERCE

7.      The acts and practices of defendants alleged in this Complaint are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' COURSE OF CONDUCT

8.      Since at least June 2003, defendants have marketed and sold high-end consumer electronics, including personal computers and plasma televisions, to consumers with poor or no credit. Defendants purport to extend credit to the consumers to finance the purchase of products through low periodic payments. Defendants do not maintain inventory or ship merchandise directly to consumers. Defendants order merchandise from third-party vendors to be shipped directly to consumers once the consumers have met the requirements for delivery.

9.      Defendants nationally advertise the products that they finance on their Internet website, www.bluehippofunding.com, and in television and radio commercials disseminated throughout the United States.

10.     An illustrative radio advertisement by defendants states:

> Do you want to own a computer but have less than perfect credit, bad credit, no credit? No problem. If you have a checking account, a home phone and can afford a weekly payment of just $35 for only 12 months, BlueHippo Funding says you're approved, guaranteed.
>
> You heard right. You're approved for a brand new, name brand computer for as little as $35 for just 12 months. Call 1-800-700-8188. All credit is accepted, so you will not be turned down. If you have a checking account, a home phone and can afford a weekly payment of $35 for only 12 months, you're already approved, guaranteed.

11.     Defendants also have disseminated or have caused to be disseminated advertisements and information on the website for defendants' products, including but not limited to the following:

> Q: How does this program work?
>
> A: It's simple. Instead of checking your credit, and measuring you based on your credit history, all we ask is that you pay just $99 down and make 13 weeks worth of payments. Once those payments have been made, and we have received the required signed paperwork (which is sent out to you right after your order has been processed), your computer will be shipped out to your home via FedEx or UPS. Then you continue making payments until the computer is paid off.

12. The vast majority of defendants' customers order defendants' products by calling a toll-free telephone number provided in their television and radio commercials and listed on defendants' website. Consumers can also order directly from the website. When consumers call defendants' toll-free telephone number or place orders on the website, defendants typically promise consumers that defendants will have the consumer electronics product delivered directly to consumers as soon as they have made 13 required weekly payments. Defendants collect consumers' mailing addresses, employment information and bank account information from which the consumers' payments will be made by automatic debiting.

13. Defendants set up payment plans for consumers whereby they are required to pay defendants a down payment ranging from $99 to $124 by automatic debiting from their bank accounts. Thereafter, according to the payment plan, defendants debit periodic, weekly or bi-weekly payments from the consumers' bank accounts, ranging from $36 to $88. In numerous instances, defendants do not disclose to consumers the applicable finance terms before they debit consumers' accounts.

14. In numerous instances, defendants debit consumers' bank accounts on the same day or shortly after they take the consumers' telephone orders, and continue such debits according to the payment plan, before obtaining consumers' written authorization.

> Q: How does this program work?
>
> A: It's simple. Instead of checking your credit, and measuring you based on your credit history, all we ask is that you pay just $99 down and make 13 weeks worth of payments. Once those payments have been made, and we have received the required signed paperwork (which is sent out to you right after your order has been processed), your computer will be shipped out to your home via FedEx or UPS. Then you continue making payments until the computer is paid off.

12. The vast majority of defendants' customers order defendants' products by calling a toll-free telephone number provided in their television and radio commercials and listed on defendants' website. Consumers can also order directly from the website. When consumers call defendants' toll-free telephone number or place orders on the website, defendants typically promise consumers that defendants will have the consumer electronics product delivered directly to consumers as soon as they have made 13 required weekly payments. Defendants collect consumers' mailing addresses, employment information and bank account information from which the consumers' payments will be made by automatic debiting.

13. Defendants set up payment plans for consumers whereby they are required to pay defendants a down payment ranging from $99 to $124 by automatic debiting from their bank accounts. Thereafter, according to the payment plan, defendants debit periodic, weekly or bi-weekly payments from the consumers' bank accounts, ranging from $36 to $88. In numerous instances, defendants do not disclose to consumers the applicable finance terms before they debit consumers' accounts.

14. In numerous instances, defendants debit consumers' bank accounts on the same day or shortly after they take the consumers' telephone orders, and continue such debits according to the payment plan, before obtaining consumers' written authorization.

15. When consumers call defendants' toll-free telephone number and order consumer electronics, defendants tell consumers that they will soon receive a "shipping verification form" setting forth the terms of the sale and shipment information, and that consumers are required to sign and return the form to defendants in order to ensure delivery of their products. Defendants' shipping verification form contains material terms that, in numerous instances, previously were not disclosed to consumers, including disclosures regarding the applicable finance terms.

16. In numerous instances, defendants fail to provide shipping verification forms and revolving account agreements to consumers before defendants have debited one or more payments from consumers' bank accounts, and thus fail to timely disclose the applicable finance terms and refund policy contained in these documents.

17. Before March 2006, defendants had a strict policy of not refunding any payments to consumers who ceased to make payments, regardless of how much the consumer had paid to BHF, regardless of whether BHF or the consumer was the breaching party, and regardless of whether or not BHF had ordered the merchandise from a third-party vendor. As a result, numerous consumers paid defendants from $99 to several hundred dollars and received no merchandise in return.

18. In numerous instances, BHF failed to clearly and conspicuously disclose this policy to consumers before debiting consumers' accounts. As a result, numerous consumers did not have the opportunity to make a timely and informed decision about whether or not to risk the potential loss of up to several hundred dollars in advance payments. In numerous instances, consumers could only avoid making continued non-refundable payments by forfeiting the payments they had already made.

19.   Defendants typically represent that consumers will receive their products after a specified number of periodic debits, but in numerous instances defendants do not ship the products to consumers in the time promised. In numerous instances, defendants provide consumers with a new shipment date, but fail to ship by the newly promised date.

20.   Defendants do not send delay notices to consumers when they are unable to ship the consumers' products on the dates promised, and defendants do not offer consumers the option of cancelling their orders and receiving refunds. Defendants instead tell consumers who ask to cancel their transactions and receive refunds that their payments are non-refundable. In numerous instances, defendants deliver the products many weeks or months after the delivery was promised to consumers. In numerous instances, consumers who ordered their products before March 2006 did not receive timely delivery and ceased making payments. Defendants did not ship any merchandise or provide any refund to such consumers

## COUNT ONE

21.   In connection with the marketing, offering for sale, or sale of consumer electronics, including personal computers and televisions, defendants have represented, expressly or by implication, that purchasers of defendants' products who make the required periodic payments would receive the items purchased within the times stated by defendants.

22.   In truth and in fact, in numerous instances, purchasers of defendants' products who make the required periodic payments do not receive the items purchased within the times stated by defendants. Therefore, the representation set forth in Paragraph 21 was and is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

## COUNT TWO

23. In numerous instances, in connection with the marketing, offering for sale, or sale of consumer electronics, including personal computers and televisions, defendants fail to disclose to consumers until after defendants have debited one or more payments from consumers' bank accounts, that their payments are not refundable, even if consumers never receive the ordered product.

24. Defendants' practice set forth in Paragraph 23 causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers and is not outweighed by countervailing benefits to consumers or competition.

25. Defendants' practice set forth in Paragraph 23 is an unfair practice in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).

## THE MAIL ORDER RULE

26. The Mail Order Rule was promulgated by the Commission on October 22, 1975, under the FTC Act, 15 U.S.C. § 41 et seq., and has been in full force and effect since that date. The Commission amended the Rule on September 21, 1993, under Section 18 of the FTC Act, 15 U.S.C. § 57a, and these amendments became effective on March 1, 1994.

27. The Mail Order Rule applies to orders placed by mail, telephone, facsimile transmission, or the Internet, and it sets forth the obligations of the seller regarding shipment dates and the rights of the consumer to cancel and receive a refund if the seller cannot meet its specified shipment date.

## COUNT THREE

28. At all times material herein, defendants have engaged in the mail order sale or telephone order sale of personal computer and television products in commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

29. In numerous instances, in connection with the marketing, offering for sale, or sale of consumer electronics, including personal computers and televisions, defendants have violated the Mail Order Rule by:

   a. Soliciting orders for the sale of telephone or mail order merchandise when they had no reasonable basis to expect that they would be able to ship some or all of such merchandise within the time stated in the solicitation or, if no time was stated clearly and conspicuously in the solicitation, within fifty (50) days after receipt of a properly completed order, thereby violating 16 C.F.R. § 435.1(a)(1); and

   b. Providing to the buyer a revised shipping date when they had no reasonable basis for making such representation, thereby violating 16 C.F.R. § 435.1(a)(2).

30. In numerous instances, in connection with the marketing, offering for sale, or sale of consumer electronics, including personal computers and televisions, having solicited mail orders or telephone orders for merchandise and having received "properly completed order[s]," as that term is defined in Section 435.2(d) of the Mail Order Rule, 16 C.F.R. § 435.2(d), and having been unable to ship some or all of the ordered merchandise to the buyer within the Mail Order Rule's applicable time, as set out in Section 435.1(a)(1) of the Mail Order Rule, 16 C.F.R. § 435.1(a)(1) (the "applicable time"), defendants have violated the Mail Order Rule by:

   a. Failing, within the applicable time, to provide the buyer a definite revised shipping date and an option either to consent to a delay in shipping or to cancel the order and receive a prompt refund, thereby violating 16 C.F.R. § 435.1(b)(1);

   b. Failing to offer the buyer a prepaid means of exercising the buyer's options as described in 16 C.F.R § 435.1(b)(1), thereby violating 16 C.F.R. § 435.1(b)(3);

c.  Having received notification from the buyer cancelling the order prior to shipment, failing to deem the order cancelled and to make a prompt refund, thereby violating 16 C.F.R § 435.1(c)(1); and

d.  Having failed, within the applicable time, to offer the buyer an option either to consent to a delay in shipping or to cancel the order and receive a prompt refund, as required by 16 C.F.R § 435.1(b)(1), and also having failed to ship the merchandise within the applicable time, failing to deem the order cancelled and to make a prompt refund, thereby violating 16 C.F.R § 435.1(c)(5).

31. Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Mail Order Rule constitutes an unfair or deceptive act or practice in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1). Therefore, defendants' failures to comply with the provisions of the Mail Order Rule, 16 C.F.R. Part 435, as set forth in paragraphs 29 and 30 above, were and are unfair or deceptive acts or practices in violation of the FTC Act.

## THE TRUTH IN LENDING ACT

32. Defendants are "creditors" offering and/or extending to consumers an "open end credit plan," as these terms are defined in §§103(f) and (i) of TILA, 15 U.S.C.§§ 1602(f) and (i), and §§ 226.2(a)(17) and (20) of Regulation Z, 12 C.F.R. §§ 226.2(a)(17) and (20), and therefore are required to comply with the applicable provisions of TILA and Regulation Z.

33. Section 127(a) of TILA, 15 U.S.C. § 1637(a), and §§ 226.5(a) and (b) of Regulation Z, 12 C.F.R. §§ 226.5(a) and (b), require a creditor to make certain disclosures in writing in a form that the consumer may keep, to the person to whom credit is to be extended, before the first transaction is made under an open end consumer credit plan.

34. Section 127(a) of TILA, 15 U.S.C. § 1637(a), and § 226.6 of Regulation Z, 12 C.F.R. § 226.6, provide that before opening any account under an open end consumer credit plan, the creditor shall make required disclosures to the person to whom credit is to be extended, including, but not limited to, the conditions under which a finance charge may be imposed, the method of determining the balance upon which a finance charge will be imposed, the method of determining the amount of the finance charge, including any minimum or fixed amount imposed as a finance charge, each periodic rate that may be used to compute the finance charge, the range of balances to which it is applicable and the corresponding annual percentage rate, the amount of any other charge imposed or an explanation of how it will be determined, and a statement of billing rights.

35. Section 127(b) of TILA, 15 U.S.C. § 1637(b), and § 226.7 of Regulation Z, 12 C.F.R. § 226.7, require a creditor to provide a periodic statement for each billing cycle in which a finance charge is imposed.

## COUNT FOUR

36. In numerous instances, in connection with offering and extending consumer credit for the sale of consumer electronics, including personal computers and televisions, defendants have violated the requirements of TILA and Regulation Z by:

   a. Failing to disclose to consumers the required information in writing and before the first transaction is made, including but not limited to: the conditions under which a finance charge may be imposed, the method of determining the balance upon which a finance charge will be imposed, the method of determining the amount of the finance charge, including any minimum or fixed amount imposed as a finance charge, each periodic rate that may be used to compute the finance

charge, the range of balances to which it is applicable, the corresponding annual percentage rate, the amount of any other charge imposed or an explanation of how it will be determined, and a statement of billing rights, thereby violating Section 127(a) of TILA, 15 U.S.C. § 1637(a), and Regulation Z, 12 C.F.R. §§ 226.5(a) and (b) and 226.6(a), (b), and (d); and

    b.    Failing to provide an account statement for each billing cycle for which a finance charge is imposed, thereby violating Section 127(b) of TILA, 15 U.S.C. § 1637(b), and § 226.7 of Regulation Z, 12 C.F.R. § 226.7.

37.    Pursuant to § 108(c) of TILA, 15 U.S.C. § 1607(c), every violation of TILA and Regulation Z constitutes a violation of the FTC Act.

38.    By engaging in the violations of TILA and Regulation Z set forth in Paragraph 36 above, defendants also have engaged in violations of the FTC Act.

## THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E

39.    Defendants are "persons" as this term is defined in Section 205.2(j) of Regulation E, 12 C.F.R. § 205.2(j).

40.    Section 913(1) of the EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

41.    Section 205.10(e)(1) of Regulation E, 12 C.F.R. § 205.10(e)(1) provides that no financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account.

42. The Federal Reserve Board's Official Staff Commentary to Regulation E, Section 205.10(e)(1)-1, 12 C.F.R. § 205.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

## COUNT FIVE

43. In numerous instances, in connection with offering and extending consumer credit for the sale of consumer electronics, including personal computers and televisions, defendants have conditioned the extension of credit on mandatory preauthorized transfers, thereby violating Section 913(1) of the EFTA, 15 U.S.C. § 1693k(1), and Section 205.10(e)(1) of Regulation E, 12 C.F.R. §205.10(e)(1).

44. Pursuant to § 917(c) of the EFTA, 15 U.S.C. § 1693o(c), every violation of the EFTA and Regulation E constitutes a violation of the FTC Act.

45. By engaging in the violations of the EFTA and Regulation E set forth in Paragraph 43 above, defendants also have engaged in violations of the FTC Act.

## CONSUMER INJURY

46. Consumers throughout the United States have suffered and continue to suffer substantial monetary loss as a result of defendants' unlawful acts or practices. In addition, defendants have been unjustly enriched as a result of their unlawful practices. Absent injunctive relief by this Court, defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

47. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the FTC Act. The Court, in the exercise of its equitable jurisdiction, may award other

ancillary relief, including but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains, to prevent and remedy injury caused by defendants' law violations.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests this Court, pursuant to 15 U.S.C. §§ 45(a)(1), 53(b) and 57b, and to the Court's own equity powers to:

(A) Enter a permanent injunction to prevent future violations by defendants of the FTC Act, the Mail Order Rule, TILA and Regulation Z, and EFTA and Regulation E;

(B) Award such equitable relief as the Court finds necessary to redress injury to consumers resulting from defendants' violations of the FTC Act, including, but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains by defendants; and

(C) Award the plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: _____

Respectfully submitted,

WILLIAM BLUMENTHAL
General Counsel

Thomas A. Cohn
Director, Northeast Region

s/ Carole Paynter
_____
Carole A. Paynter (CP 4091)
Robin E. Eichen (RE 2964)
Federal Trade Commission
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829 (telephone)
(212) 607-2822 (facsimile)