UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  APR 1 0 2008

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  CIVIL NO. 08 CV 1819 (PAC) |
| | ) |
| BLUEHIPPO FUNDING, LLC, | ) |
| | ) |
| and | ) |
| | ) |
| BLUEHIPPO CAPITAL, LLC | ) |
| | ) |
| Defendants. | ) |

## STIPULATED FINAL JUDGMENT AND ORDER
## OF PERMANENT INJUNCTION

Plaintiff, Federal Trade Commission, having commenced this action pursuant to Sections

5(a)(1), 13(b), and 19 of the Federal Trade Commission Act, 15 U.S.C. §§ 45(a)(1), 53(b), and

57(b), the Commission's Trade Regulation Rule Concerning the Sale of Mail or Telephone Order

Merchandise, 16 C.F.R. Part 435, the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693-1693r,

and its implementing Regulation E, 12 C.F.R. Part 205, and the Truth-In-Lending Act, 15 U.S.C.

§§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226; and having filed its

Complaint for a permanent injunction and other relief in this matter, including consumer redress;

and the parties having agreed to the settlement of this action upon the following terms and

conditions:

### NOW, THEREFORE, IT IS HEREBY ORDERED,
### ADJUDGED AND DECREED AS FOLLOWS:

### Findings

1.     This Court has jurisdiction of the subject matter of this case and venue is proper in this District.

2.     The Complaint states a claim upon which relief may be granted against Defendants under Sections 5(a)(1), 13(b), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 53(b), and 57(b), the Commission's Trade Regulation Rule Concerning the Sale of Mail or Telephone Order Merchandise (the "Mail Order Rule"), 16 C.F.R. Part 435, the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. Part 205, and the Truth-In-Lending Act ("TILA"), 15 U.S.C. §§1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226.

3.     Defendants hereby waive all rights to appeal or otherwise challenge or contest the validity of this Order.

4.     Defendants have agreed that this Order does not entitle Defendants to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, and Defendants further waive any rights to attorneys' fees that may arise under said provision of law.

5.     Entry of this Order is in the public interest.

6.     By entry into this Order, Defendants do not admit to the allegations of the Complaint, other than jurisdictional facts.

### Definitions

For purposes of this permanent injunction, the following definitions shall apply:

1.     "Plaintiff" means the Federal Trade Commission.

2.     "Defendants" means BlueHippo Funding LLC, BlueHippo Capital LLC, and their successor or assigns, by whatever names they might be known.

3.     "Document" is synonymous in meaning and equal in scope to the usage of the

term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio, and video recordings, computer records, Internet sites, Web pages, web sites, electronic correspondence, including e-mail and instant messages, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

4.     "Eligible Purchaser" means any person who has made any payment to Defendants, directly or through any other entity, on or before February 28, 2006, related to the purchase of a computer, and who has not received the computer, nor a full refund of or restitution for such payments pursuant to any other Order, Voluntary Assurance or other Settlement entered into by the Defendants with any person or entity.

5.     "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

6.     "Covered Products" means any consumer electronics product and any other product for which Defendants require four or more periodic payments before shipping the product.

## I.

## PROHIBITED MISREPRESENTATIONS AND FAILURES TO DISCLOSE

**IT IS THEREFORE ORDERED** that, in connection with the advertising, marketing, offering for sale, or sale of Covered Products in commerce, Defendants, and their officers, agents, servants, independent contractors, salespersons, employees, attorneys, corporations, subsidiaries, affiliates, divisions, limited liability companies, sales entities, related entities and all other persons or entities in active concert or participation with any of them who receive actual

notice of this Order by personal service or otherwise, whether acting directly or through any

trust, corporation, subsidiary, division, or other device, including but not limited to fictitious

business names, are hereby permanently restrained and enjoined from:

A.    Making any express or implied representation of material fact that is false or

misleading, in any manner, orally or in writing, to any consumer or entity,

including but not limited to, misrepresenting that purchasers of Covered Products

who make the required periodic payments would receive the Covered Products

purchased within the times stated by Defendants;

B.    Making any representation regarding any refund, cancellation, exchange or

repurchase policy without disclosing clearly and conspicuously, prior to receiving

any payment from customers all material terms and conditions of any refund,

cancellation, exchange or repurchase policy, or if there is a policy of not making

any refunds, cancellations, exchanges, or repurchases whatsoever, a statement

informing the customer of such policy, prior to receiving any payment from

customers; and

C.    Failing to disclose clearly and conspicuously, prior to receiving any payment from

consumers, any policy of not refunding all payments if requested by the consumer

prior to delivery of the offered product or service.

## II.

### PROHIBITION AGAINST VIOLATING THE MAIL ORDER RULE

**IT IS FURTHER ORDERED** that, in connection with the advertising, marketing,

offering for sale, or sale of products or services in commerce, Defendants, and their officers,

agents, servants, independent contractors, salespersons, employees, attorneys, corporations,

subsidiaries, affiliates, divisions, limited liability companies, sales entities, related entities, and

all other persons or entities in active concert or participation with any of them who receive actual

notice of this Order by personal service or otherwise, whether acting directly or through any

trust, corporation, subsidiary, division, or other device, including but not limited to fictitious

business names, are hereby permanently restrained and enjoined from violating any provision of

the Mail Order Rule, 16 C.F.R. Part 435, a copy of which is attached hereto as Appendix A and

incorporated herein as if fully set forth verbatim, as it is currently promulgated or may be

hereafter amended.

### III.

### PROHIBITION AGAINST VIOLATING THE
### TRUTH IN LENDING ACT AND REGULATION Z

**IT IS FURTHER ORDERED** that, in connection with the offering or extension of

credit in commerce, pursuant to a plan or arrangement which is subject to the TILA, 15 U.S.C.

Section 1601-1666 and its implementing Regulation Z, 12 CFR Part 226, Defendants, and their

officers, agents, servants, independent contractors, salespersons, employees, attorneys,

corporations, subsidiaries, affiliates, divisions, limited liability companies, sales entities, related

entities, and all other persons or entities in active concert or participation with any of them, who

receive actual notice of this Order by personal service or otherwise, whether acting directly or

through any trust, corporation, subsidiary, division, or other device, including but not limited to

fictitious business names, are hereby permanently restrained and enjoined from violating any

provision of the TILA, 15 U.S.C. §§1601-1666j, and its implementing Regulation Z, 12 C.F.R.

Part 226, a copy of which is attached hereto as Appendix B, and incorporated herein as if fully

set forth verbatim, as it is currently promulgated or may be hereafter amended, including, but not

limited, to:

A.    In connection with the offering or extension of credit, pursuant to an open end

plan or arrangement:

1.    Failing to disclose to consumers the required information in writing and

before the first transaction is made, including but not limited to: the

conditions under which a finance charge may be imposed, the method of

determining the balance upon which a finance charge will be imposed, the

method of determining the amount of the finance charge, including any

minimum or fixed amount imposed as a finance charge, each periodic rate

that may be used to compute the finance charge, the range of balances to

which it is applicable, the corresponding annual percentage rate, and a

statement of billing rights, 15 U.S.C. §127(a), 12 C.F.R. §§226.5(a)-(b),

226.6 (a) and (d); and

2.    Failing to provide an account statement for each billing cycle for which a

finance charge is imposed, 15 U.S.C. § 127(b), 12 C.F.R. §226.7;

B.    In connection with the offering or extension of credit , pursuant to a close end

plan or arrangement, failing to make the following disclosures clearly and

conspicuously in writing, in a form that the consumer may keep:

1.    Failing to disclose the amount financed, using that term, and a brief

description such as *the amount of credit provided to you or on your behalf.*

The amount financed is calculated by:

  a.  Determining the principal loan amount or the cash price (subtracting any downpayment);

  b.  Adding any other amounts that are financed by the creditor and are not part of the finance charge; and

  c.  Subtracting any prepaid finance charge;

2. The number, amounts, and timing of payments scheduled to repay the obligation.

  a.  In a demand obligation with no alternate maturity date, the creditor may comply with this paragraph by disclosing the due dates or payment periods of any scheduled interest payments for the first year.

  b.  In a transaction in which a series of payments varies because a finance charge is applied to the unpaid principal balance, the creditor may comply with this paragraph by disclosing the following information:

    (1)  The dollar amounts of the largest and smallest payments in the series.

    (2)  A reference to the variations in the other payments in the series.

3. The total of payments, using that term, and a descriptive explanation such as "the amount you will have paid when you have made all scheduled payments"; and

4.    In a credit sale, the *total sale price*, using that term, and a descriptive explanation (including the amount of any downpayment) such as "the total price of your purchase on credit, including your downpayment of $___."

## IV.

## PROHIBITION AGAINST VIOLATING THE
## ELECTRONIC FUND TRANSFER ACT AND REGULATION E

**IT IS FURTHER ORDERED** that, in connection with the marketing, offering for sale, or sale of products or services in commerce, Defendants, and their officers, agents, servants, independent contractors, salespersons, employees, attorneys, corporations, subsidiaries, affiliates, divisions, limited liability companies, sales entities, related entities, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including but not limited to fictitious business names, are hereby permanently restrained and enjoined from conditioning the extension of credit on mandatory preauthorized transfers, in violation of the EFTA and its implementing Regulation E, 15 U.S.C. § 913(1); 12 C.F.R. § 205.10(e)(1).

## V.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.    Judgment is hereby entered in favor of the FTC and against Defendants in the amount of up to Five Million Dollars ($5,000,000.00) *provided*, that this judgment shall be satisfied pursuant to the Defendants' full compliance with the conditions set forth in Part VI of this Final Order.  If, upon motion by the Commission, the Court finds that Defendants failed to fully comply with those

conditions, the monetary judgment will be deemed unsatisfied and the entire

judgment amount will be immediately due and payable, less any amounts

Defendants have previously paid. Should this judgment be modified as to

monetary liability of Defendants, this Final Order in all other respects shall

remain in full force. Any proceedings instituted under this paragraph shall be in

addition to and not in lieu of any other proceedings the Commission may initiate

in order to enforce this Final Order.

B.     If the Commission, in its sole discretion, determines that redress is wholly or

partially impracticable or funds remain after redress is completed, the

Commission may apply any remaining funds for such other equitable relief

(including consumer information remedies) as it determines to be reasonably

related to the Defendants' practices alleged in the complaint, provided, however,

that in such event, the maximum amount payable by Defendants to the FTC shall

be Three Million Five Hundred Thousand Dollars ($3,500,000). Any funds not

used for such equitable relief shall be deposited in the United States Treasury as

disgorgement. The Commission in its sole discretion may use a designated agent

to administer consumer redress. Defendants acknowledge and agree that this

judgment for equitable monetary relief, as with all other relief provided in this

Order, is solely remedial in nature and is not a fine, penalty, punitive assessment,

or forfeiture.

C.     The Commission shall have full and sole discretion to:

1.     Determine the criteria for participation by individual claimants in any

consumer redress program implemented pursuant to this Order, provided

however, that redress shall be limited to Eligible Purchasers on the

Consumer Database, as hereinafter defined;

2.     Determine the manner and timing of any notices to be given to consumers

regarding the existence and terms of such programs; and

3.     Delegate any and all tasks connected with such redress program to any

individuals, partnerships, or corporations; and pay reasonable fees,

salaries, and expenses incurred thereby from the payments made pursuant

to this Order.

D.     Defendants expressly waive their rights to litigate the issue of disgorgement.

Defendants acknowledge and agree that all money paid pursuant to this Order is

irrevocably paid to the Commission for purposes of settlement between Plaintiff

and Defendants.

E.     Defendants agree that the facts as alleged in the Complaint filed in this action

shall be taken as true in any subsequent litigation filed by the Commission to

enforce its rights pursuant to this Order, including but not limited, to a non-

dischargeability complaint in any bankruptcy proceeding.

## VI.

## REDRESS PROGRAM

**IT IS FURTHER ORDERED** that Defendants shall:

A.     Defendants shall, no later than thirty (30) days following entry of this Order,

provide to the Commission a searchable electronic file (the "Consumer

Database") containing the name and contact information of each Eligible

Purchaser as of the date the Consumer Database is provided to the Commission,

("Current Eligible Purchaser") updated through the National Change of Address

database, the dates and amounts of all payments made by each Current Eligible Purchaser, the total amount paid by each Current Eligible Purchaser the amount and date of any refunds provided by Defendants to each Current Eligible Purchaser, and, to the extent such information is available to Defendants the amount of any redress paid to each Current Eligible Purchaser pursuant to any other Order, Voluntary Assurance or other Settlement entered into by Defendants with any person or entity, accompanied by a sworn affidavit attesting to its accuracy.

B.     The redress program shall be administered by a Redress Administrator selected by the FTC. The Defendants shall have no right to contest the FTC's selection of the Redress Administrator. The Consumer Databases will be provided by the FTC to the Redress Administrator.

C.     The Defendants shall make the following payments to the FTC:

1.     Within five (5) days of entry of this Order, Defendants shall pay to the FTC by electronic funds transfer the sum of One Million Dollars ($1,000,000). Six months from the date of entry of this Order, Defendants shall pay to the FTC by electronic funds transfer the additional sum of One Million Dollars ($1,000,000). One year from the date of entry of this Order, Defendants shall pay to the FTC by electronic funds transfer the additional sum of One Million Five Hundred Thousand Dollars ($1,500,000), for combined payment in the first year after entry of this Order of Three Million Five Hundred Thousand Dollars ($3,500,000).

2.    In the event that funds paid by the Defendants pursuant to subpart C(l) of
this Part VI are less than the amount claimed by Current Eligible
Purchasers to reimburse them for payments made to the Defendants,
Defendants shall, eighteen (18) months from the date of entry of this
Order, pay to the FTC by electronic funds transfer up to One Million Five
Hundred Thousand Dollars ($1,500,000) to cover the difference between
the amount claimed by Current Eligible Purchasers and the amount paid
by Defendants pursuant to subpart C (1) of this Part VI.

3.    Defendants relinquish all dominion, control, and title to the payments
made pursuant to this Part. Defendants shall make no claim to or demand
for return of the payments, directly or indirectly, through counsel or
otherwise; and in the event of bankruptcy of either Defendant, Defendants
acknowledge that the payment is not part of the debtor's estate, nor does
the estate have any claim or interest.

4.    No portion of the payments made pursuant to this Part shall be deemed a
payment of any fine, penalty, or punitive assessment.

D.    In order to secure the payment of the outstanding Two Million Five Hundred
Thousand Dollars ($2,500,000) and potential payment of an additional One
Million Five Hundred Thousand ($1,500,000) in redress funds as set forth in
subpart C(1) and (2) above, Defendants shall, within five (5) days of entry of this
Order :

1.    Deliver to the Commission a security interest in all of the assets of the
Defendants (the "Collateral") with a value of Four Million Dollars

-12-

($4,000,000), substantially in the form of Appendix C hereto, and perform all steps necessary to perfect said security interest.

2.   Within twenty (20) days after the Defendants makes each required payment pursuant to subpart C(1) of this Part VI, the Commission shall, at Defendants' request, release its security interest in the Collateral by an amount equal to the amount of the payment made by the Defendants.

E.   Within twenty (20) days after the Defendants make all required payments, totaling Three Million Five Hundred Thousand Dollars ($3,500,000) under subpart C(1) of this Part VI, the Redress Administrator will calculate the total amount of redress requested by Current Eligible Purchasers and advise the Defendants of this total.  In the event that this total is less than Three Million Five Hundred Thousand Dollars ($3,500,000), the Commission will authorize the release of the security interest in the assets identified in Appendix C, that remain secured as of such date.  In the event that this total is at least Three Million Five Hundred Thousand Dollars ($3,500,000), but less than Five Million Dollars ($5,000,000), the Commission will, after the Defendants make the payment required by subpart C(2) of this Part VI, authorize the termination of the release of its security interest in all of the assets identified in Appendix C, that remain secured as of such date.

## VII.

## RIGHT TO REOPEN

**IT IS FURTHER ORDERED** that:

A.    The Commission's agreement to this Final Order is expressly premised upon the truthfulness, accuracy, and completeness of the Defendants' statement and supporting documents related to payments made to Defendants by Eligible Purchasers in the letter dated November 8, 2007 from Linda A. Goldstein, counsel for the Defendants, along with attachments. This letter and supporting documents contain material information upon which the Commission relied in negotiating and agreeing to this Final Order. If, upon motion by the Plaintiff, this Court determines that this letter and supporting documents materially misrepresented the amount of payments made by Eligible Purchasers to Defendants as of the date of this letter, the Court shall:

1.    Enter judgment against Defendants in an amount equal to the amount of payments made by Current Eligible Purchasers to Defendants, less any payments previously made under Section VI and any refunds or other redress payments made to Current Eligible Purchasers, and make an express determination that there is no just reason for delay of entry of judgment. Plaintiff shall retain any funds received pursuant to Section VI, and all interest accrued thereon, in partial satisfaction of this judgment;

2.    Permit Plaintiff to execute upon such judgment immediately and engage in discovery in aid of execution; and

3.    Permit Plaintiff to reopen this matter both to add additional parties and claims pursuant to Rules 14 and 15 of the Federal Rules of Civil

Procedure, and to demonstrate to the Court that additional relief, including additional equitable monetary relief, should be entered by the Court against any or all current or future defendants. Plaintiff shall have the right to engage in reasonable discovery for this purpose.

B.      The Commission's agreement to this Stipulated Order is expressly premised on Defendants taking all of the steps described in Section VI of this Order. If Defendants fail to take any action described in Section VI, and fail to cure such failure within five (5) days of receipt of notice from a representative of the Commission, time being of the essence, the Court shall:

1.      Enter judgment against Defendants in the amount of Five Million Dollars ($5,000,000), and make an express determination that there is no just reason for delay of entry of judgment. Plaintiff shall retain any funds received pursuant to Section VI, and all interest accrued thereon, in partial satisfaction of this judgment;

2.      Permit Plaintiff to (i) execute upon such judgment immediately by drawing upon the security interest and (ii) engage in discovery in aid of execution; and

3.      Permit Plaintiff to reopen this matter both to add additional parties and claims pursuant to Rules 14 and 15 of the Federal Rules of Civil Procedure, and to demonstrate to the Court that additional relief, including additional equitable monetary relief, should be entered by the Court against any or all current or future defendants. Plaintiff shall have the right to engage in reasonable discovery for this purpose.

C.     For the purposes of this Part and any subsequent proceedings to enforce payment,

including but not limited to a non-dischargeability complaint filed in a bankruptcy

proceeding, the Defendants agree not to contest any of the allegations in the

Complaint filed in this action. *Provided however*, that in all other respects this

Final Order shall remain in full force and effect unless otherwise ordered by the

Court; and *provided further*, that proceedings instituted under this Part are in

addition to, and not in lieu of, any civil or criminal remedies that may be provided

by law, including any other proceedings the Commission may initiate to enforce

this Final Order.

## VIII.

## CESSATION OF COLLECTION ACTIONS

**IT IS FURTHER ORDERED** that Defendants shall:

A.     Discontinue all collection proceedings seeking to collect monies from Current

Eligible Purchasers;

B.     Cease furnishing any derogatory credit reporting information on Current Eligible

Purchasers to any credit reporting agency; and

C.     Notify any such credit reporting agency to which Defendants furnished

derogatory information about an Eligible Purchaser that such person's account is

in good standing.

## IX.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating

compliance with any provision of this Order,

A.     Within five (5) days of receipt of written notice from a representative of the
Commission, Defendants shall submit additional written reports, sworn to under
penalty of perjury; produce documents for inspection and copying; appear for
deposition; and/or provide entry during normal business hours to any business
location in such Defendant's possession or direct or indirect control;

B.     In addition, the Commission is authorized to monitor compliance with this Order
by all other lawful means, including but not limited to the following:

1.     Obtaining discovery from any person, without further leave of court; using
the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;
and

2.     Posing as consumers and suppliers to: Defendants' employees, or any
other entity managed or controlled in whole or in part by Defendants,
without the necessity of identification or prior notice;

C.     Defendants shall permit representatives of the Commission to interview any
employer, consultant, independent contractor, representative, agent, or employee
who has agreed to such an interview, relating in any way to any conduct subject to
this Order.  The person interviewed may have counsel present.

*Provided, however,* that nothing in this Order shall limit the Commission's lawful
use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act,
15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things,
testimony, or information relevant to unfair or deceptive acts or practices in or
affecting commerce (within the meaning of 15 U.S.C. § 45(a) (1).)

## X.

### COMPLIANCE REPORTING BY DEFENDANTS

IT IS FURTHER ORDERED that, in order that compliance with the provisions of this

Order may be monitored:

A.      For a period of five (5) years from the date of entry of this Order, each Defendant

shall notify the Commission of any changes in its corporate structure or any

business entity that any Defendant directly or indirectly controls, or has an

ownership interest in, that may affect compliance obligations arising under this

Order, including but not limited to a dissolution, assignment, sale, merger, or

other action that would result in the emergence of a successor entity; the creation

or dissolution of a subsidiary, parent, or affiliate that engages in any acts or

practices subject to this Order; the filing of a bankruptcy petition; or a change in

the corporate name or address, at least thirty (30) days prior to such change,

*provided that*, with respect to any proposed change in the corporation about which

any Defendant learns less than thirty (30) days prior to the date such action is to

take place, such Defendant shall notify the Commission as soon as is practicable

after obtaining such knowledge;

B.      One hundred eighty (180) days after the date of entry of this Order, Defendants

shall provide a written report to the FTC, sworn to under penalty of perjury,

setting forth in detail the manner and form in which Defendants have complied

and are complying with this Order.  This report shall include, but not be limited

to:

1.      Any other changes required to be reported under Subparagraph A of this

Paragraph; and

2.     A copy of each acknowledgment of receipt of this Order, obtained

pursuant to Paragraph XIII;

C.     For the purposes of this Order, Defendants shall, unless otherwise directed by the

Commission's authorized representatives, mail all written notifications to the

Commission to:

> Associate Director
> Division of Enforcement
> Federal Trade Commission
> 601 New Jersey Avenue, N.W.
> Washington, DC 20580
>
> Re: *FTC v. BlueHippo Funding, LLC.*
> Civil Action No.

D.     For purposes of the compliance reporting and monitoring required by this Order,

the Commission is authorized to communicate directly with Defendants.

## XI.

## RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of six (6) years from the date of entry of

this Order, Defendants and their agents, employees, officers, corporations, successors, and

assigns, and those persons in active concert or participation with them who receive actual notice

of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to

create and retain the following records:

A.     Accounting records that reflect the cost of goods or services sold, revenues

generated, and the disbursement of such revenues;

B.     Personnel records accurately reflecting the name, address, and telephone number

of each person employed in any capacity by such business, including as an

independent contractor; that person's job title or position; the date upon which the

person commenced work; and the date and reason for the person's termination, if

applicable;

C.    Customer files containing the names, addresses, phone numbers, dollar amounts

paid, quantity of items or services purchased, and description of items or services

purchased, to the extent such information is obtained in the ordinary course of

business;

D.    Complaints and refund requests (whether received directly, indirectly or through

any third party) and/or summaries thereof as maintained in the ordinary course of

business and any responses to those complaints or requests;

E.    Copies of all sales scripts, training materials, advertisements, or other marketing

materials, including Web sites and emails; and

F.    All records and documents necessary to demonstrate full compliance with each

provision of this Order, including but not limited to, copies of acknowledgments

of receipt of this Order, required by Paragraph XIII, and all reports submitted to

the FTC pursuant to Paragraph XI.

## XII.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry

of this Order, Defendants shall deliver copies of the Order as directed below:

A.    Defendants must deliver a copy of this Order to each of their principals, officers,

directors, and employees in a managerial capacity who have supervisory

responsibilities with respect to the subject matter of this Order.  For current

personnel, delivery shall be within five (5) days of service of this Order upon

Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

B.     Defendants shall secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from each person receiving a copy of the Order pursuant to this Paragraph.

## XIII.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, Defendants shall, within five (5) business days of receipt of this Order as entered by the Court, submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XIV.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that, this Court shall retain jurisdiction of this matter for all purposes.

s/ Carole Paynter

Carole Paynter
Attorney for Plaintiff
Federal Trade Commission

Andrew Campbell, as an officer of
Defendant BlueHippo Funding, LLC

Andrew Campbell, as an officer of
Defendant BlueHippo Capital, LLC

Linda A. Goldstein
Attorney for Defendants
Manatt, Phelps & Phillips LLP

**SO ORDERED**, this _____ day of _____, 2008

UNITED STATES DISTRICT JUDGE

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON** _____

-22-

# Appendix A

58 FR 49096-01
58 FR 49096-01, 1993 WL 365138 (F.R.)
**(Cite as: 58 FR 49096)**

  FN290 NRMA, R011006-2, F-3, p. 5.

  FN291 See Staff Report, R011006-3, N-1, pp. 112-16; PO's Report, R011006-3, O-1,
pp. 64-71.

VIII. Conclusion

  The Commission has determined that the TRR issued today is in the public interest
because it will deter the unfair or deceptive acts or practices currently existing
in sales of merchandise by telephone.  In formulating the TRR, the Commission has
assessed the economic impact on consumers and businesses, particular small busi-
nesses, and determined that the benefits of the TRR, taken together, outweigh the
costs.

List of Subjects in 16 CFR part 435

  Mail order merchandise, Telephone order merchandise, Trade Practices.

  Part 435 of title 16 of the Code of Federal Regulations is revised to read as
follows:

PART 435--MAIL OR TELEPHONE ORDER MERCHANDISE

435.1 The Rule.

435.2 Definitions.

435.3 Limited Applicability.

435.4 Effective Date of the Rule.

  Authority: 15 U.S.C. 57a; 5 U.S.C. 552.

### 16 CFR § 435.1

§435.1 The rule.

  In connection with mail or telephone order sales in or affecting commerce, as
"commerce" is defined in the Federal Trade Commission Act, it constitutes an un-
fair method of competition, and an unfair or deceptive act or practice for a
seller:

  (a)(1) To solicit any order for the sale of merchandise to be ordered by the buy-
er through the mails or by telephone unless, at the time of the solicitation, the
seller has a reasonable basis to expect that it will be able to ship any ordered
merchandise to the buyer:

  (i) Within that time clearly and conspicuously stated in any such solicitation,
or

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

58 FR 49096-01
58 FR 49096-01, 1993 WL 365138 (F.R.)
(Cite as: 58 FR 49096)

(ii) if no time is clearly and conspicuously stated, within thirty (30) days after receipt of a properly completed order from the buyer, Provided, however, where, at the time the merchandise is ordered the buyer applies to the seller for credit to pay for the merchandise in whole or in part, the seller shall have 50 days, rather than 20 days, to perform the actions required in § 435.1(a)(1)(ii) of this part.

(2) To provide any buyer with any revised shipping date, as provided in paragraph (b) of this section, unless, at the time any such revised shipping date is provided, the seller has a reasonable basis for making such representation regarding a definite revised shipping date.

(3) To inform any buyer that it is unable to make any representation regarding the length of any delay unless

(i) the seller has a reasonable basis for so informing the buyer and

(ii) the seller informs the buyer of the reason or reasons for the delay.

(4) In any action brought by the Federal Trade Commission, alleging a violation of this part, the failure of a respondent-seller to have records or other documentary proof establishing its use of systems and procedures which assure the shipment of merchandise in the ordinary course of business within any applicable time set forth in this part will create a rebuttable presumption that the seller lacked a reasonable basis for any expectation of shipment within said applicable time.

(b)(1) Where a seller is unable to ship merchandise within the applicable time set forth in paragraph (a)(1) of this section, to fail to offer to the buyer, clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund. Said offer shall be made within a reasonable time after the seller first becomes aware of its inability to ship within the applicable time set forth in paragraph (a)(1) of this section, but in no event later than said applicable time.

(i) Any offer to the buyer of such an option shall fully inform the buyer regarding the buyer's right to cancel the order and to obtain a prompt refund and shall provide a definite revised shipping date, but where the seller lacks a reasonable basis for providing a definite revised shipping date the notice shall inform the buyer that the seller is unable to make any representation regarding the length of the delay.

(ii) Where the seller has provided a definite revised shipping date which is thirty (30) days or less later than the applicable time set forth in paragraph (a)(1) of this section, the offer of said option shall expressly inform the buyer that, unless the seller receives, prior to shipment and prior to the expiration of the definite revised shipping date, a response from the buyer rejecting the delay and cancelling the order, the buyer will be deemed to have consented to a delayed

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

58 FR 49096-01
58 FR 49096-01, 1993 WL 365138 (F.R.)

**(Cite as: 58 FR 49096)**

shipment on or before the definite revised shipping date.

(iii) Where the seller has provided a definite revised shipping date which is more than thirty (30) days later than the applicable time set forth in paragraph (a)(1) of this section or where the seller is unable to provide a definite revised shipping date and therefore informs the buyer that it is unable to make any representation regarding the length of the delay, the offer of said option shall also expressly inform the buyer that the buyer's order will automatically be deemed to have been cancelled unless:

(A) The seller has shipped the merchandise within thirty (30) days of the applicable time set forth in paragraph (a)(1) of this section, and has received no cancellation prior to shipment, or

(B) The seller has received from the buyer within thirty (30) days of said applicable time, a response specifically consenting to said shipping delay. Where the seller informs the buyer that it is unable to make any representation regarding the length of the delay, the buyer shall be expressly informed that, should the buyer consent to an indefinite delay, the buyer will have a continuing right to cancel the buyer's order at any time after the applicable time set forth in paragraph (a)(1) of this section by so notifying the seller prior to actual shipment.

(iv) Nothing in this paragraph shall prohibit a seller who furnishes a definite revised shipping date pursuant to paragraph (b)(1)(i) of this section, from requesting, simultaneously with or at any time subsequent to the offer of an option pursuant to paragraph (b)(1) of this section, the buyer's express consent to a further unanticipated delay beyond the definite revised shipping date in the form of a response from the buyer specifically consenting to said further **49122 delay. Provided, however, That where the seller solicits consent to an unanticipated indefinite delay the solicitation shall expressly inform the buyer that, should the buyer so consent to an indefinite delay, the buyer shall have a continuing right to cancel the buyer's order at any time after the definite revised shipping date by so notifying the seller prior to actual shipment.

(2) Where a seller is unable to ship merchandise on or before the definite revised shipping date provided under paragraph (b)(1)(i) of this section and consented to by the buyer pursuant to paragraph (b)(1) (ii) or (iii) of this section, to fail to offer to the buyer, clearly and conspicuously and without prior demand, a renewed option either to consent to a further delay or to cancel the order and to receive a prompt refund. Said offer shall be made within a reasonable time after the seller first becomes aware of its inability to ship before the said definite revised date, but in no event later than the expiration of the definite revised shipping date: Provided, however, That where the seller previously has obtained the buyer's express consent to an unanticipated delay until a specific date beyond the definite revised shipping date, pursuant to paragraph (b)(1)(iv) of this section or to a further delay until a specific date beyond the definite revised shipping date pursuant to paragraph (b)(2) of this section, that date to which the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

58 FR 49096-01
58 FR 49096-01, 1993 WL 365139 (F.R.)
(Cite as: 58 FR 49096)

buyer has expressly consented shall supersede the definite revised shipping date for purposes of paragraph (b)(2) of this section.

(i) Any offer to the buyer of said renewed option shall provide the buyer with a new definite revised shipping date, but where the seller lacks a reasonable basis for providing a new definite revised shipping date, the notice shall inform the buyer that the seller is unable to make any representation regarding the length of the further delay.

(ii) The offer of a renewed option shall expressly inform the buyer that, unless the seller receives, prior to the expiration of the old definite revised shipping date or any date superseding the old definite revised shipping date, notification from the buyer specifically consenting to the further delay, the buyer will be deemed to have rejected any further delay, and to have cancelled the order if the seller is in fact unable to ship prior to the expiration of the old definite revised shipping date or any date superseding the old definite revised shipping date: Provided, however, That where the seller offers the buyer the option to consent to an indefinite delay the offer shall expressly inform the buyer that, should the buyer so consent to an indefinite delay, the buyer shall have a continuing right to cancel the buyer's order at any time after the old definite revised shipping date or any date superseding the old definite revised shipping date.

(iii) Paragraph (b)(2) of this section shall not apply to any situation where a seller, pursuant to the provisions of paragraph (b)(1)(iv) of this section, has previously obtained consent from the buyer to an indefinite extension beyond the first revised shipping date.

(3) Wherever a buyer has the right to exercise any option under this part or to cancel an order by so notifying the seller prior to shipment, to fail to furnish the buyer with adequate means, at the seller's expense, to exercise such option or to notify the seller regarding cancellation.

Nothing in paragraph (b) of this section shall prevent a seller, where it is unable to make shipment within the time set forth in paragraph (a)(1) of this section or within a delay period consented to by the buyer, from deciding to consider the order cancelled and providing the buyer with notice of said decision within a reasonable time after it becomes aware of said inability to ship, together with a prompt refund.

(c) To fail to deem an order cancelled and to make a prompt refund to the buyer whenever:

(1) The seller receives, prior to the time of shipment, notification from the buyer cancelling the order pursuant to any option, renewed option or continuing option under this part;

(2) The seller has, pursuant to paragraph (b)(1)(iii) of this section, provided

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

58 FR 49096-01
58 FR 49096-01, 1993 WL 368138 (F.R.)
**(Cite as: 58 FR 49096)**

the buyer with a definite revised shipping date which is more than thirty (30)
days later than the applicable time set forth in paragraph (a)(1) of this section
or has notified the buyer that it is unable to make any representation regarding
the length of the delay and the seller

(i) Has not shipped the merchandise within thirty (30) days of the applicable
time set forth in paragraph (a)(1) of this section, and

(ii) Has not received the buyer's express consent to said shipping delay within
said thirty (30) days;

(3) The seller is unable to ship within the applicable time set forth in para-
graph (b)(2) of this section, and has not received, within the said applicable
time, the buyer's consent to any further delay;

(4) The seller has notified the buyer of its inability to make shipment and has
indicated its decision not to ship the merchandise;

(5) The seller fails to offer the option prescribed in paragraph (b)(1) of this
section and has not shipped the merchandise within the applicable time set forth
in paragraph (a)(1) of this section.

(d) In any action brought by the Federal Trade Commission, alleging a violation
of this part, the failure of a respondent-seller to have records or other docu-
mentary proof establishing its use of systems and procedures which assure compli-
ance, in the ordinary course of business, with any requirement of paragraphs (b)
or (c) of this section will create a rebuttable presumption that the seller failed
to comply with said requirement.

16 CFR § 435.2

§435.2 Definitions.

For purposes of this part:

(a) "Mail or telephone order sales" shall mean sales in which the buyer has
ordered merchandise from the seller by mail or telephone, regardless of the method
of payment or the method used to solicit the order.

(b) "Telephone" refers to any direct or indirect use of the telephone to order
merchandise, regardless of whether the telephone is activated by, or the language
used is that of human beings, machines, or both.

(c) "Shipment" shall mean the act by which the merchandise is physically placed
in the possession of the carrier.

(d) "Receipt of a properly completed order" shall mean, where the buyer tenders
full or partial payment in the proper amount in the form of cash, check, money or-
der, or authorization from the buyer to charge an existing charge account, the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

time at which the seller receives both said payment and an order from the buyer containing all of the information needed by the seller to process and ship the order. Provided, however, That where the seller receives notice that the check or money order tendered by the buyer has been dishonored or that the buyer does not qualify for a credit sale, "receipt of a properly completed order" shall mean the time at which:

(i) The seller receives notice that a check or money order for the proper amount tendered by the buyer has been honored,

(ii) The buyer tenders cash in the proper amount, or

(iii) The seller receives notice that the buyer qualifies for a credit sale.

(e) "Refund" shall mean:

(1) Where the buyer tendered full payment for the unshipped merchandise in the form of cash, check or money order, a return of the amount tendered in the form of cash, check or money order;

**\*49123** (2) Where there is a credit sale:

(i) And the seller is a creditor, a copy of a credit memorandum or the like or an account statement reflecting the removal or absence of any remaining charge incurred as a result of the sale from the buyer's account;

(ii) And a third party is the creditor, a copy of an appropriate credit memorandum or the like to the third party creditor which will remove the charge from the buyer's account or a statement from the seller acknowledging the cancellation of the order and representing that it has not taken any action regarding the order which will result in a charge to the buyer's account with the third party;

(iii) And the buyer tendered partial payment for the unshipped merchandise in the form of cash, check or money order, a return of the amount tendered in the form of cash, check or money order.

(f) "Prompt refund" shall mean:

(1) Where a refund is made pursuant to paragraph (c)(1) or (2)(iii) of this section a refund sent to the buyer by first class mail within seven (7) working days of the date on which the buyer's right to refund vests under the provisions of this part;

(2) Where a refund is made pursuant to paragraph (c)(2) (i) or (ii) of this section, a refund sent to the buyer by first class mail within one (1) billing cycle from the date on which the buyer's right to refund vests under the provisions of this part.

(g) The "time of solicitation" of an order shall mean that time when the seller

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

58 FR 49096-01
58 FR 49096-01, 1993 WL 365138 (F.R.)
**(Cite as: 58 FR 49096)**

has:

(1) Mailed or otherwise disseminated the solicitation to a prospective purchaser,

(2) Made arrangements for an advertisement containing the solicitation to appear in a newspaper, magazine or the like or on radio or television which cannot be changed or cancelled without incurring substantial expense, or

(3) Made arrangements for the printing of a catalog, brochure or the like which cannot be changed without incurring substantial expense, in which the solicitation in question forms an insubstantial part.

<div align="center">16 CFR § 435.2</div>

§435.2 Limited applicability.

(a) This part shall not apply to:

(1) Subscriptions, such as magazine sales, ordered for serial delivery, after the initial shipment is made in compliance with this part.

(2) Orders of seeds and growing plants.

(3) Orders made on a collect-on-delivery (C.O.D.) basis.

(4) Transactions governed by the Federal Trade Commission's Trade Regulation Rule entitled "Use of Negative Option Plans by Sellers in Commerce," 16 CFR part 425.

(b) By taking action in this area:

(1) The Federal Trade Commission does not intend to preempt action in the same area, which is not inconsistent with this part, by any State, municipal, or other local government. This part does not annul or diminish any rights or remedies provided to consumers by any State law, municipal ordinance, or other local regulation, insofar as those rights or remedies are equal to or greater than those provided by this part. In addition, this part does not supersede those provisions of any State law, municipal ordinance, or other local regulation which impose obligations or liabilities upon sellers, when sellers subject to this part are not in compliance therewith.

(2) This part does supersede those provisions of any State law, municipal ordinance, or other local regulation which are inconsistent with this part to the extent that those provisions do not provide a buyer with rights which are equal to or greater than those rights granted a buyer by this part. This part also supersedes those provisions of any State law, municipal ordinance, or other local regulation requiring that a buyer be notified of a right which is the same as a right provided by this part but requiring that a buyer be given notice of this right in a language, form, or manner which is different in any way from that required by this part. In those instances where any State law, municipal ordinance, or other

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

58 FR 49096-01, 1993 WL 365138 (F.R.)
**(Cite as: 58 FR 49096)**

local regulation contains provisions, some but not all of which are partially or completely superseded by this part, the provisions or portions of those provisions which have not been superseded retain their full force and effect.

(c) If any provision of this part, or its application to any person, partnership, corporation, act or practice is held invalid, the remainder of this part or the application of the provision to any other person, partnership, corporation, act or practice shall not be affected thereby.

<u>16 CFR § 435.4</u>

<u>§435.4</u> Effective date of the rule.

The original rule, which became effective 100 days after its promulgation on October 22, 1975, remains in effect. The amended rule, as set forth in this part, becomes effective March 1, 1994.

By direction of the Commission.

Donald S. Clark,

Secretary.

(FR Doc. 93-22587 Filed 9-20-93; 8:45 am)

BILLING CODE 6750-01-M

58 FR 49096 01, 1993 WL 365138 (F.R.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# Appendix B

Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations

Electronic Code of Federal Regulations

**e-CFR** TM

# e-CFR Data is current as of January 14, 2008

## Title 12: Banks and Banking

Browse Previous | Browse Next

### PART 226—TRUTH IN LENDING (REGULATION Z)

**Section Contents**

#### Subpart A—General

§ 226.1   Authority, purpose, coverage, organization, enforcement and liability.
§ 226.2   Definitions and rules of construction.
§ 226.3   Exempt transactions.
§ 226.4   Finance charge.

#### Subpart B—Open-End Credit

§ 226.5   General disclosure requirements.
§ 226.5a   Credit and charge card applications and solicitations.
§ 226.5b   Requirements for home equity plans.
§ 226.6   Initial disclosure statement.
§ 226.7   Periodic statement.
§ 226.8   Identification of transactions.
§ 226.9   Subsequent disclosure requirements.
§ 226.10   Prompt crediting of payments.
§ 226.11   Treatment of credit balances.
§ 226.12   Special credit card provisions.
§ 226.13   Billing error resolution.[27]
§ 226.14   Determination of annual percentage rate.
§ 226.15   Right of rescission.
§ 226.16   Advertising.

#### Subpart C—Closed-End Credit

§ 226.17   General disclosure requirements.
§ 226.18   Content of disclosures.
§ 226.19   Certain residential mortgage and variable-rate transactions.
§ 226.20   Subsequent disclosure requirements.
§ 226.21   Treatment of credit balances.
§ 226.22   Determination of annual percentage rate.
§ 226.23   Right of rescission.
§ 226.24   Advertising.

#### Subpart D—Miscellaneous

§ 226.25   Record retention.
§ 226.26   Use of annual percentage rate in oral disclosures.
§ 226.27   Language of disclosures.
§ 226.28   Effect on State laws.
§ 226.29   State exemptions.
§ 226.30   Limitation on rates.

### Subpart E—Special Rules for Certain Home Mortgage Transactions

§ 226.31   General rules.
§ 226.32   Requirements for certain closed-end home mortgages.
§ 226.33   Requirements for reverse mortgages.
§ 226.34   Prohibited acts or practices in connection with credit secured by a consumer's dwelling.
§ 226.35   [Reserved]
Appendix A to Part 226—Effect on State Laws
Appendix B to Part 226—State Exemptions
Appendix C to Part 226—Issuance of Staff Interpretations
Appendix D to Part 226—Multiple Advance Construction Loans
Appendix E to Part 226—Rules For Card Issuers That Bill on a Transaction-By-Transaction Basis
Appendix F to Part 226—Annual Percentage Rate Computations for Certain Open-End Credit Plans
Appendix G to Part 226—Open-End Model Forms and Clauses
Appendix H to Part 226—Closed-End Model Forms and Clauses
Appendix I to Part 226—Federal Enforcement Agencies
Appendix J to Part 226—Annual Percentage Rate Computations for Closed-End Credit Transactions
Appendix K to Part 226—Total Annual Loan Cost Rate Computations for Reverse Mortgage Transactions
Appendix L to Part 226—Assumed Loan Periods for Computations of Total Annual Loan Cost Rates
Supplement I to Part 226—Official Staff Interpretations

---

**Authority:**   12 U.S.C. 3806; 15 U.S.C. 1604 and 1637(c)(5).

**Source:**   Reg. Z, 46 FR 20892, Apr. 7, 1981, unless otherwise noted.

### Subpart A—General

top

### § 226.1   Authority, purpose, coverage, organization, enforcement and liability.

top

(a) *Authority.* This regulation, known as Regulation Z, is issued by the Board of Governors of the Federal Reserve System to implement the Federal Truth in Lending Act, which is contained in title I of the Consumer Credit Protection Act, as amended (15 U.S.C. 1601 *et seq.* ). This regulation also implements title XII, section 1204 of the Competitive Equality Banking Act of 1987 (Pub. L. 100–86, 101 Stat. 552). Information-collection requirements contained in this regulation have been approved by the Office of Management and Budget under the provisions of 44 U.S.C. 3501 *et seq.* and have been assigned OMB number 7100–0199.

(b) *Purpose.* The purpose of this regulation is to promote the informed use of consumer credit by

requiring disclosures about its terms and cost. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes. The regulation does not govern charges for consumer credit. The regulation requires a maximum interest rate to be stated in variable-rate contracts secured by the consumer's dwelling. It also imposes limitations on home equity plans that are subject to the requirements of §226.5b and mortgages that are subject to the requirements of §226.32. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling.

(c) *Coverage.* (1) In general, this regulation applies to each individual or business that offers or extends credit when four conditions are met: (i) The credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly;[1] (iii) the credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and (iv) the credit is primarily for personal, family, or household purposes.

[1] The meaning of *regularly* is explained in the definition of *creditor* in §226.2(a).

(2) If a credit card is involved, however, certain provisions apply even if the credit is not subject to a finance charge, or is not payable by a written agreement in more than 4 installments, or if the credit card is to be used for business purposes.

(3) In addition, certain requirements of §226.5b apply to persons who are not creditors but who provide applications for home equity plans to consumers.

(d) *Organization.* The regulation is divided into subparts and appendices as follows:

(1) Subpart A contains general information. It sets forth: (i) The authority, purpose, coverage, and organization of the regulation; (ii) the definitions of basic terms; (iii) the transactions that are exempt from coverage; and (iv) the method of determining the finance charge.

(2) Subpart B contains the rules for open-end credit. It requires that initial disclosures and periodic statements be provided, as well as additional disclosures for credit and charge card applications and solicitations and for home equity plans subject to the requirements of §§226.5a and 226.5b, respectively.

(3) Subpart C relates to closed-end credit. It contains rules on disclosures, treatment of credit balances, annual percentage rate calculations, rescission requirements, and advertising.

(4) Subpart D contains rules on oral disclosures, Spanish language disclosure in Puerto Rico, record retention, effect on state laws, state exemptions, and rate limitations.

(5) Subpart E contains special rules for mortgage transactions. Section 226.32 requires certain disclosures and provides limitations for loans that have rates and fees above specified amounts. Section 226.33 requires disclosures, including the total annual loan cost rate, for reverse mortgage transactions. Section 226.34 prohibits specific acts and practices in connection with mortgage transactions.

(6) Several appendices contain information such as the procedures for determinations about state laws, state exemptions and issuance of staff interpretations, special rules for certain kinds of credit plans, a list of enforcement agencies, and the rules for computing annual percentage rates in closed-end credit transactions and total annual loan cost rates for reverse mortgage transactions.

(e) *Enforcement and liability.* Section 108 of the act contains the administrative enforcement provisions. Sections 112, 113, 130, 131, and 134 contain provisions relating to liability for failure to comply with the requirements of the act and the regulation. Section 1204(c) of title XII of the Competitive Equality Banking Act of 1987, Pub. L. 100–86, 101 Stat. 552, incorporates by reference administrative enforcement and civil liability provisions of sections 108 and 130 of the act.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 52 FR 43181, Nov. 9, 1987; 54 FR 13865, Apr. 6, 1989; 54 FR 24686, June 9, 1989; 60 FR 15471, Mar. 24, 1995; 66 FR 65617, Dec. 20, 2001]

## § 226.2  Definitions and rules of construction.

↑ top

(a) *Definitions.* For purposes of this regulation, the following definitions apply:

(1) *Act* means the Truth in Lending Act (15 U.S.C. 1601 *et seq.* ).

(2) *Advertisement* means a commercial message in any medium that promotes, directly or indirectly, a credit transaction.

(3) [Reserved][2]

[2] [Reserved]

(4) *Billing cycle* or *cycle* means the interval between the days or dates of regular periodic statements. These intervals shall be equal and no longer than a quarter of a year. An interval will be considered equal if the number of days in the cycle does not vary more than 4 days from the regular day or date of the periodic statement.

(5) *Board* means the Board of Governors of the Federal Reserve System.

(6) *Business day* means a day on which the creditor's offices are open to the public for carrying on substantially all of its business functions. However, for purposes of rescission under §§226.15 and 226.23, and for purposes of §226.31, the term means all calendar days except Sundays and the legal public holidays specified in 5 U.S.C. 6103(a), such as New Year's Day, the Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day.

(7) *Card issuer* means a person that issues a credit card or that person's agent with respect to the card.

(8) *Cardholder* means a natural person to whom a credit card is issued for consumer credit purposes, or a natural person who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a credit card to another natural person. For purposes of §226.12(a) and (b), the term includes any person to whom a credit card is issued for any purpose, including business, commercial, or agricultural use, or a person who has agreed with the card issuer to pay obligations arising from the issuance of such a credit card to another person.

(9) *Cash price* means the price at which a creditor, in the ordinary course of business, offers to sell for cash the property or service that is the subject of the transaction. At the creditor's option, the term may include the price of accessories, services related to the sale, service contracts and taxes and fees for license, title, and registration. The term does not include any finance charge.

(10) *Closed-end credit* means consumer credit other than *open-end credit* as defined in this section.

(11) *Consumer* means a cardholder or a natural person to whom consumer credit is offered or extended. However, for purposes of rescission under §§226.15 and 226.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest.

(12) *Consumer credit* means credit offered or extended to a consumer primarily for personal, family, or household purposes.

(13) *Consummation* means the time that a consumer becomes contractually obligated on a credit transaction.

(14) *Credit* means the right to defer payment of debt or to incur debt and defer its payment.

(15) *Credit card* means any card, plate, coupon book, or other single credit device that may be used from time to time to obtain credit. *Charge card* means a credit card on an account for which no periodic rate is used to compute a finance charge.

(16) *Credit sale* means a sale in which the seller is a creditor. The term includes a bailment or lease (unless terminable without penalty at any time by the consumer) under which the consumer:

(i) Agrees to pay as compensation for use a sum substantially equivalent to, or in excess of, the total value of the property and services involved; and

(ii) Will become (or has the option to become), for no additional consideration or for nominal consideration, the owner of the property upon compliance with the agreement.

(17) *Creditor* means: (i) A person (A) who regularly extends consumer credit[3] that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

[3] A person regularly extends consumer credit only if it extended credit (other than credit subject to the requirements of §226.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year. A person regularly extends consumer credit if, in any 12-month period, the person originates more than one credit extension that is subject to the requirements of §226.32 or one or more such credit extensions through a mortgage broker.

(ii) For purposes of §§226.4(c)(8) (discounts), 226.9(d) (Finance charge imposed at time of transaction), and 226.12(e) (Prompt notification of returns and crediting of refunds), a person that honors a credit card.

(iii) For purposes of subpart B, any card issuer that extends either open-end credit or credit that is not subject to a finance charge and is not payable by written agreement in more than 4 installments.

(iv) For purposes of subpart B (except for the credit and charge card disclosures contained in §§226.5(a) and 226.9 (e) and (f), the finance charge disclosures contained in §§226.6(a) and 226.7 (d) through (g) and the right of rescission set forth in §226.15) and subpart C, any card issuer that extends closed-end credit that is subject to a finance charge or is payable by written agreement in more than 4 installments.

(18) *Downpayment* means an amount, including the value of any property used as a trade-in, paid to a seller to reduce the cash price of goods or services purchased in a credit sale transaction. A deferred portion of a downpayment may be treated as part of the downpayment if it is payable not later than the due date of the second otherwise regularly scheduled payment and is not subject to a finance charge.

(19) *Dwelling* means a residential structure that contains 1 to 4 units, whether or not that structure is attached to real property. The term includes an individual condominium unit, cooperative unit, mobile home, and trailer, if it is used as a residence.

(20) *Open-end credit* means consumer credit extended by a creditor under a plan in which:

(i) The creditor reasonably contemplates repeated transactions;

(ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and

(iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

(21) *Periodic rate* means a rate of finance charge that is or may be imposed by a creditor on a balance for a day, week, month, or other subdivision of a year.

(22) *Person* means a natural person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit.

(23) *Prepaid finance charge* means any finance charge paid separately in cash or by check before or at consummation of a transaction, or withheld from the proceeds of the credit at any time.

(24) *Residential mortgage transaction* means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling.

(25) *Security interest* means an interest in property that secures performance of a consumer credit obligation and that is recognized by State or Federal law. It does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after-acquired property. For purposes of disclosure under §§226.6 and 226.18, the term does not include an interest that arises solely by operation of law. However, for purposes of the right of rescission under §§226.15 and 226.23, the term does include interests that arise solely by operation of law.

(26) *State* means any state, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(b) *Rules of construction.* For purposes of this regulation, the following rules of construction apply:

(1) Where appropriate, the singular form of a word includes the plural form and plural includes singular.

(2) Where the words *obligation* and *transaction* are used in this regulation, they refer to a consumer credit obligation or transaction, depending upon the context. Where the word *credit* is used in this regulation, it means *consumer credit* unless the context clearly indicates otherwise.

(3) Unless defined in this regulation, the words used have the meanings given to them by state law or contract.

(4) Footnotes have the same legal effect as the text of the regulation.

(5) Where the word "amount" is used in this regulation to describe disclosure requirements, it refers to a numerical amount.

[Reg. Z, 46 FR 20892, Apr. 7, 1981; 46 FR 29246, June 1, 1981, as amended at 47 FR 7392, Feb. 19, 1982; 48 FR 14886, Apr. 6, 1983; 54 FR 13865, Apr. 6, 1989; 60 FR 15471, Mar. 24, 1995; 61 FR 49245, Sept. 19, 1996; 69 FR 16773, Mar. 31, 2004]

## § 226.3  Exempt transactions.

 top

This regulation does not apply to the following:[4]

[4] The provisions in §226.12 (a) and (b) governing the issuance of credit cards and the liability for their unauthorized use apply to all credit cards, even if the credit cards are issued for use in connection with extensions of credit that otherwise are exempt under this section.

(a) *Business, commercial, agricultural, or organizational credit.* (1) An extension of credit primarily for a business, commercial or agricultural purpose.

(2) An extension of credit to other than a natural person, including credit to government agencies or instrumentalities.

(b) *Credit over $25,000 not secured by real property or a dwelling.* An extension of credit not secured by real property, or by personal property used or expected to be used as the principal dwelling of the consumer, in which the amount financed exceeds $25,000 or in which there is an express written commitment to extend credit in excess of $25,000.

(c) *Public utility credit.* An extension of credit that involves public utility services provided through pipe, wire, other connected facilities, or radio or similar transmission (including extensions of such facilities), if the charges for service, delayed payment, or any discounts for prompt payment are filed with or regulated by any government unit. The financing of durable goods or home improvements by a public utility is not exempt.

(d) *Securities or commodities accounts.* Transactions in securities or commodities accounts in which credit is extended by a broker-dealer registered with the Securities and Exchange Commission or the Commodity Futures Trading Commission.

(e) *Home fuel budget plans.* An installment agreement for the purchase of home fuels in which no finance charge is imposed.

(f) *Student loan programs.* Loans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 *et seq.* ).

[46 FR 20892, Apr. 7, 1981, as amended at 48 FR 14886, Apr. 6, 1983; 49 FR 46991, Nov. 30, 1984]

## § 226.4   Finance charge.

 top

(a) *Definition.* The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

(1) *Charges by third parties.* The finance charge includes fees and amounts charged by someone other than the creditor, unless otherwise excluded under this section, if the creditor:

(i) requires the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or

(ii) retains a portion of the third-party charge, to the extent of the portion retained.

(2) *Special rule; closing agent charges.* Fees charged by a third party that conducts the loan closing (such as a settlement agent, attorney, or escrow or title company) are finance charges only if the creditor:

(i) Requires the particular services for which the consumer is charged;

(ii) Requires the imposition of the charge; or

(iii) Retains a portion of the third-party charge, to the extent of the portion retained.

(3) *Special rule; mortgage broker fees.* Fees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge.

(b) *Example of finance charge.* The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section:

(1) Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.

(2) Service, transaction, activity, and carrying charges, including any charge imposed on a checking or other transaction account to the extent that the charge exceeds the charge for a similar account without a credit feature.

(3) Points, loan fees, assumption fees, finder's fees, and similar charges.

(4) Appraisal, investigation, and credit report fees.

(5) Premiums or other charges for any guarantee or insurance protecting the creditor against the consumer's default or other credit loss.

(6) Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.

(7) Premiums or other charges for credit life, accident, health, or loss-of-income insurance, written in connection with a credit transaction.

(8) Premiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction.

(9) Discounts for the purpose of inducing payment by a means other than the use of credit.

(10) *Debt cancellation fees.* Charges or premiums paid for debt cancellation coverage written in connection with a credit transaction, whether or not the debt cancellation coverage is insurance under applicable law.

(c) *Charges excluded from the finance charge.* The following charges are not finance charges:

(1) Application fees charged to all applicants for credit, whether or not credit is actually extended.

(2) Charges for actual unanticipated late payment, for exceeding a credit limit, or for delinquency, default, or a similar occurrence.

(3) Charges imposed by a financial institution for paying items that overdraw an account, unless the payment of such items and the imposition of the charge were previously agreed upon in writing.

(4) Fees charged for participation in a credit plan, whether assessed on an annual or other periodic basis.

(5) Seller's points.

(6) Interest forfeited as a result of an interest reduction required by law on a time deposit used as security for an extension of credit.

(7) *Real-estate related fees.* The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:

(i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.

(ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.

(iii) Notary and credit report fees.

(iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.

(v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

(8) Discounts offered to induce payment for a purchase by cash, check, or other means, as provided in section 167(b) of the Act.

(d) *Insurance and debt cancellation coverage* —(1) *Voluntary credit insurance premiums.* Premiums for credit life, accident, health or loss-of-income insurance may be excluded from the finance charge if the following conditions are met:

(i) The insurance coverage is not required by the creditor, and this fact is disclosed in writing.

(ii) The premium for the initial term of insurance coverage is disclosed. If the term of insurance is less than the term of the transaction, the term of insurance also shall be disclosed. The premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under §226.17(g), and certain closed-end credit transactions involving an insurance plan that limits the total amount of indebtedness subject to coverage.

(iii) The consumer signs or initials an affirmative written request for the insurance after receiving the disclosures specified in this paragraph. Any consumer in the transaction may sign or initial the request.

(2) Premiums for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property,[5] may be excluded from the finance charge if the following conditions are met:

[5] This includes single interest insurance if the insurer waives all right of subrogation against the consumer.

(i) The insurance coverage may be obtained from a person of the consumer's choice,[6] and this fact is disclosed.

[6] A creditor may reserve the right to refuse to accept, for reasonable cause, an insurer offered by the consumer.

(ii) If the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed. If the term of insurance is less than the term of the transaction, the term of insurance shall also be disclosed. The premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under §226.17(g), and certain closed-end credit transactions involving an insurance plan that limits the total amount of indebtedness subject to coverage.

(3) *Voluntary debt cancellation fees.* (i) Charges or premiums paid for debt cancellation coverage of the type specified in paragraph (d)(3)(ii) of this section may be excluded from the finance charge, whether or not the coverage is insurance, if the following conditions are met:

(A) The debt cancellation agreement or coverage is not required by the creditor, and this fact is disclosed in writing;

(B) The fee or premium for the initial term of coverage is disclosed. If the term of coverage is less than the term of the credit transaction, the term of coverage also shall be disclosed. The fee or premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under §226.17(g), and certain closed-end credit transactions involving a debt cancellation agreement that limits the total amount of indebtedness subject to coverage;

(C) The consumer signs or initials an affirmative written request for coverage after receiving the

disclosures specified in this paragraph. Any consumer in the transaction may sign or initial the request.

(ii) Paragraph (d)(3)(i) of this section applies to fees paid for debt cancellation coverage that provides for cancellation of all or part of the debtor's liability for amounts exceeding the value of the collateral securing the obligation, or in the event of the loss of life, health, or income or in case of accident.

(e) *Certain security interest charges.* If itemized and disclosed, the following charges may be excluded from the finance charge:

(1) Taxes and fees prescribed by law that actually are or will be paid to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest.

(2) The premium for insurance in lieu of perfecting a security interest to the extent that the premium does not exceed the fees described in paragraph (e)(1) of this section that otherwise would be payable.

(3) *Taxes on security instruments.* Any tax levied on security instruments or on documents evidencing indebtedness if the payment of such taxes is a requirement for recording the instrument securing the evidence of indebtedness.

(f) *Prohibited offsets.* Interest, dividends, or other income received or to be received by the consumer on deposits or investments shall not be deducted in computing the finance charge.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 61 FR 49245, Sept. 19, 1996]

## Subpart B—Open-End Credit

 top

## § 226.5  General disclosure requirements.

 top

(a) *Form of disclosures.* (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing,[7] in a form that the consumer may keep.[8] The disclosures required by this subpart may be provided to the consumer in electronic form, subject to compliance with the consumer consent and other applicable provisions of the Electronic Signatures in Global and National Commerce Act (E-Sign Act) (15 U.S.C. §7001 *et seq.* ). The disclosures required by §§226.5a, 226.5b, and 226.16 may be provided to the consumer in electronic form without regard to the consumer consent or other provisions of the E-Sign Act in the circumstances set forth in those sections.

[7] The disclosure required by section 226.9(d) when a finance charge is imposed at the time of a transaction need not be written.

[8] The disclosures required under §226.5a for credit and charge card applications and solicitations, the home equity disclosures required under §226.5b(d), the alternative summary billing rights statement provided for in §226.9(a)(2s), the credit and charge card renewal disclosures required under §226.9(e), and the disclosures made under §226.10(b) about payment requirements need not be in a form that the consumer can keep.

(2) The terms *finance charge* and *annual percentage rate,* when required to be disclosed with a corresponding amount or percentage rate, shall be more conspicuous than any other required disclosure.[9]

[9] The terms need not be more conspicuous when used under §226.5a generally for credit and charge card applications and solicitations under §226.7(d) on periodic statements, under §226.9(e) in credit and charge card renewal disclosures, and under §226.16 in

advertisements. (But see special rule for annual percentage rate for purchases, §226.5a(b) (1).)

(3) Certain disclosures required under §226.5a for credit and charge card applications and solicitations must be provided in a tabular format or in a prominent location in accordance with the requirements of that section.

(4) For rules governing the form of disclosures for home equity plans, see §226.5b(a).

(b) *Time of disclosures* —(1) *Initial disclosures.* The creditor shall furnish the initial disclosure statement required by §226.6 before the first transaction is made under the plan.

(2) *Periodic statements.* (i) The creditor shall mail or deliver a periodic statement as required by §226.7 for each billing cycle at the end of which an account has a debit or credit balance of more than $1 or on which a finance charge has been imposed. A periodic statement need not be sent for an account if the creditor deems it uncollectible, or if delinquency collection proceedings have been instituted, or if furnishing the statement would violate Federal law.

(ii) The creditor shall mail or deliver the periodic statement at least 14 days prior to any date or the end of any time period required to be disclosed under §226.7(j) in order for the consumer to avoid an additional finance or other charge.[10] A creditor that fails to meet this requirement shall not collect any finance or other charge imposed as a result of such failure.

[10] This timing requirement does not apply if the creditor is unable to meet the requirement because of an act of God, war, civil disorder, natural disaster, or strike.

(3) *Credit and charge card application and solicitation disclosures.* The card issuer shall furnish the disclosures for credit and charge card applications and solicitations in accordance with the timing requirements of §226.5a.

(4) *Home equity plans.* Disclosures for home equity plans shall be made in accordance with the timing requirements of §226.5b(b).

(c) *Basis of disclosures and use of estimates.* Disclosures shall reflect the terms of the legal obligation between the parties. If any information necessary for accurate disclosure is unknown to the creditor, it shall make the disclosure based on the best information reasonably available and shall state clearly that the disclosure is an estimate.

(d) *Multiple creditors; multiple consumers.* If the credit plan involves more than one creditor, only one set of disclosures shall be given, and the creditors shall agree among themselves which creditor must comply with the requirements that this regulation imposes on any or all of them. If there is more than one consumer, the disclosures may be made to any consumer who is primarily liable on the account. If the right of rescission under §226.15 is applicable, however, the disclosures required by §§226.6 and 226.15(b) shall be made to each consumer having the right to rescind.

(e) *Effect of subsequent events.* If a disclosure becomes inaccurate because of an event that occurs after the creditor mails or delivers the disclosures, the resulting inaccuracy is not a violation of this regulation, although new disclosures may be required under §226.9(c).

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 54 FR 13865, Apr. 6, 1989; 54 FR 24686, June 9, 1989; 65 FR 58908, Oct. 3, 2000; 66 FR 17338, Mar. 30, 2001; 72 FR 63473, Nov. 9, 2007]

## § 226.5a  Credit and charge card applications and solicitations.

 top

(a) *General rules.* The card issuer shall provide the disclosures required under this section on or with a solicitation or an application to open a credit or charge card account.

(1) *Definition of solicitation.* For purposes of this section, the term *solicitation* means an offer by the card issuer to open a credit or charge card account that does not require the consumer to complete an application.

(2) *Form of disclosures.* (i) The disclosures in paragraphs (b) (1) through (7) of this section shall be provided in a prominent location on or with an application or a solicitation, or other applicable document, and in the form of a table with headings, content, and format substantially similar to any of the applicable tables found in appendix G.

(ii) The disclosures in paragraphs (b)(8) through (11) of this section shall be provided either in the table containing the disclosures in paragraphs (b)(1) through (7), or clearly and conspicuously elsewhere on or with the application or solicitation.

(iii) The disclosure required under paragraph (b)(5) of this section shall contain the term *grace period.*

(iv) The terminology in the disclosures under paragraph (b) of this section shall be consistent with that to be used in the disclosures under §§226.6 and 226.7.

(v) For an application or a solicitation that is accessed by the consumer in electronic form, the disclosures required under this section may be provided to the consumer in electronic form on or with the application or solicitation.

(3) *Exceptions.* This section does not apply to home-equity plans accessible by a credit or charge card that are of the type subject to the requirements of §226.5b; overdraft lines of credit tied to asset accounts accessed by check-guarantee cards or by debit cards; or lines of credit accessed by check-guarantee cards or by debit cards that can be used only at automated teller machines.

(4) *Fees based on a percentage.* If the amount of any fee required to be disclosed under this section is determined on the basis of a percentage of another amount, the percentage used and the identification of the amount against which the percentage is applied may be disclosed instead of the amount of the fee.

(5) *Certain fees that vary by state.* If the amount of any fee referred to in paragraphs (b)(8) through (11) of this section varies from state to state, the card issuer may disclose the range of the fees instead of the amount for each state, if the disclosure includes a statement that the amount of the fee varies from state to state.

(b) *Required disclosures.* The card issuer shall disclose the items in this paragraph on or with an application or a solicitation in accordance with the requirements of paragraphs (c), (d), or (e) of this section. A credit card issuer shall disclose all applicable items in this paragraph except for paragraph (b) (7) of this section. A charge card issuer shall disclose the applicable items in paragraphs (b)(2), (4), and (7) through (11) of this section.

(1) *Annual percentage rate.* Each periodic rate that may be used to compute the finance charge on an outstanding balance for purchases, a cash advance, or a balance transfer, expressed as an annual percentage rate (as determined by §226.14(b)). When more than one rate applies for a category of transactions, the range of balances to which each rate is applicable shall also be disclosed. The annual percentage rate for purchases disclosed pursuant to this paragraph shall be in at least 18-point type, except for the following: a temporary initial rate that is lower than the rate that will apply after the temporary rate expires, and a penalty rate that will apply upon the occurrence of one or more specific events.

(i) If the account has a variable rate, the card issuer shall also disclose the fact that the rate may vary and how the rate is determined.

(ii) When variable rate disclosures are provided under paragraph (c) of this section, an annual percentage rate disclosure is accurate if the rate was in effect within 60 days before mailing the disclosures. When variable rate disclosures are provided under paragraph (e) of this section, an annual percentage rate disclosure is accurate if the rate was in effect within 30 days before printing the disclosures. Disclosures provided by electronic communication are subject to paragraph (b)(1)(iii) of this section.

(iii) When variable rate disclosures are provided by electronic communication, an annual percentage rate disclosure is accurate if the rate was in effect within 30 days before mailing the disclosures to a consumer's electronic mail address. If disclosures are made available at another location such as the card issuer's Internet web site, the annual percentage rate must be one in effect within the last 30 days.

(2) *Fees for issuance or availability.* Any annual or other periodic fee, expressed as an annualized amount, or any other fee that may be imposed for the issuance or availability of a credit or charge card, including any fee based on account activity or inactivity.

(3) *Minimum finance charge.* Any minimum or fixed finance charge that could be imposed during a billing cycle.

(4) *Transaction charges.* Any transaction charge imposed for the use of the card for purchases.

(5) *Grace period.* The date by which or the period within which any credit extended for purchases may be repaid without incurring a finance charge. If no grace period is provided, that fact must be disclosed. If the length of the grace period varies, the card issuer may disclose the range of days, the minimum number of days, or the average number of days in the grace period, if the disclosure is identified as a range, minimum, or average.

(6) *Balance computation method.* The name of the balance computation method listed in paragraph (g) of this section that is used to determine the balance for purchases on which the finance charge is computed, or an explanation of the method used if it is not listed. The explanation may appear outside the table if the table contains a reference to the explanation. In determining which balance computation method to disclose, the card issuer shall assume that credit extended for purchases will not be repaid within the grace period, if any.

(7) *Statement on charge card payments.* A statement that charges incurred by use of the charge card are due when the periodic statement is received.

(8) *Cash advance fee.* Any fee imposed for an extension of credit in the form of cash.

(9) *Late payment fee.* Any fee imposed for a late payment.

(10) *Over-the-limit fee.* Any fee imposed for exceeding a credit limit.

(11) *Balance transfer fee.* Any fee imposed to transfer an outstanding balance.

(c) *Direct-mail and electronic applications and solicitations.* The card issuer shall disclose the applicable items in paragraph (b) of this section on or with an application or solicitation that is mailed to consumers or provided by electronic communication.

(d) *Telephone applications and solicitations—* (1) *Oral disclosure.* The card issuer shall orally disclose the information in paragraphs (b) (1) through (7) of this section, to the extent applicable, in a telephone application or solicitation initiated by the card issuer.

(2) *Alternative disclosure.* The oral disclosure under paragraph (d)(1) of this section need not be given if the card issuer either does not impose a fee described in paragraph (b)(2) of this section or does not impose such a fee unless the consumer uses the card, and the card issuer discloses in writing within 30 days after the consumer requests the card (but in no event later than the delivery of the card) the following:

(i) The applicable information in paragraph (b) of this section; and

(ii) The fact that the consumer need not accept the card or pay any fee disclosed unless the consumer uses the card.

(e) *Applications and solicitations made available to general public.* The card issuer shall provide disclosures, to the extent applicable, on or with an application or solicitation that is made available to the general public, including one contained in a catalog, magazine, or other generally available publication.

The disclosures shall be provided in accordance with paragraph (e) (1), (2) or (3) of this section.

(1) *Disclosure of required credit information.* The card issuer may disclose in a prominent location on the application or solicitation the following:

(i) The applicable information in paragraph (b) of this section;

(ii) The date the required information was printed, including a statement that the required information was accurate as of that date and is subject to change after that date; and

(iii) A statement that the consumer should contact the card issuer for any change in the required information since it was printed, and a toll-free telephone number or a mailing address for that purpose.

(2) *Inclusion of certain initial disclosures.* The card issuer may disclose on or with the application or solicitation the following:

(i) The disclosures required under §226.6 (a) through (c); and

(ii) A statement that the consumer should contact the card issuer for any change in the required information, and a toll-free telephone number or a mailing address for that purpose.

(3) *No disclosure of credit information.* If none of the items in paragraph (b) of this section is provided on or with the application or solicitation, the card issuer may state in a prominent location on the application or solicitation the following:

(i) There are costs associated with the use of the card; and

(ii) The consumer may contact the card issuer to request specific information about the costs, along with a toll-free telephone number and a mailing address for that purpose.

(4) *Prompt response to requests for information.* Upon receiving a request for any of the information referred to in this paragraph, the card issuer shall promptly and fully disclose the information requested.

(f) *Special charge card rule—card issuer and person extending credit not the same person.* If a cardholder may by use of a charge card access an open-end credit plan that is not maintained by the charge card issuer, the card issuer need not provide the disclosures in paragraphs (c), (d) or (e) of this section for the open-end credit plan if the card issuer states on or with an application or a solicitation the following:

(1) The card issuer will make an independent decision whether to issue the card;

(2) The charge card may arrive before the decision is made about extending credit under the open-end credit plan; and

(3) Approval for the charge card does not constitute approval for the open-end credit plan.

(g) *Balance computation methods defined.* The following methods may be described by name. Methods that differ due to variations such as the allocation of payments, whether the finance charge begins to accrue on the transaction date or the date of posting the transaction, the existence or length of a grace period, and whether the balance is adjusted by charges such as late fees, annual fees and unpaid finance charges do not constitute separate balance computation methods.

(1)(i) *Average daily balance (including new purchases).* This balance is figured by adding the outstanding balance (including new purchases and deducting payments and credits) for each day in the billing cycle, and then dividing by the number of days in the billing cycle.

(ii) *Average daily balance (excluding new purchases).* This balance is figured by adding the outstanding balance (excluding new purchases and deducting payments and credits) for each day in the billing cycle, and then dividing by the number of days in the billing cycle.

(2)(i) *Two-cycle average daily balance (including new purchases).* This balance is the sum of the average daily balances for two billing cycles. The first balance is for the current billing cycle, and is figured by adding the outstanding balance (including new purchases and deducting payments and credits) for each day in the billing cycle, and then dividing by the number of days in the billing cycle. The second balance is for the preceding billing cycle.

(ii) *Two-cycle average daily balance (excluding new purchases).* This balance is the sum of the average daily balances for two billing cycles. The first balance is for the current billing cycle, and is figured by adding the outstanding balance (excluding new purchases and deducting payments and credits) for each day in the billing cycle, and then dividing by the number of days in the billing cycle. The second balance is for the preceding billing cycle.

(3) *Adjusted balance.* This balance is figured by deducting payments and credits made during the billing cycle from the outstanding balance at the beginning of the billing cycle.

(4) *Previous balance.* This balance is the outstanding balance at the beginning of the billing cycle.

[Reg. Z, 54 FR 13865, Apr. 6, 1989, as amended at 54 FR 24686, June 9, 1989; 54 FR 32954, Aug. 11, 1989; 65 FR 17131, Mar. 31, 2000; 65 FR 58908, Oct. 3, 2000; 66 FR 17338, Mar. 30, 2001; 72 FR 63473, Nov. 9, 2007]

### § 226.5b  Requirements for home equity plans.

 top

The requirements of this section apply to open-end credit plans secured by the consumer's dwelling. For purposes of this section, an annual percentage rate is the annual percentage rate corresponding to the periodic rate as determined under §226.14(b).

(a) *Form of disclosures* —(1) *General.* The disclosures required by paragraph (d) of this section shall be made clearly and conspicuously and shall be grouped together and segregated from all unrelated information. The disclosures may be provided on the application form or on a separate form. The disclosure described in paragraph (d)(4)(iii), the itemization of third-party fees described in paragraph (d) (8), and the variable-rate information described in paragraph (d)(12) of this section may be provided separately from the other required disclosures.

(2) *Precedence of certain disclosures.* The disclosures described in paragraph (d)(1) through (4)(ii) of this section shall precede the other required disclosures.

(3) For an application that is accessed by the consumer in electronic form, the disclosures required under this section may be provided to the consumer in electronic form on or with the application.

(b) *Time of disclosures.* The disclosures and brochure required by paragraphs (d) and (e) of this section shall be provided at the time an application is provided to the consumer.[10a]

[10a] The disclosures and the brochure may be delivered or placed in the mail not later than three business days following receipt of a consumer's application in the case of applications contained in magazines or other publications, or when the application is received by telephone or through an intermediary agent or broker.

(c) *Duties of third parties* — Persons other than the creditor who provide applications to consumers for home equity plans must provide the brochure required under paragraph (e) of this section at the time an application is provided. If such persons have the disclosures required under paragraph (d) of this section for a creditor's home equity plan, they also shall provide the disclosures at such time.[10a]

(d) *Content of disclosures.* The creditor shall provide the following disclosures, as applicable:

(1) *Retention of information.* A statement that the consumer should make or otherwise retain a copy of

the disclosures.

(2) *Conditions for disclosed terms.* (i) A statement of the time by which the consumer must submit an application to obtain specific terms disclosed and an identification of any disclosed term that is subject to change prior to opening the plan.

(ii) A statement that, if a disclosed term changes (other than a change due to fluctuations in the index in a variable-rate plan) prior to opening the plan and the consumer therefore elects not to open the plan, the consumer may receive a refund of all fees paid in connection with the application.

(3) *Security interest and risk to home.* A statement that the creditor will acquire a security interest in the consumer's dwelling and that loss of the dwelling may occur in the event of default.

(4) *Possible actions by creditor.* (i) A statement that, under certain conditions, the creditor may terminate the plan and require payment of the outstanding balance in full in a single payment and impose fees upon termination; prohibit additional extensions of credit or reduce the credit limit; and, as specified in the initial agreement, implement certain changes in the plan.

(ii) A statement that the consumer may receive, upon request, information about the conditions under which such actions may occur.

(iii) In lieu of the disclosure required under paragraph (d)(4)(ii) of this section, a statement of such conditions.

(5) *Payment terms.* The payment terms of the plan, including:

(i) The length of the draw period and any repayment period.

(ii) An explanation of how the minimum periodic payment will be determined and the timing of the payments. If paying only the minimum periodic payments may not repay any of the principal or may repay less than the outstanding balance, a statement of this fact, as well as a statement that a balloon payment may result.[10b]

[10b] A balloon payment results if paying the minimum periodic payments does not fully amortize the outstanding balance by a specified date or time, and the consumer must repay the entire outstanding balance at such time.

(iii) An example, based on a $10,000 outstanding balance and a recent annual percentage rate,[10c] showing the minimum periodic payment, any balloon payment, and the time it would take to repay the $10,000 outstanding balance if the consumer made only those payments and obtained no additional extensions of credit.

[10c] For fixed-rate plans, a recent annual percentage rate is a rate that has been in effect under the plan within the twelve months preceding the date the disclosures are provided to the consumer. For variable-rate plans, a recent annual percentage rate is the most recent rate provided in the historical example described in paragraph (d)(12)(xi) of this section or a rate that has been in effect under the plan since the date of the most recent rate in the table.

If different payment terms may apply to the draw and any repayment period, or if different payment terms may apply within either period, the disclosures shall reflect the different payment terms.

(6) *Annual percentage rate.* For fixed-rate plans, a recent annual percentage rate[10c] imposed under the plan and a statement that the rate does not include costs other than interest.

(7) *Fees imposed by creditor.* An itemization of any fees imposed by the creditor to open, use, or maintain the plan, stated as a dollar amount or percentage, and when such fees are payable.

(8) *Fees imposed by third parties to open a plan.* A good faith estimate, stated as a single dollar amount

or range, of any fees that may be imposed by persons other than the creditor to open the plan, as well as a statement that the consumer may receive, upon request, a good faith itemization of such fees. In lieu of the statement, the itemization of such fees may be provided.

(9) *Negative amortization.* A statement that negative amortization may occur and that negative amortization increases the principal balance and reduces the consumer's equity in the dwelling.

(10) *Transaction requirements.* Any limitations on the number of extensions of credit and the amount of credit that may be obtained during any time period, as well as any minimum outstanding balance and minimum draw requirements, stated as dollar amounts or percentages.

(11) *Tax implications.* A statement that the consumer should consult a tax advisor regarding the deductibility of interest and charges under the plan.

(12) *Disclosures for variable-rate plans.* For a plan in which the annual percentage rate is variable, the following disclosures, as applicable:

(i) The fact that the annual percentage rate, payment, or term may change due to the variable-rate feature.

(ii) A statement that the annual percentage rate does not include costs other than interest.

(iii) The index used in making rate adjustments and a source of information about the index.

(iv) An explanation of how the annual percentage rate will be determined, including an explanation of how the index is adjusted, such as by the addition of a margin.

(v) A statement that the consumer should ask about the current index value, margin, discount or premium, and annual percentage rate.

(vi) A statement that the initial annual percentage rate is not based on the index and margin used to make later rate adjustments, and the period of time such initial rate will be in effect.

(vii) The frequency of changes in the annual percentage rate.

(viii) Any rules relating to changes in the index value and the annual percentage rate and resulting changes in the payment amount, including, for example, an explanation of payment limitations and rate carryover.

(ix) A statement of any annual or more frequent periodic limitations on changes in the annual percentage rate (or a statement that no annual limitation exists), as well as a statement of the maximum annual percentage rate that may be imposed under each payment option.

(x) The minimum periodic payment required when the maximum annual percentage rate for each payment option is in effect for a $10,000 outstanding balance, and a statement of the earliest date or time the maximum rate may be imposed.

(xi) An historical example, based on a $10,000 extension of credit, illustrating how annual percentage rates and payments would have been affected by index value changes implemented according to the terms of the plan. The historical example shall be based on the most recent 15 years of index values (selected for the same time period each year) and shall reflect all significant plan terms, such as negative amortization, rate carryover, rate discounts, and rate and payment limitations, that would have been affected by the index movement during the period.

(xii) A statement that rate information will be provided on or with each periodic statement.

(e) *Brochure.* The home equity brochure published by the Board or a suitable substitute shall be provided.

Case 1:08-cv-01819-PAC    Document 2    Filed 04/10/2008    Page 50 of 91

(f) *Limitations on home equity plans.* No creditor may, by contract or otherwise:

(1) Change the annual percentage rate unless:

(i) Such change is based on an index that is not under the creditor's control; and

(ii) Such index is available to the general public.

(2) Terminate a plan and demand repayment of the entire outstanding balance in advance of the original term (except for reverse mortgage transactions that are subject to paragraph (f)(4) of this section) unless:

(i) There is fraud or material misrepresentation by the consumer in connection with the plan;

(ii) The consumer fails to meet the repayment terms of the agreement for any outstanding balance;

(iii) Any action or inaction by the consumer adversely affects the creditor's security for the plan, or any right of the creditor in such security; or

(iv) Federal law dealing with credit extended by a depository institution to its executive officers specifically requires that as a condition of the plan the credit shall become due and payable on demand, provided that the creditor includes such a provision in the initial agreement.

(3) Change any term, except that a creditor may:

(i) Provide in the initial agreement that it may prohibit additional extensions of credit or reduce the credit limit during any period in which the maximum annual percentage rate is reached. A creditor also may provide in the initial agreement that specified changes will occur if a specified event takes place (for example, that the annual percentage rate will increase a specified amount if the consumer leaves the creditor's employment).

(ii) Change the index and margin used under the plan if the original index is no longer available, the new index has an historical movement substantially similar to that of the original index, and the new index and margin would have resulted in an annual percentage rate substantially similar to the rate in effect at the time the original index became unavailable.

(iii) Make a specified change if the consumer specifically agrees to it in writing at that time.

(iv) Make a change that will unequivocally benefit the consumer throughout the remainder of the plan.

(v) Make an insignificant change to terms.

(vi) Prohibit additional extensions of credit or reduce the credit limit applicable to an agreement during any period in which:

(A) The value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the plan;

(B) The creditor reasonably believes that the consumer will be unable to fulfill the repayment obligations under the plan because of a material change in the consumer's financial circumstances;

(C) The consumer is in default of any material obligation under the agreement;

(D) The creditor is precluded by government action from imposing the annual percentage rate provided for in the agreement;

(E) The priority of the creditor's security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of the credit line; or

(F) The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

(4) For reverse mortgage transactions that are subject to §226.33, terminate a plan and demand repayment of the entire outstanding balance in advance of the original term except:

(i) In the case of default;

(ii) If the consumer transfers title to the property securing the note;

(iii) If the consumer ceases using the property securing the note as the primary dwelling; or

(iv) Upon the consumer's death.

(g) *Refund of fees.* A creditor shall refund all fees paid by the consumer to anyone in connection with an application if any term required to be disclosed under paragraph (d) of this section changes (other than a change due to fluctuations in the index in a variable-rate plan) before the plan is opened and, as a result, the consumer elects not to open the plan.

(h) *Imposition of nonrefundable fees.* Neither a creditor nor any other person may impose a nonrefundable fee in connection with an application until three business days after the consumer receives the disclosures and brochure required under this section.[10d]

[10d] If the disclosures and brochure are mailed to the consumer, the consumer is considered to have received them three business days after they are mailed.

[Reg. Z, 54 FR 24686, June 9, 1989, as amended at 55 FR 38312, Sept. 18, 1990; 55 FR 42148, Oct. 17, 1990; 57 FR 34681, Aug. 6, 1992; 60 FR 15471, Mar. 24, 1995; 66 FR 17338, Mar. 30, 2001; 72 FR 63474, Nov. 9, 2007]

## § 226.6  Initial disclosure statement.

 top

The creditor shall disclose to the consumer, in terminology consistent with that to be used on the periodic statement, each of the following items, to the extent applicable:

(a) *Finance charge.* The circumstances under which a finance charge will be imposed and an explanation of how it will be determined, as follows:

(1) A statement of when finance charges begin to accrue, including an explanation of whether or not any time period exists within which any credit extended may be repaid without incurring a finance charge. If such a time period is provided, a creditor may, at its option and without disclosure, impose no finance charge when payment is received after the time period's expiration.

(2) A disclosure of each periodic rate that may be used to compute the finance charge, the range of balances to which it is applicable,[11] and the corresponding annual percentage rate.[12] When different periodic rates apply to different types of transactions, the types of transactions to which the periodic rates apply shall also be disclosed.

[11] A creditor is not required to adjust the range of balances disclosure to reflect the balance below which only a minimum charge applies.

[12] If a creditor is offering a variable rate plan, the creditor shall also disclose: (1) The circumstances under which the rate(s) may increase; (2) any limitations on the increase; and (3) the effect(s) of an increase.

(3) An explanation of the method used to determine the balance on which the finance charge may be computed.

(4) An explanation of how the amount of any finance charge will be determined,[13] including a description of how any finance charge other than the periodic rate will be determined.

[13] If no finance charge is imposed when the outstanding balance is less than a certain amount, no disclosure is required of that fact or of the balance below which no finance charge will be imposed.

(b) *Other charges.* The amount of any charge other than a finance charge that may be imposed as part of the plan, or an explanation of how the charge will be determined.

(c) *Security interests.* The fact that the creditor has or will acquire a security interest in the property purchased under the plan, or in other property identified by item or type.

(d) *Statement of billing rights.* A statement that outlines the consumer's rights and the creditor's responsibilities under §§226.12(c) and 226.13 and that is substantially similar to the statement found in appendix G.

(e) *Home equity plan information.* The following disclosures described in §226.5b(d), as applicable:

(1) A statement of the conditions under which the creditor may take certain action, as described in §226.5b(d)(4)(i), such as terminating the plan or changing the terms.

(2) The payment information described in §226.5b(d)(5) (i) and (ii) for both the draw period and any repayment period.

(3) A statement that negative amortization may occur as described in §226.5b(d)(9).

(4) A statement of any transaction requirements as described in §226.5b(d)(10).

(5) A statement regarding the tax implications as described in §226.5b(d)(11).

(6) A statement that the annual percentage rate imposed under the plan does not include costs other than interest as described in §§226.5b(d)(6) and (d)(12)(ii).

(7) The variable-rate disclosures described in §226.5b(d)(12) (viii), (x), (xi), and (xii), as well as the disclosure described in §226.5b(d)(5)(iii), unless the disclosures provided with the application were in a form the consumer could keep and included a representative payment example for the category of payment option chosen by the consumer.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 54 FR 24688, June 9, 1989]

### § 226.7  Periodic statement.

 top

The creditor shall furnish the consumer with a periodic statement that discloses the following items, to the extent applicable:

(a) *Previous balance.* The account balance outstanding at the beginning of the billing cycle.

(b) *Identification of transactions.* An identification of each credit transaction in accordance with §226.8.

(c) *Credits.* Any credit to the account during the billing cycle, including the amount and the date of crediting. The date need not be provided if a delay in crediting does not result in any finance or other

charge.

(d) *Periodic rates.* Each periodic rate that may be used to compute the finance charge, the range of balances to which it is applicable,[14] and the corresponding annual percentage rate.[15] If different periodic rates apply to different types of transactions, the types of transactions to which the periodic rates apply shall also be disclosed.

[14] See footnotes 11 and 13.

[15] If a variable rate plan is involved, the creditor shall disclose the fact that the periodic rate(s) may vary.

(e) *Balance on which finance charge computed.* The amount of the balance to which a periodic rate was applied and an explanation of how that balance was determined. When a balance is determined without first deducting all credits and payments made during the billing cycle, that fact and the amount of the credits and payments shall be disclosed.

(f) *Amount of finance charge.* The amount of any finance charge debited or added to the account during the billing cycle, using the term *finance charge.* The components of the finance charge shall be individually itemized and identified to show the amount(s) due to the appliction of any periodic rates and the amount(s) of any other type of finance charge. If there is more than one periodic rate, the amount of the finance charge attributable to each rate need not be separately itemized and identified.

(g) *Annual percentage rate.* When a finance charge is imposed during the billing cycle, the annual percentage rate(s) determined under §226.14, using the term *annual percentage rate.*

(h) *Other charges.* The amounts, itemized and identified by type, of any charges other than finance charges debited to the account during the billing cycle.

(i) *Closing date of billing cycle; new balance.* The closing date of the billing cycle and the account balance outstanding on that date.

(j) *Free-ride period.* The date by which or the time period within which the new balance or any portion of the new balance must be paid to avoid additional finance charges. If such a time period is provided, a creditor may, at its option and without disclosure, impose no finance charge when payment is received after the time period's expiration.

(k) *Address for notice of billing errors.* The address to be used for notice of billing errors. Alternatively, the address may be provided on the billing rights statement permitted by §226.9(a)(2).

[46 FR 20892, Apr. 7, 1981; 46 FR 29246, June 1, 1981]

## § 226.8   Identification of transactions.

 top

The creditor shall identify credit transactions on or with the first periodic statement that reflects the transaction by furnishing the following information, as applicable.[16]

[16] Failure to disclose the information required by this section shall not be deemed a failure to comply with the regulation if: (1) The creditor maintains procedures reasonably adapted to obtain and provide the information; and (2) the creditor treats an inquiry for clarification or documentation as a notice of a billing error, including correcting the account in accordance with §226.13(e). This applies to transactions that take place outside a state, as defined in §226.2(a), whether or not the creditor maintains procedures reasonably adapted to obtain the required information.

(a) *Sale credit.* For each credit transaction involving the sale of property or services, the following rules shall apply:

(1) *Copy of credit document provided.* When an actual copy of the receipt or other credit document is provided with the first periodic statement reflecting the transaction, the transaction is sufficiently identified if the amount of the transaction and either the date of the transaction or the date of debiting the transaction to the consumer's account are disclosed on the copy or on the periodic statement.

(2) *Copy of credit document not provided—creditor and seller same or related person(s).* When the creditor and the seller are the same person or related persons, and an actual copy of the receipt or other credit document is not provided with the periodic statement, the creditor shall disclose the amount and date of the transaction, and a brief identification[17] of the property or services purchased.[18]

[17] As an alternative to the brief identification, the creditor may disclose a number or symbol that also appears on the receipt or other credit document given to the consumer, if the number or symbol reasonably identifies that transaction with that creditor, and if the creditor treats an inquiry for clarification or documentation as a notice of a billing error, including correcting the account in accordance with §226.13(e).

[18] An identification of property or services may be replaced by the seller's name and location of the transaction when: (1) The creditor and the seller are the same person; (2) the creditor's open-end plan has fewer than 15,000 accounts; (3) the creditor provides the consumer with point-of-sale documentation for that transaction; and (4) the creditor treats an inquiry for clarification or documentation as a notice of a billing error, including correcting the account in accordance with §226.13(e).

(3) *Copy of credit document not provided—creditor and seller not same or related person(s).* When the creditor and seller are not the same person or related persons, and an actual copy of the receipt or other credit document is not provided with the periodic statement, the creditor shall disclose the amount and date of the transaction; the seller's name; and the city, and state or foreign country where the transaction took place.[19]

[19] The creditor may omit the address or provide any suitable designation that helps the consumer to identify the transaction when the transaction (1) took place at a location that is not fixed; (2) took place in the consumer's home; or (3) was a mail or telephone order.

(b) *Nonsale credit.* A nonsale credit transaction is sufficiently identified if the first periodic statement reflecting the transaction discloses a brief identification of the transaction;[20] the amount of the transaction; and at least one of the following dates: the date of the transaction, the date of debiting the transaction to the consumer's account, or, if the consumer signed the credit document, the date appearing on the document. If an actual copy of the receipt or other credit document is provided and that copy shows the amount and at least one of the specified dates, the brief identification may be omitted.

[20] See Footnote 17.

[46 FR 20892, Apr. 7, 1981; 46 FR 29246, June 1, 1981]

## § 226.9  Subsequent disclosure requirements.

 top

(a) *Furnishing statement of billing rights—* (1) *Annual statement.* The creditor shall mail or deliver the billing rights statement required by §226.6(d) at least once per calendar year, at intervals of not less than 6 months nor more than 18 months, either to all consumers or to each consumer entitled to receive a periodic statement under §226.5(b)(2) for any one billing cycle.

(2) *Alternative summary statement.* As an alternative to paragraph (a)(1) of this section, the creditor may

mail or deliver, on or with each periodic statement, a statement substantially similar to that in appendix G.

(b) *Disclosures for supplemental credit devices and additional features*— (1) If a creditor, within 30 days after mailing or delivering the initial disclosures under §226.6(a), adds a credit feature to the consumer's account or mails or delivers to the consumer a credit device for which the finance charge terms are the same as those previously disclosed, no additional disclosures are necessary. After 30 days, if the creditor adds a credit feature or furnishes a credit device (other than as a renewal, resupply, or the original issuance of a credit card) on the same finance charge terms, the creditor shall disclose, before the consumer uses the feature or device for the first time, that it is for use in obtaining credit under the terms previously disclosed.

(2) Whenever a credit feature is added or a credit device is mailed or delivered, and the finance charge terms for the feature or device differ from disclosures previously given, the disclosures required by §226.6(a) that are applicable to the added feature or device shall be given before the consumer uses the feature or device for the first time.

(c) *Change in terms*— (1) *Written notice required.* Whenever any term required to be disclosed under §226.6 is changed or the required minimum periodic payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected. The notice shall be mailed or delivered at least 15 days prior to the effective date of the change. The 15-day timing requirement does not apply if the change has been agreed to by the consumer, or if a periodic rate or other finance charge is increased because of the consumer's delinquency or default; the notice shall be given, however, before the effective date of the change.

(2) *Notice not required.* No notice under this section is required when the change involves late payment charges, charges for documentary evidence, or over-the-limit charges; a reduction of any component of a finance or other charge; suspension of future credit privileges or termination of an account or plan; or when the change results from an agreement involving a court proceeding, or from the consumer's default or delinquency (other than an increase in the periodic rate or other finance charge).

(3) *Notice for home equity plans.* If a creditor prohibits additional extensions of credit or reduces the credit limit applicable to a home equity plan pursuant to §226.5b(f)(3)(i) or §226.5b(f)(3)(vi), the creditor shall mail or deliver written notice of the action to each consumer who will be affected. The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action. If the creditor requires the consumer to request reinstatement of credit privileges, the notice also shall state that fact.

(d) *Finance charge imposed at time of transaction.* (1) Any person, other than the card issuer, who imposes a finance charge at the time of honoring a consumer's credit card, shall disclose the amount of that finance charge prior to its imposition.

(2) The card issuer, if other than the person honoring the consumer's credit card, shall have no responsibility for the disclosure required by paragraph (d)(1) of this section, and shall not consider any such charge for purposes of §§226.5a, 226.6 and 226.7.

(e) *Disclosures upon renewal of credit or charge card*— (1) *Notice prior to renewal.* Except as provided in paragraph (e)(2) of this section, a card issuer that imposes any annual or other periodic fee to renew a credit or charge card account of the type subject to §226.5a, including any fee based on account activity or inactivity, shall mail or deliver written notice of the renewal to the cardholder. The notice shall be provided at least 30 days or one billing cycle, whichever is less, before the mailing or the delivery of the periodic statement on which the renewal fee is initially charged to the account. The notice shall contain the following information:

(i) The disclosures contained in §226.5a(b) (1) through (7) that would apply if the account were renewed;[20a] and

[20a] These disclosures need not be provided in tabular format or in a prominent location.

(ii) How and when the cardholder may terminate credit availability under the account to avoid paying the renewal fee.

(2) *Delayed notice.* The disclosures required by paragraph (e)(1) of this section may be provided later than the time in paragraph (e)(1) of this section, but no later than the mailing or the delivery of the periodic statement on which the renewal fee is initially charged to the account, if the card issuer also discloses at that time that:

(i) The cardholder has 30 days from the time the periodic statement is mailed or delivered to avoid paying the fee or to have the fee recredited if the cardholder terminates credit availability under the account; and

(ii) The cardholder may use the card during the interim period without having to pay the fee.

(3) *Notification on periodic statements.* The disclosures required by this paragraph may be made on or with a periodic statement. If any of the disclosures are provided on the back of a periodic statement, the card issuer shall include a reference to those disclosures on the front of the statement.

(f) *Change in credit card account insurance provided*— (1) *Notice prior to change.* If a credit card issuer plans to change the provider of insurance for repayment of all or part of the outstanding balance of an open-end credit card account of the type subject to §226.5a, the card issuer shall mail or deliver the cardholder written notice of the change not less than 30 days before the change in providers occurs. The notice shall also include the following items, to the extent applicable:

(i) Any increase in the rate that will result from the change;

(ii) Any substantial decrease in coverage that will result from the change; and

(iii) A statement that the cardholder may discontinue the insurance.

(2) *Notice when change in provider occurs.* If a change described in paragraph (f)(1) of this section occurs, the card issuer shall provide the cardholder with a written notice no later than 30 days after the change, including the following items, to the extent applicable:

(i) The name and address of the new insurance provider;

(ii) A copy of the new policy or group certificate containing the basic terms of the insurance, including the rate to be charged; and

(iii) A statement that the cardholder may discontinue the insurance.

(3) *Substantial decrease in coverage.* For purposes of this paragraph, a substantial decrease in coverage is a decrease in a significant term of coverage that might reasonably be expected to affect the cardholder's decision to continue the insurance. Significant terms of coverage include, for example, the following:

(i) Type of coverage provided;

(ii) Age at which coverage terminates or becomes more restrictive;

(iii) Maximum insurable loan balance, maximum periodic benefit payment, maximum number of payments, or other term affecting the dollar amount of coverage or benefits provided;

(iv) Eligibility requirements and number and identity of persons covered;

(v) Definition of a key term of coverage such as disability;

(vi) Exclusions from or limitations on coverage; and

(vii) Waiting periods and whether coverage is retroactive.

(4) *Combined notification.* The notices required by paragraph (f) (1) and (2) of this section may be combined provided the timing requirement of paragraph (f)(1) of this section is met. The notices may be provided on or with a periodic statement.

[Reg. Z, 46 FR 20892, Apr. 7, 1981; 46 FR 29246, June 1, 1981, as amended at 54 FR 13867, Apr. 6, 1989; 54 FR 24688, June 9, 1989; 54 FR 32954, Aug. 11, 1989; 55 FR 38312, Sept. 18, 1990; 55 FR 42148, Oct. 17, 1990]

## § 226.10   Prompt crediting of payments.

 top

(a) *General rule.* A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge or except as provided in paragraph (b) of this section.

(b) *Specific requirements for payments.* If a creditor specifies, on or with the periodic statement, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt.

(c) *Adjustment of account.* If a creditor fails to credit a payment, as required by paragraphs (a) and (b) of this section, in time to avoid the imposition of finance or other charges, the creditor shall adjust the consumer's account so that the charges imposed are credited to the consumer's account during the next billing cycle.

## § 226.11   Treatment of credit balances.

 top

When a credit balance in excess of $1 is created on a credit account (through transmittal of funds to a creditor in excess of the total balance due on an account, through rebates of unearned finance charges or insurance premiums, or through amounts otherwise owed to or held for the benefit of a consumer), the creditor shall:

(a) Credit the amount of the credit balance to the consumer's account;

(b) Refund any part of the remaining credit balance within 7 business days from receipt of a written request from the consumer; and

(c) Make a good faith effort to refund to the consumer by cash, check, or money order, or credit to a deposit account of the consumer, any part of the credit balance remaining in the account for more than 6 months. No further action is required if the consumer's current location is not known to the creditor and cannot be traced through the consumer's last known address or telephone number.

## § 226.12   Special credit card provisions.

 top

(a) *Issuance of credit cards.* Regardless of the purpose for which a credit card is to be used, including business, commercial, or agricultural use, no credit card shall be issued to any person except:

(1) In response to an oral or written request or application for the card; or

(2) As a renewal of, or substitute for, an accepted credit card.[21]

[21] For purposes of this section, *accepted credit card* means any credit card that a cardholder

has requested or applied for and received, or has signed, used, or authorized another person to use to obtain credit. Any credit card issued as a renewal or substitute in accordance with this paragraph becomes an accepted credit card when received by the cardholder.

(b) *Liability of cardholder for unauthorized use*— (1) *Limitation on amount.* The liability of a cardholder for unauthorized use[22] of a credit card shall not exceed the lesser of $50 or the amount of money, property, labor, or services obtained by the unauthorized use before notification to the card issuer under paragraph (b)(3) of this section.

[22] *Unauthorized use* means the use of a credit card by a person, other than the cardholder, who does not have actual, implied, or apparent authority for such use, and from which the cardholder receives no benefit.

(2) *Conditions of liability.* A cardholder shall be liable for unauthorized use of a credit card only if:

(i) The credit card is an accepted credit card;

(ii) The card issuer has provided adequate notice[23] of the cardholder's maximum potential liability and of means by which the card issuer may be notified of loss or theft of the card. The notice shall state that the cardholder's liability shall not exceed $50 (or any lesser amount) and that the cardholder may give oral or written notification, and shall describe a means of notification (for example, a telephone number, an address, or both); and

[23] *Adequate notice* means a printed notice to a cardholder that sets forth clearly the pertinent facts so that the cardholder may reasonably be expected to have noticed it and understood its meaning. The notice may be given by any means reasonably assuring receipt by the cardholder.

(iii) The card issuer has provided a means to identify the cardholder on the account or the authorized user of the card.

(3) *Notification to card issuer.* Notification to a card issuer is given when steps have been taken as may be reasonably required in the ordinary course of business to provide the card issuer with the pertinent information about the loss, theft, or possible unauthorized use of a credit card, regardless of whether any particular officer, employee, or agent of the card issuer does, in fact, receive the information. Notification may be given, at the option of the person giving it, in person, by telephone, or in writing. Notification in writing is considered given at the time of receipt or, whether or not received, at the expiration of the time ordinarily required for transmission, whichever is earlier.

(4) *Effect of other applicable law or agreement.* If state law or an agreement between a cardholder and the card issuer imposes lesser liability than that provided in this paragraph, the lesser liability shall govern.

(5) *Business use of credit cards.* If 10 or more credit cards are issued by one card issuer for use by the employees of an organization, this section does not prohibit the card issuer and the organization from agreeing to liability for unauthorized use without regard to this section. However, liability for unauthorized use may be imposed on an employee of the organization, by either the card issuer or the organization, only in accordance with this section.

(c) *Right of cardholder to assert claims or defenses against card issuer* [24] —(1) *General rule.* When a person who honors a credit card fails to resolve satisfactorily a dispute as to property or services purchased with the credit card in a consumer credit transaction, the cardholder may assert against the card issuer all claims (other than tort claims) and defenses arising out of the transaction and relating to the failure to resolve the dispute. The cardholder may withhold payment up to the amount of credit outstanding for the property or services that gave rise to the dispute and any finance or other charges imposed on that amount.[25]

[24] This paragraph does not apply to the use of a check guarantee card or a debit card in connection with an overdraft credit plan, or to a check guarantee card used in connection with

cash advance checks.

[25] The amount of the claim or defense that the cardholder may assert shall not exceed the amount of credit outstanding for the disputed transaction at the time the cardholder first notifies the card issuer or the person honoring the credit card of the existence of the claim or defense. To determine the amount of credit outstanding for purposes of this section, payments and other credits shall be applied to: (1) Late charges in the order of entry to the account; then to (2) finance charges in the order of entry to the account; and then to (3) any other debits in the order of entry to the account. If more than one item is included in a single extension of credit, credits are to be distributed pro rata according to prices and applicable taxes.

(2) *Adverse credit reports prohibited.* If, in accordance with paragraph (c)(1) of this section, the cardholder withholds payment of the amount of credit outstanding for the disputed transaction, the card issuer shall not report that amount as delinquent until the dispute is settled or judgment is rendered.

(3) *Limitations.* The rights stated in paragraphs (c)(1) and (2) of this section apply only if:

(i) The cardholder has made a good faith attempt to resolve the dispute with the person honoring the credit card; and

(ii) The amount of credit extended to obtain the property or services that result in the assertion of the claim or defense by the cardholder exceeds $50, and the disputed transaction occurred in the same state as the cardholder's current designated address or, if not within the same state, within 100 miles from that address.[26]

[26] The limitations stated in paragraph (c)(3)(ii) of this section shall not apply when the person honoring the credit card: (1) Is the same person as the card issuer; (2) is controlled by the card issuer directly or indirectly; (3) is under the direct or indirect control of a third person that also directly or indirectly controls the card issuer; (4) controls the card issuer directly or indirectly; (5) is a franchised dealer in the card issuer's products or services; or (6) has obtained the order for the disputed transaction through a mail solicitation made or participated in by the card issuer.

(d) *Offsets by card issuer prohibited.* (1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

(2) This paragraph does not alter or affect the right of a card issuer acting under state or Federal law to do any of the following with regard to funds of a cardholder held on deposit with the card issuer if the same procedure is constitutionally available to creditors generally: obtain or enforce a consensual security interest in the funds; attach or otherwise levy upon the funds; or obtain or enforce a court order relating to the funds.

(3) This paragraph does not prohibit a plan, if authorized in writing by the cardholder, under which the card issuer may periodically deduct all or part of the cardholder's credit card debt from a deposit account held with the card issuer (subject to the limitations in §226.13(d)(1)).

(e) *Prompt notification of returns and crediting of refunds.* (1) When a creditor other than the card issuer accepts the return of property or forgives a debt for services that is to be reflected as a credit to the consumer's credit card account, that creditor shall, within 7 business days from accepting the return or forgiving the debt, transmit a credit statement to the card issuer through the card issuer's normal channels for credit statements.

(2) The card issuer shall, within 3 business days from receipt of a credit statement, credit the consumer's account with the amount of the refund.

(3) If a creditor other than a card issuer routinely gives cash refunds to consumers paying in cash, the

creditor shall also give credit or cash refunds to consumers using credit cards, unless it discloses at the time the transaction is consummated that credit or cash refunds for returns are not given. This section does not require refunds for returns nor does it prohibit refunds in kind.

(f) *Discounts; tie-in arrangements.* No card issuer may, by contract or otherwise:

(1) Prohibit any person who honors a credit card from offering a discount to a consumer to induce the consumer to pay by cash, check, or similar means rather than by use of a credit card or its underlying account for the purchase of property or services; or

(2) Require any person who honors the card issuer's credit card to open or maintain any account or obtain any other service not essential to the operation of the credit card plan from the card issuer or any other person, as a condition of participation in a credit card plan. If maintenance of an account for clearing purposes is determined to be essential to the operation of the credit card plan, it may be required only if no service charges or minimum balance requirements are imposed.

(g) *Relation to Electronic Fund Transfer Act and Regulation E.* For guidance on whether Regulation Z (12 CFR part 226) or Regulation E (12 CFR part 205) applies in instances involving both credit and electronic fund transfer aspects, refer to Regulation E, 12 CFR 205.12(a) regarding issuance and liability for unauthorized use. On matters other than issuance and liability, this section applies to the credit aspects of combined credit/electronic fund transfer transactions, as applicable.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 65 FR 17131, Mar. 31, 2000]

## § 226.13 Billing error resolution.[27]

 top

[27] A creditor shall not accelerate any part of the consumer's indebtedness or restrict or close a consumer's account solely because the consumer has exercised in good faith rights provided by this section. A creditor may be subject to the forfeiture penalty under section 161(e) of the Act for failure to comply with any of the requirements of this section.

(a) *Definition of billing error.* For purposes of this section, the term *billing error* means:

(1) A reflection on or with a periodic statement of an extension of credit that is not made to the consumer or to a person who has actual, implied, or apparent authority to use the consumer's credit card or open-end credit plan.

(2) A reflection on or with a periodic statement of an extension of credit that is not identified in accordance with the requirements of §§226.7(b) and 226.8.

(3) A reflection on or with a periodic statement of an extension of credit for property or services not accepted by the consumer or the consumer's designee, or not delivered to the consumer or the consumer's designee as agreed.

(4) A reflection on a periodic statement of the creditor's failure to credit properly a payment or other credit issued to the consumer's account.

(5) A reflection on a periodic statement of a computational or similar error of an accounting nature that is made by the creditor.

(6) A reflection on a periodic statement of an extension of credit for which the consumer requests additional clarification, including documentary evidence.

(7) The creditor's failure to mail or deliver a periodic statement to the consumer's last known address if that address was received by the creditor, in writing, at least 20 days before the end of the billing cycle for which the statement was required.

(b) *Billing error notice.* [28] A billing error notice is a written notice[29] from a consumer that:

[28] The creditor need not comply with the requirements of paragraphs (c) through (g) of this section if the consumer concludes that no billing error occurred and voluntarily withdraws the billing error notice.

[29] The creditor may require that the written notice not be made on the payment medium or other material accompanying the periodic statement if the creditor so stipulates in the billing rights statement required by §§226.6(d) and 226.9(a).

(1) Is received by a creditor at the address disclosed under §226.7(k) no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error;

(2) Enables the creditor to identify the consumer's name and account number; and

(3) To the extent possible, indicates the consumer's belief and the reasons for the belief that a billing error exists, and the type, date, and amount of the error.

(c) *Time for resolution; general procedures.* (1) The creditor shall mail or deliver written acknowledgment to the consumer within 30 days of receiving a billing error notice, unless the creditor has complied with the appropriate resolution procedures of paragraphs (e) and (f) of this section, as applicable, within the 30-day period; and

(2) The creditor shall comply with the appropriate resolution procedures of paragraphs (e) and (f) of this section, as applicable, within 2 complete billing cycles (but in no event later than 90 days) after receiving a billing error notice.

(d) *Rules pending resolution.* Until a billing error is resolved under paragraph (e) or (f) of this section, the following rules apply:

(1) *Consumer's right to withhold disputed amount; collection action prohibited.* The consumer need not pay (and the creditor may not try to collect) any portion of any required payment that the consumer believes is related to the disputed amount (including related finance or other charges).[30] If the cardholder maintains a deposit account with the card issuer and has agreed to pay the credit card indebtedness by periodic deductions from the cardholder's deposit account, the card issuer shall not deduct any part of the disputed amount or related finance or other charges if a billing error notice is received any time up to 3 business days before the scheduled payment date.

[30] A creditor is not prohibited from taking action to collect any undisputed portion of the item or bill; from deducting any disputed amount and related finance or other charges from the consumer's credit limit on the account; or from reflecting a disputed amount and related finance or other charges on a periodic statement, provided that the creditor indicates on or with the periodic statement that payment of any disputed amount and related finance or other charges is not required pending the creditor's compliance with this section.

(2) *Adverse credit reports prohibited.* The creditor or its agent shall not (directly or indirectly) make or threaten to make an adverse report to any person about the consumer's credit standing, or report that an amount or account is delinquent, because the consumer failed to pay the disputed amount or related finance or other charges.

(e) *Procedures if billing error occurred as asserted.* If a creditor determines that a billing error occurred as asserted, it shall within the time limits in paragraph (c)(2) of this section:

(1) Correct the billing error and credit the consumer's account with any disputed amount and related finance or other charges, as applicable; and

(2) Mail or deliver a correction notice to the consumer.

(f) *Procedures if different billing error or no billing error occurred.* If, after conducting a reasonable investigation,[31] a creditor determines that no billing error occurred or that a different billing error occurred from that asserted, the creditor shall within the time limits in paragraph (c)(2) of this section:

[31] If a consumer submits a billing error notice alleging either the nondelivery of property or services under paragraph (a)(3) of this section or that information appearing on a periodic statement is incorrect because a person honoring the consumer's credit card has made an incorrect report to the card issuer, the creditor shall not deny the assertion unless it conducts a reasonable investigation and determines that the property or services were actually delivered, mailed, or sent as agreed or that the information was correct.

(1) Mail or deliver to the consumer an explanation that sets forth the reasons for the creditor's belief that the billing error alleged by the consumer is incorrect in whole or in part;

(2) Furnish copies of documentary evidence of the consumer's indebtedness, if the consumer so requests; and

(3) If a different billing error occurred, correct the billing error and credit the consumer's account with any disputed amount and related finance or other charges, as applicable.

(g) *Creditor's rights and duties after resolution.* If a creditor, after complying with all of the requirements of this section, determines that a consumer owes all or part of the disputed amount and related finance or other charges, the creditor:

(1) Shall promptly notify the consumer in writing of the time when payment is due and the portion of the disputed amount and related finance or other charges that the consumer still owes;

(2) Shall allow any time period disclosed under §§226.6(a)(1) and 226.7(j), during which the consumer can pay the amount due under paragraph (g)(1) of this section without incurring additional finance or other charges;

(3) May report an account or amount as delinquent because the amount due under paragraph (g)(1) of this section remains unpaid after the creditor has allowed any time period disclosed under §§226.6(a)(1) and 266.7(j) or 10 days (whichever is longer) during which the consumer can pay the amount; but

(4) May not report that an amount or account is delinquent because the amount due under paragraph (g)(1) of the section remains unpaid, if the creditor receives (within the time allowed for payment in paragraph (g)(3) of this section) further written notice from the consumer that any portion of the billing error is still in dispute, unless the creditor also:

(i) Promptly reports that the amount or account is in dispute;

(ii) Mails or delivers to the consumer (at the same time the report is made) a written notice of the name and address of each person to whom the creditor makes a report; and

(iii) Promptly reports any subsequent resolution of the reported delinquency to all persons to whom the creditor has made a report.

(h) *Reassertion of billing error.* A creditor that has fully complied with the requirements of this section has no further responsibilities under this section (other than as provided in paragraph (g)(4) of this section) if a consumer reasserts substantially the same billing error.

(i) *Relation to Electronic Fund Transfer Act and Regulation E.* If an extension of credit is incident to an electronic fund transfer, under an agreement between a consumer and a financial institution to extend credit when the consumer's account is overdrawn or to maintain a specified minimum balance in the consumer's account, the creditor shall comply with the requirements of Regulation E, 12 CFR 205.11 governing error resolution rather than those of paragraphs (a), (b), (c), (e), (f), and (h) of this section.

### § 226.14 Determination of annual percentage rate.

⬆ top

(a) *General rule.* The annual percentage rate is a measure of the cost of credit, expressed as a yearly rate. An annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 percentage point above or below the annual percentage rate determined in accordance with this section.[31a]

[31a] An error in disclosure of the annual percentage rate or finance charge shall not, in itself, be considered a violation of this regulation if: (1) The error resulted from a corresponding error in a calculation tool used in good faith by the creditor; and (2) upon discovery of the error, the creditor promptly discontinues use of that calculation tool for disclosure purposes, and notifies the Board in writing of the error in the calculation tool.

(b) *Annual percentage rate for §§226.5a and 226.5b disclosures, for initial disclosures and for advertising purposes.* Where one or more periodic rates may be used to compute the finance charge, the annual percentage rate(s) to be disclosed for purposes of §§226.5a, 226.5b, 226.6, and 226.16 shall be computed by multiplying each periodic rate by the number of periods in a year.

(c) *Annual percentage rate for periodic statements.* The annual percentage rate(s) to be disclosed for purposes of §226.7(d) shall be computed by multiplying each periodic rate by the number of periods in a year and, for purposes of §226.7(g), shall be determined as follows:

(1) If the finance charge is determined solely by applying one or more periodic rates, at the creditor's option, either:

(i) By multiplying each periodic rate by the number of periods in a year; or

(ii) By dividing the total finance charge for the billing cycle by the sum of the balances to which the periodic rates were applied and multiplying the quotient (expressed as a percentage) by the number of billing cycles in a year.

(2) If the finance charge imposed during the billing cycle is or includes a minimum, fixed, or other charge not due to the application of a periodic rate, other than a charge with respect to any specific transaction during the billing cycle, by dividing the total finance charge for the billing cycle by the amount of the balance(s) to which it is applicable[32] and multiplying the quotient (expressed as a percentage) by the number of billing cycles in a year.[33]

[32] If there is no balance to which the finance charge is applicable, an annual percentage rate cannot be determined under this section.

[33] Where the finance charge imposed during the billing cycle is or includes a loan fee, points, or similar charge that relates to the opening of the account, the amount of such charge shall not be included in the calculation of the annual percentage rate.

(3) If the finance charge imposed during the billing cycle is or includes a charge relating to a specific transaction during the billing cycle (even if the total finance charge also includes any other minimum, fixed, or other charge not due to the application of a periodic rate), by dividing the total finance charge imposed during the billing cycle by the total of all balances and other amounts on which a finance charge was imposed during the billing cycle without duplication, and multiplying the quotient (expressed as a percentage) by the number of billing cycles in a year,[34] except that the annual percentage rate shall not be less than the largest rate determined by multiplying each periodic rate imposed during the billing cycle by the number of periods in a year.[35]

[34] See appendix F regarding determination of the denominator of the fraction under this paragraph.

[35] See footnote 33.

(4) If the finance charge imposed during the billing cycle is or includes a minimum, fixed, or other charge not due to the application of a periodic rate and the total finance charge imposed during the billing cycle does not exceed 50 cents for a monthly or longer billing cycle, or the pro rata part of 50 cents for a billing cycle shorter than monthly, at the creditor's option, by multiplying each applicable periodic rate by the number of periods in a year, notwithstanding the provisions of paragraphs (c)(2) and (3) of this section.

(d) *Calculations where daily periodic rate applied.* If the provisions of paragraph (c)(1)(ii) or (2) of this section apply and all or a portion of the finance charge is determined by the application of one or more daily periodic rates, the annual percentage rate may be determined either:

(1) By dividing the total finance charge by the average of the daily balances and multiplying the quotient by the number of billing cycles in a year; or

(2) By dividing the total finance charge by the sum of the daily balances and multiplying the quotient by 365.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 47 FR 756, Jan. 7, 1982; 48 FR 14886, Apr. 6, 1983; 54 FR 24688, June 9, 1989]

## § 226.15   Right of rescission.

 top

(a) *Consumer's right to rescind.* (1)(i) Except as provided in paragraph (a)(1)(ii) of this section, in a credit plan in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind: each credit extension made under the plan; the plan when the plan is opened; a security interest when added or increased to secure an existing plan; and the increase when a credit limit on the plan is increased.

(ii) As provided in section 125(e) of the Act, the consumer does not have the right to rescind each credit extension made under the plan if such extension is made in accordance with a previously established credit limit for the plan.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following the occurrence described in paragraph (a)(1) of this section that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[36] whichever occurs last. If the required notice and material disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

[36] The term *material disclosures* means the information that must be provided to satisfy the requirements in §226.6 with regard to the method of determining the finance charge and the balance upon which a finance charge will be imposed, the annual percentage rate, the amount or method of determining the amount of any membership or participation fee that may be imposed as part of the plan, and the payment information described in §226.5b(d)(5)(i) and (ii) that is required under §226.6(e)(2).

(4) When more than one consumer has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) *Notice of right to rescind.* In any transaction or occurrence subject to rescission, a creditor shall

deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind, as described in paragraph (a)(1) of this section.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires.

(c) *Delay of creditor's performance.* Unless a consumer waives the right to rescind under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed, and no materials delivered until after the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded. A creditor does not violate this section if a third party with no knowledge of the event activating the rescission right does not delay in providing materials or services, as long as the debt incurred for those materials or services is not secured by the property subject to rescission.

(d) *Effects of rescission.* (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void, and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

(e) *Consumer's waiver of right to rescind.* (1) The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all the consumers entitled to rescind. Printed forms for this purpose are prohibited, except as provided in paragraph (e)(2) of this section.

(2) The need of the consumer to obtain funds immediately shall be regarded as a bona fide personal financial emergency provided that the dwelling securing the extension of credit is located in an area declared during June through September 1993, pursuant to 42 U.S.C. 5170, to be a major disaster area because of severe storms and flooding in the Midwest.[36a] In this instance, creditors may use printed forms for the consumer to waive the right to rescind. This exemption to paragraph (e)(1) of this section shall expire one year from the date an area was declared a major disaster.

[36a] A list of the affected areas will be maintained by the Board.

(3) The consumer's need to obtain funds immediately shall be regarded as a bona fide personal financial

Case 1:08-cv-01819-PAC    Document 2    Filed 04/10/2008    Page 66 of 91

emergency provided that the dwelling securing the extension of credit is located in an area declared during June through September 1994 to be a major disaster area, pursuant to 42 U.S.C. 5170, because of severe storms and flooding in the South.[36b] In this instance, creditors may use printed forms for the consumer to waive the right to rescind. This exemption to paragraph (e)(1) of this section shall expire one year from the date an area was declared a major disaster.

[36b] A list of the affected areas will be maintained and published by the Board. Such areas now include parts of Alabama, Florida, and Georgia.

(4) The consumer's need to obtain funds immediately shall be regarded as a bona fide personal financial emergency provided that the dwelling securing the extension of credit is located in an area declared during October 1994 to be a major disaster area, pursuant to 42 U.S.C. 5170, because of severe storms and flooding in Texas.[36c] In this instance, creditors may use printed forms for the consumer to waive the right to rescind. This exemption to paragraph (e)(1) of this section shall expire one year from the date an area was declared a major disaster.

[36c] A list of the affected areas will be maintained and published by the Board. Such areas now include the following counties in Texas: Angelina, Austin, Bastrop, Brazos, Brazoria, Burleson, Chambers, Fayette, Fort Bend, Galveston, Grimes, Hardin, Harris, Houston, Jackson, Jasper, Jefferson, Lee, Liberty, Madison, Matagorda, Montgomery, Nacagdoches, Orange, Polk, San Augustine, San Jacinto, Shelby, Trinity, Victoria, Washington, Waller, Walker, and Wharton.

(f) *Exempt transactions.* The right to rescind does not apply to the following:

(1) A residential mortgage transaction.

(2) A credit plan in which a state agency is a creditor.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 54 FR 24688, June 9, 1989; 58 FR 40583, July 29, 1993; 59 FR 40204, Aug. 5, 1994; 59 FR 63715, Dec. 9, 1994; 66 FR 17338, Mar. 30, 2001; 72 FR 63474, Nov. 9, 2007]

### § 226.16  Advertising.

 top

(a) *Actually available terms.* If an advertisement for credit states specific credit terms, it shall state only those terms that actually are or will be arranged or offered by the creditor.

(b) *Advertisement of terms that require additional disclosures.* If any of the terms required to be disclosed under §226.6 is set forth in an advertisement, the advertisement shall also clearly and conspicuously set forth the following:[36d]

[36d] The disclosures given in accordance with §226.5a do not constitute advertising terms for purposes of the requirements of this section.

(1) Any minimum, fixed, transaction, activity or similar charge that could be imposed.

(2) Any periodic rate that may be applied expressed as an annual percentage rate as determined under §226.14(b). If the plan provides for a variable periodic rate, that fact shall be disclosed.

(3) Any membership or participation fee that could be imposed.

(c) *Catalogs or other multiple-page advertisements; electronic advertisements.* (1) If a catalog or other multiple-page advertisement, or an electronic advertisement (such as an advertisement appearing on an Internet Web site), gives information in a table or schedule in sufficient detail to permit determination of the disclosures required by paragraph (b) of this section, it shall be considered a single advertisement if:

(i) The table or schedule is clearly and conspicuously set forth; and

(ii) Any statement of terms set forth in §226.6 appearing anywhere else in the catalog or advertisement clearly refers to the page or location where the table or schedule begins.

(2) A catalog or other multiple-page advertisement or an electronic advertisement (such as an advertisement appearing on an Internet Web site) complies with this paragraph if the table or schedule of terms includes all appropriate disclosures for a representative scale of amounts up to the level of the more commonly sold higher-priced property or services offered.

(d) *Additional requirements for home equity plans—* (1) *Advertisement of terms that require additional disclosures.* If any of the terms required to be disclosed under §226.6(a) or (b) or the payment terms of the plan are set forth, affirmatively or negatively, in an advertisement for a home equity plan subject to the requirements of §226.5b, the advertisement also shall clearly and conspicuously set forth the following:

(i) Any loan fee that is a percentage of the credit limit under the plan and an estimate of any other fees imposed for opening the plan, stated as a single dollar amount or a reasonable range.

(ii) Any periodic rate used to compute the finance charge, expressed as an annual percentage rate as determined under section §226.14(b).

(iii) The maximum annual percentage rate that may be imposed in a variable-rate plan.

(2) *Discounted and premium rates.* If an advertisement states an initial annual percentage rate that is not based on the index and margin used to make later rate adjustments in a variable-rate plan, the advertisement also shall state the period of time such rate will be in effect, and, with equal prominence to the initial rate, a reasonably current annual percentage rate that would have been in effect using the index and margin.

(3) *Balloon payment.* If an advertisement contains a statement about any minimum periodic payment, the advertisement also shall state, if applicable, that a balloon payment may result.[36e]

[36e] See footnote 10b.

(4) *Tax implications.* An advertisement that states that any interest expense incurred under the home equity plan is or may be tax deductible may not be misleading in this regard.

(5) *Misleading terms.* An advertisement may not refer to a home equity plan as "free money" or contain a similarly misleading term.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 54 FR 13867, Apr. 6, 1989; 54 FR 24688, June 9, 1989; 54 FR 28665, July 7, 1989; 58 FR 40583, July 29, 1993; 59 FR 40204, Aug. 5, 1994; 59 FR 63715, Dec. 9, 1994; 66 FR 17338, Mar. 30, 2001; 72 FR 63474, Nov. 9, 2007]

## Subpart C—Closed-End Credit

 top

## § 226.17   General disclosure requirements.

 top

(a) *Form of disclosures.* (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures required by this subpart may be provided to the consumer in electronic form, subject to compliance with the consumer consent and other applicable provisions of the Electronic Signatures in Global and National Commerce Act (E-

Sign Act) (15 U.S.C. 7001 *et seq.* ). The disclosures required by §§226.17(g), 226.19(b), and 226.24 may be provided to the consumer in electronic form without regard to the consumer consent or other provisions of the E-Sign Act in the circumstances set forth in those sections. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related[37] to the disclosures required under §226.18.[38] The itemization of the amount financed under §226.18(c)(1) must be separate from the other disclosures under that section.

[37] The disclosures may include an acknowledgment of receipt, the date of the transaction, and the consumer's name, address, and account number.

[38] The following disclosures may be made together with or separately from other required disclosures: the creditor's identity under §226.18(a), the variable rate example under §226.18 (f)(1)(iv), insurance or debt cancellation under §226.18(n), and certain security interest charges under §226.18(o).

(2) The terms *finance charge* and *annual percentage rate*, when required to be disclosed under §226.18 (d) and (e) together with a corresponding amount or percentage rate, shall be more conspicuous than any other disclosure, except the creditor's identity under §226.18(a).

(b) *Time of disclosures.* The creditor shall make disclosures before consummation of the transaction. In certain residential mortgage transactions, special timing requirements are set forth in §226.19(a). In certain variable-rate transactions, special timing requirements for variable-rate disclosures are set forth in §226.19(b) and §226.20(c). In certain transactions involving mail or telephone orders or a series of sales, the timing of disclosures may be delayed in accordance with paragraphs (g) and (h) of this section.

(c) *Basis of disclosures and use of estimates.* (1) The disclosures shall reflect the terms of the legal obligation between the parties.

(2)(i) If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate.

(ii) For a transaction in which a portion of the interest is determined on a per-diem basis and collected at consummation, any disclosure affected by the per-diem interest shall be considered accurate if the disclosure is based on the information known to the creditor at the time that the disclosure documents are prepared for consummation of the transaction.

(3) The creditor may disregard the effects of the following in making calculations and disclosures.

(i) That payments must be collected in whole cents.

(ii) That dates of scheduled payments and advances may be changed because the scheduled date is not a business day.

(iii) That months have different numbers of days.

(iv) The occurrence of leap year.

(4) In making calculations and disclosures, the creditor may disregard any irregularity in the first period that falls within the limits described below and any payment schedule irregularity that results from the irregular first period:

(i) For transactions in which the term is less than 1 year, a first period not more than 6 days shorter or 13 days longer than a regular period;

(ii) For transactions in which the term is at least 1 year and less than 10 years, a first period not more than 11 days shorter or 21 days longer than a regular period; and

(iii) For transactions in which the term is at least 10 years, a first period shorter than or not more than 32 days longer than a regular period.

(5) If an obligation is payable on demand, the creditor shall make the disclosures based on an assumed maturity of 1 year. If an alternate maturity date is stated in the legal obligation between the parties, the disclosures shall be based on that date.

(6)(i) A series of advances under an agreement to extend credit up to a certain amount may be considered as one transaction.

(ii) When a multiple-advance loan to finance the construction of a dwelling may be permanently financed by the same creditor, the construction phase and the permanent phase may be treated as either one transaction or more than one transaction.

(d) *Multiple creditors; multiple consumers.* If a transaction involves more than one creditor, only one set of disclosures shall be given and the creditors shall agree among themselves which creditor must comply with the requirements that this regulation imposes on any or all of them. If there is more than one consumer, the disclosures may be made to any consumer who is primarily liable on the obligation. If the transaction is rescindable under §226.23, however, the disclosures shall be made to each consumer who has the right to rescind.

(e) *Effect of subsequent events.* If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, §226.19, or §226.20.

(f) *Early disclosures.* If disclosures required by this subpart are given before the date of consummation of a transaction and a subsequent event makes them inaccurate, the creditor shall disclose before consummation:[39]

[39] For certain residential mortgage transactions, §226.19(a)(2) permits redisclosure no later than consummation or settlement, whichever is later.

(1) Any changed term unless the term was based on an estimate in accordance with §226.17(c)(2) and was labelled an estimate;

(2) All changed terms, if the annual percentage rate at the time of consummation varies from the annual percentage rate disclosed earlier by more than1/8of 1 percentage point in a regular transaction, or more than1/4of 1 percentage point in an irregular transaction, as defined in §226.22(a).

(g) *Mail or telephone orders—delay in disclosures.* If a creditor receives a purchase order or a request for an extension of credit by mail, telephone, or facsimile machine without face-to-face or direct telephone solicitation, the creditor may delay the disclosures until the due date of the first payment, if the following information for representative amounts or ranges of credit is made available in written form or in electronic form to the consumer or to the public before the actual purchase order or request:

(1) The cash price or the principal loan amount.

(2) The total sale price.

(3) The finance charge.

(4) The annual percentage rate, and if the rate may increase after consummation, the following disclosures:

(i) The circumstances under which the rate may increase.

(ii) Any limitations on the increase.

(iii) The effect of an increase.

(5) The terms of repayment.

(h) *Series of sales—delay in disclosures.* If a credit sale is one of a series made under an agreement providing that subsequent sales may be added to an outstanding balance, the creditor may delay the required disclosures until the due date of the first payment for the current sale, if the following two conditions are met:

(1) The consumer has approved in writing the annual percentage rate or rates, the range of balances to which they apply, and the method of treating any unearned finance charge on an existing balance.

(2) The creditor retains no security interest in any property after the creditor has received payments equal to the cash price and any finance charge attributable to the sale of that property. For purposes of this provision, in the case of items purchased on different dates, the first purchased is deemed the first item paid for; in the case of items purchased on the same date, the lowest priced is deemed the first item paid for.

(i) *Interim student credit extensions.* For each transaction involving an interim credit extension under a student credit program, the creditor need not make the following disclosures: the finance charge under §226.18(d), the payment schedule under §226.18(g), the total of payments under §226.18(h), or the total sale price under §226.18(j).

[46 FR 20892, Apr. 7, 1981, as amended at 52 FR 48670, Dec. 24, 1987; 61 FR 49246, Sept. 19, 1996; 66 FR 17338, Mar. 30, 2001; 67 FR 16982, Apr. 9, 2002; 72 FR 63474, Nov. 9, 2007]

## § 226.18   Content of disclosures.

 top

For each transaction, the creditor shall disclose the following information as applicable:

(a) *Creditor.* The identity of the creditor making the disclosures.

(b) *Amount financed.* The *amount financed,* using that term, and a brief description such as *the amount of credit provided to you or on your behalf.* The amount financed is calculated by:

(1) Determining the principal loan amount or the cash price (subtracting any downpayment);

(2) Adding any other amounts that are financed by the creditor and are not part of the finance charge; and

(3) Subtracting any prepaid finance charge.

(c) *Itemization of amount financed.* (1) A separate written itemization of the amount financed, including:[40]

[40] Good faith estimates of settlement costs provided for transactions subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601 *et seq.* ) may be substituted for the disclosures required by paragraph (c) of this section.

(i) The amount of any proceeds distributed directly to the consumer.

(ii) The amount credited to the consumer's account with the creditor.

(iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.[41]

[41] The following payees may be described using generic or other general terms and need not be further identified: public officials or government agencies, credit reporting agencies, appraisers, and insurance companies.

(iv) The prepaid finance charge.

(2) The creditor need not comply with paragraph (c)(1) of this section if the creditor provides a statement that the consumer has the right to receive a written itemization of the amount financed, together with a space for the consumer to indicate whether it is desired, and the consumer does not request it.

(d) *Finance charge.* The *finance charge,* using that term, and a brief description such as "the dollar amount the credit will cost you."

(1) *Mortgage loans.* In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge:

(i) Is understated by no more than $100; or

(ii) Is greater than the amount required to be disclosed.

(2) *Other credit.* In any other transaction, the amount disclosed as the finance charge shall be treated as accurate if, in a transaction involving an amount financed of $1,000 or less, it is not more than $5 above or below the amount required to be disclosed; or, in a transaction involving an amount financed of more than $1,000, it is not more than $10 above or below the amount required to be disclosed.

(e) *Annual percentage rate.* The *annual percentage rate,* using that term, and a brief description such as "the cost of your credit as a yearly rate."[42]

[42] For any transaction involving a finance charge of $5 or less on an amount financed of $75 or less, or a finance charge of $7.50 or less on an amount financed of more than $75, the creditor need not disclose the annual percentage rate.

(f) *Variable rate.* (1) If the annual percentage rate may increase after consummation in a transaction not secured by the consumer's principal dwelling or in a transaction secured by the consumer's principal dwelling with a term of one year or less, the following disclosures:[43]

[43] Information provided in accordance with §§226.18(f)(2) and 226.19(b) may be substituted for the disclosures required by paragraph (f)(1) of this section.

(i) The circumstances under which the rate may increase.

(ii) Any limitations on the increase.

(iii) The effect of an increase.

(iv) An example of the payment terms that would result from an increase.

(2) If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures:

(i) The fact that the transaction contains a variable-rate feature.

(ii) A statement that variable-rate disclosures have been provided earlier.

(g) *Payment schedule.* The number, amounts, and timing of payments scheduled to repay the obligation.

(1) In a demand obligation with no alternate maturity date, the creditor may comply with this paragraph by disclosing the due dates or payment periods of any scheduled interest payments for the first year.

(2) In a transaction in which a series of payments varies because a finance charge is applied to the unpaid principal balance, the creditor may comply with this paragraph by disclosing the following information:

(i) The dollar amounts of the largest and smallest payments in the series.

(ii) A reference to the variations in the other payments in the series.

(h) *Total of payments.* The *total of payments,* using that term, and a descriptive explanation such as "the amount you will have paid when you have made all scheduled payments."[44]

[44] In any transaction involving a single payment, the creditor need not disclose the total of payments.

(i) *Demand feature.* If the obligation has a demand feature, that fact shall be disclosed. When the disclosures are based on an assumed maturity of 1 year as provided in §226.17(c)(5), that fact shall also be disclosed.

(j) *Total sale price.* In a credit sale, the *total sale price,* using that term, and a descriptive explanation (including the amount of any downpayment) such as "the total price of your purchase on credit, including your downpayment of $___." The total sale price is the sum of the cash price, the items described in paragraph (b)(2), and the finance charge disclosed under paragraph (d) of this section.

(k) *Prepayment.* (1) When an obligation includes a finance charge computed from time to time by application of a rate to the unpaid principal balance, a statement indicating whether or not a penalty may be imposed if the obligation is prepaid in full.

(2) When an obligation includes a finance charge other than the finance charge described in paragraph (k)(1) of this section, a statement indicating whether or not the consumer is entitled to a rebate of any finance charge if the obligation is prepaid in full.

(l) *Late payment.* Any dollar or percentage charge that may be imposed before maturity due to a late payment, other than a deferral or extension charge.

(m) *Security interest.* The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type.

(n) *Insurance and debt cancellation.* The items required by §226.4(d) in order to exclude certain insurance premiums and debt cancellation fees from the finance charge.

(o) *Certain security interest charges.* The disclosures required by §226.4(e) in order to exclude from the finance charge certain fees prescribed by law or certain premiums for insurance in lieu of perfecting a security interest.

(p) *Contract reference.* A statement that the consumer should refer to the appropriate contract document for information about nonpayment, default, the right to accelerate the maturity of the obligation, and prepayment rebates and penalties. At the creditor's option, the statement may also include a reference to the contract for further information about security interests and, in a residential mortgage transaction, about the creditor's policy regarding assumption of the obligation.

(q) *Assumption policy.* In a residential mortgage transaction, a statement whether or not a subsequent purchaser of the dwelling from the consumer may be permitted to assume the remaining obligation on its original terms.

(r) *Required deposit.* If the creditor requires the consumer to maintain a deposit as a condition of the specific transaction, a statement that the annual percentage rate does not reflect the effect of the

required deposit.[45]

[45] A required deposit need not include, for example: (1) An escrow account for items such as taxes, insurance or repairs; (2) a deposit that earns not less than 5 percent per year; or (3) payments under a Morris Plan.

[46 FR 20892, Apr. 7, 1981; 46 FR 29246, June 1, 1981, as amended at 52 FR 48670, Dec. 24, 1987; 61 FR 49246, Sept. 19, 1996]

### § 226.19   Certain residential mortgage and variable-rate transactions.

 top

(a) *Residential mortgage transactions subject to RESPA—* (1) *Time of disclosures.* In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601 *et seq.* ) the creditor shall make good faith estimates of the disclosures required by §226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

(2) *Redisclosure required.* If the annual percentage rate at the time of consummation varies from the annual percentage rate disclosed earlier by more than1/8of 1 percentage point in a regular transaction or more than1/4of 1 percentage point in an irregular transaction, as defined in §226.22, the creditor shall disclose all the changed terms no later than consummation or settlement.

(b) *Certain variable-rate transactions.* [45a] If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier:[45b]

[45a] Information provided in accordance with variable-rate regulations of other federal agencies may be substituted for the disclosures required by paragraph (b) of this section.

[45b] Disclosures may be delivered or placed in the mail not later than three business days following receipt of a consumer's application when the application reaches the creditor by telephone, or through an intermediary agent or broker.

(1) The booklet titled *Consumer Handbook on Adjustable Rate Mortgages* published by the Board and the Federal Home Loan Bank Board, or a suitable substitute.

(2) A loan program disclosure for each variable-rate program in which the consumer expresses an interest. The following disclosures, as applicable, shall be provided:

(i) The fact that the interest rate, payment, or term of the loan can change.

(ii) The index or formula used in making adjustments, and a source of information about the index or formula.

(iii) An explanation of how the interest rate and payment will be determined, including an explanation of how the index is adjusted, such as by the addition of a margin.

(iv) A statement that the consumer should ask about the current margin value and current interest rate.

(v) The fact that the interest rate will be discounted, and a statement that the consumer should ask about the amount of the interest rate discount.

(vi) The frequency of interest rate and payment changes.

(vii) Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.

(viii) At the option of the creditor, either of the following:

(A) A historical example, based on a $10,000 loan amount, illustrating how payments and the loan balance would have been affected by interest rate changes implemented according to the terms of the loan program disclosure. The example shall reflect the most recent 15 years of index values. The example shall reflect all significant loan program terms, such as negative amortization, interest rate carryover, interest rate discounts, and interest rate and payment limitations, that would have been affected by the index movement during the period.

(B) The maximum interest rate and payment for a $10,000 loan originated at the initial interest rate (index value plus margin, adjusted by the amount of any discount or premium) in effect as of an identified month and year for the loan program disclosure assuming the maximum periodic increases in rates and payments under the program; and the initial interest rate and payment for that loan and a statement that the periodic payment may increase or decrease substantially depending on changes in the rate.

(ix) An explanation of how the consumer may calculate the payments for the loan amount to be borrowed based on either:

(A) The most recent payment shown in the historical example in paragraph (b)(2)(viii)(A) of this section; or

(B) The initial interest rate used to calculate the maximum interest rate and payment in paragraph (b)(2)(viii)(B) of this section.

(x) The fact that the loan program contains a demand feature.

(xi) The type of information that will be provided in notices of adjustments and the timing of such notices.

(xii) A statement that disclosure forms are available for the creditor's other variable-rate loan programs.

(c) *Electronic disclosures.* For an application that is accessed by the consumer in electronic form, the disclosures required by paragraph (b) of this section may be provided to the consumer in electronic form on or with the application.

[52 FR 48670, Dec. 24, 1987; 53 FR 467, Jan. 7, 1988, as amended at 61 FR 49246, Sept. 19, 1996; 62 FR 63443, Dec. 1, 1997; 72 FR 63474, Nov. 9, 2007]

### § 226.20  Subsequent disclosure requirements.

 top

(a) *Refinancings.* A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation. The following shall not be treated as a refinancing:

(1) A renewal of a single payment obligation with no change in the original terms.

(2) A reduction in the annual percentage rate with a corresponding change in the payment schedule.

(3) An agreement involving a court proceeding.

(4) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance of the types described in §226.4(d).

(5) The renewal of optional insurance purchased by the consumer and added to an existing transaction, if disclosures relating to the initial purchase were provided as required by this subpart.

(b) *Assumptions.* An assumption occurs when a creditor expressly agrees in writing with a subsequent consumer to accept that consumer as a primary obligor on an existing residential mortgage transaction. Before the assumption occurs, the creditor shall make new disclosures to the subsequent consumer, based on the remaining obligation. If the finance charge originally imposed on the existing obligation was an add-on or discount finance charge, the creditor need only disclose:

(1) The unpaid balance of the obligation assumed.

(2) The total charges imposed by the creditor in connection with the assumption.

(3) The information required to be disclosed under §226.18(k), (l), (m), and (n).

(4) The annual percentage rate originally imposed on the obligation.

(5) The payment schedule under §226.18(g) and the total of payments under §226.18(h) based on the remaining obligation.

(c) *Variable-rate adjustments.* [45c] An adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction subject to §226.19(b) is an event requiring new disclosures to the consumer. At least once each year during which an interest rate adjustment is implemented without an accompanying payment change, and at least 25, but no more than 120, calendar days before a payment at a new level is due, the following disclosures, as applicable, must be delivered or placed in the mail:

[45c] Information provided in accordance with variable-rate subsequent disclosure regulations of other federal agencies may be substituted for the disclosure required by paragraph (c) of this section.

(1) The current and prior interest rates.

(2) The index values upon which the current and prior interest rates are based.

(3) The extent to which the creditor has foregone any increase in the interest rate.

(4) The contractual effects of the adjustment, including the payment due after the adjustment is made, and a statement of the loan balance.

(5) The payment, if different from that referred to in paragraph (c)(4) of this section, that would be required to fully amortize the loan at the new interest rate over the remainder of the loan term.

[46 FR 20892, Apr. 7, 1981, as amended at 52 FR 48671, Dec. 24, 1987]

## § 226.21  Treatment of credit balances.

 top

When a credit balance in excess of $1 is created in connection with a transaction (through transmittal of funds to a creditor in excess of the total balance due on an account, through rebates of unearned finance charges or insurance premiums, or through amounts otherwise owed to or held for the benefit of

a consumer), the creditor shall:

(a) Credit the amount of the credit balance to the consumer's account;

(b) Refund any part of the remaining credit balance, upon the written request of the consumer; and

(c) Make a good faith effort to refund to the consumer by cash, check, or money order, or credit to a deposit account of the consumer, any part of the credit balance remaining in the account for more than 6 months, except that no further action is required if the consumer's current location is not known to the creditor and cannot be traced through the consumer's last known address or telephone number.

### § 226.22  Determination of annual percentage rate.

 top

(a) *Accuracy of annual percentage rate.* (1) The annual percentage rate is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made. The annual percentage rate shall be determined in accordance with either the actuarial method or the United States Rule method. Explanations, equations and instructions for determining the annual percentage rate in accordance with the actuarial method are set forth in appendix J to this regulation.[45d]

[45d] An error in disclosure of the annual percentage rate or finance charge shall not, in itself, be considered a violation of this regulation if: (1) The error resulted from a corresponding error in a calculation tool used in good faith by the creditor; and (2) upon discovery of the error, the creditor promptly discontinues use of that calculation tool for disclosure purposes and notifies the Board in writing of the error in the calculation tool.

(2) As a general rule, the annual percentage rate shall be considered accurate if it is not more than 1/8 of 1 percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section.

(3) In an irregular transaction, the annual percentage rate shall be considered accurate if it is not more than 1/4 of 1 percentage point above or below the annual percentage rate determined in accordance with paragraph (a)(1) of this section.[46]

[46] For purposes of paragraph (a)(3) of this section, an irregular transaction is one that includes one or more of the following features: multiple advances, irregular payment periods, or irregular payment amounts (other than an irregular first period or an irregular first or final payment).

(4) *Mortgage loans.* If the annual percentage rate disclosed in a transaction secured by real property or a dwelling varies from the actual rate determined in accordance with paragraph (a)(1) of this section, in addition to the tolerances applicable under paragraphs (a)(2) and (3) of this section, the disclosed annual percentage rate shall also be considered accurate if:

(i) The rate results from the disclosed finance charge; and

(ii)(A) The disclosed finance charge would be considered accurate under §226.18(d)(1); or

(B) For purposes of rescission, if the disclosed finance charge would be considered accurate under §226.23(g) or (h), whichever applies.

(5) *Additional tolerance for mortgage loans.* In a transaction secured by real property or a dwelling, in addition to the tolerances applicable under paragraphs (a)(2) and (3) of this section, if the disclosed finance charge is calculated incorrectly but is considered accurate under §226.18(d)(1) or §226.23(g) or (h), the disclosed annual percentage rate shall be considered accurate:

(i) If the disclosed finance charge is understated, and the disclosed annual percentage rate is also understated but it is closer to the actual annual percentage rate than the rate that would be considered accurate under paragraph (a)(4) of this section;

(ii) if the disclosed finance charge is overstated, and the disclosed annual percentage rate is also overstated but it is closer to the actual annual percentage rate than the rate that would be considered accurate under paragraph (a)(4) of this section.

(b) *Computation tools.* (1) The Regulation Z Annual Percentage Rate Tables produced by the Board may be used to determine the annual percentage rate, and any rate determined from those tables in accordance with the accompanying instructions complies with the requirements of this section. Volume I of the tables applies to single advance transactions involving up to 480 monthly payments or 104 weekly payments. It may be used for regular transactions and for transactions with any of the following irregularities: an irregular first period, an irregular first payment, and an irregular final payment. Volume II of the tables applies to transactions involving multiple advances and any type of payment or period irregularity.

(2) Creditors may use any other computation tool in determining the annual percentage rate if the rate so determined equals the rate determined in accordance with appendix J, within the degree of accuracy set forth in paragraph (a) of this section.

(c) *Single add-on rate transactions.* If a single add-on rate is applied to all transactions with maturities up to 60 months and if all payments are equal in amount and period, a single annual percentage rate may be disclosed for all those transactions, so long as it is the highest annual percentage rate for any such transaction.

(d) *Certain transactions involving ranges of balances.* For purposes of disclosing the annual percentage rate referred to in §226.17(g)(4) (Mail or telephone orders—delay in disclosures) and (h) (Series of sales—delay in disclosures), if the same finance charge is imposed on all balances within a specified range of balances, the annual percentage rate computed for the median balance may be disclosed for all the balances. However, if the annual percentage rate computed for the median balance understates the annual percentage rate computed for the lowest balance by more than 8 percent of the latter rate, the annual percentage rate shall be computed on whatever lower balance will produce an annual percentage rate that does not result in an understatement of more than 8 percent of the rate determined on the lowest balance.

[46 FR 20892, Apr. 7, 1981, as amended at 47 FR 756, Jan. 7, 1982; 48 FR 14886, Apr. 6, 1983; 61 FR 49246, Sept. 19, 1996]

## § 226.23   Right of rescission.

 top

(a) *Consumer's right to rescind.* (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[47]

[47] For purposes of this section, the addition to an existing obligation of a security interest in a consumer's principal dwelling is a transaction. The right of rescission applies only to the addition of the security interest and not the existing obligation. The creditor shall deliver the notice required by paragraph (b) of this section but need not deliver new material disclosures. Delivery of the required notice shall begin the rescission period.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following

consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[48] whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

[48] The term "material disclosures" means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in §226.32 (c) and (d).

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b)(1) *Notice of right to rescind.* In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act).The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

(2) *Proper form of notice.* To satisfy the disclosure requirements of paragraph (b)(1) of this section, the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice.

(c) *Delay of creditor's performance.* Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

(d) *Effects of rescission.* (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d) (2) and (3) of this section may be modified by court order.

(e) *Consumer's waiver of right to rescind.* (1) The consumer may modify or waive the right to rescind if

the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signature of all the consumers entitled to rescind. Printed forms for this purpose are prohibited, except as provided in paragraph (e)(2) of this section.

(2) The need of the consumer to obtain funds immediately shall be regarded as a bona fide personal financial emergency provided that the dwelling securing the extension of credit is located in an area declared during June through September 1993, pursuant to 42 U.S.C. 5170, to be a major disaster area because of severe storms and flooding in the Midwest.[48a] In this instance, creditors may use printed forms for the consumer to waive the right to rescind. This exemption to paragraph (e)(1) of this section shall expire one year from the date an area was declared a major disaster.

[48a] A list of the affected areas will be maintained by the Board.

(3) The consumer's need to obtain funds immediately shall be regarded as a bona fide personal financial emergency provided that the dwelling securing the extension of credit is located in an area declared during June through September 1994 to be a major disaster area, pursuant to 42 U.S.C. 5170, because of severe storms and flooding in the South.[48b] In this instance, creditors may use printed forms for the consumer to waive the right to rescind. This exemption to paragraph (e)(1) of this section shall expire one year from the date an area was declared a major disaster.

[48b] A list of the affected areas will be maintained and published by the Board. Such areas now include parts of Alabama, Florida, and Georgia.

(4) The consumer's need to obtain funds immediately shall be regarded as a bona fide personal financial emergency provided that the dwelling securing the extension of credit is located in an area declared during October 1994 to be a major disaster area, pursuant to 42 U.S.C. 5170, because of severe storms and flooding in Texas.[48c] In this instance, creditors may use printed forms for the consumer to waive the right to rescind. This exemption to paragraph (e)(1) of this section shall expire one year from the date an area was declared a major disaster.

[48c] A list of the affected areas will be maintained and published by the Board. Such areas now include the following counties in Texas: Angelina, Austin, Bastrop, Brazos, Brazoria, Burleson, Chambers, Fayette, Fort Bend, Galveston, Grimes, Hardin, Harris, Houston, Jackson, Jasper, Jefferson, Lee, Liberty, Madison, Matagorda, Montgomery, Nacagdoches, Orange, Polk, San Augustine, San Jacinto, Shelby, Trinity, Victoria, Washington, Waller, Walker, and Wharton.

(f) *Exempt transactions.* The right to rescind does not apply to the following:

(1) A residential mortgage transaction.

(2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

(3) A transaction in which a state agency is a creditor.

(4) An advance, other than an initial advance, in a series of advances or in a series of single-payment obligations that is treated as a single transaction under §226.17(c)(6), if the notice required by paragraph (b) of this section and all material disclosures have been given to the consumer.

(5) A renewal of optional insurance premiums that is not considered a refinancing under §226.20(a)(5).

(g) *Tolerances for accuracy* —(1) *One-half of 1 percent tolerance.* Except as provided in paragraphs (g)(2) and (h)(2) of this section, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) is understated by no more than1/2of 1 percent of the face amount of the note or $100, whichever is greater; or

(ii) is greater than the amount required to be disclosed.

(2) *One percent tolerance.* In a refinancing of a residential mortgage transaction with a new creditor (other than a transaction covered by §226.32), if there is no new advance and no consolidation of existing loans, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or

(ii) is greater than the amount required to be disclosed.

(h) *Special rules for foreclosures* —(1) *Right to rescind.* After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the consumer shall have the right to rescind the transaction if:

(i) A mortgage broker fee that should have been included in the finance charge was not included; or

(ii) The creditor did not provide the properly completed appropriate model form in Appendix H of this part, or a substantially similar notice of rescission.

(2) *Tolerance for disclosures.* After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) is understated by no more than $35; or

(ii) is greater than the amount required to be disclosed.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 51 FR 45299, Dec. 18, 1986; 58 FR 40583, July 29, 1993; 59 FR 40204, Aug. 5, 1994; 59 FR 63715, Dec. 9, 1994; 60 FR 15471, Mar. 24, 1995; 61 FR 49247, Sept. 19, 1996; 66 FR 17338, Mar. 30, 2001; 72 FR 63474, Nov. 9, 2007]

## § 226.24  Advertising.

 top

(a) *Actually available terms.* If an advertisement for credit states specific credit terms, it shall state only those terms that actually are or will be arranged or offered by the creditor.

(b) *Advertisement of rate of finance charge.* If an advertisement states a rate of finance charge, it shall state the rate as an "annual percentage rate," using that term. If the annual percentage rate may be increased after consummation, the advertisement shall state that fact. The advertisement shall not state any other rate, except that a simple annual rate or periodic rate that is applied to an unpaid balance may be stated in conjunction with, but not more conspicuously than, the annual percentage rate.

(c) *Advertisement of terms that require additional disclosures.* (1) If any of the following terms is set forth in an advertisement, the advertisement shall meet the requirements of paragraph (c)(2) of this section:

(i) The amount or percentage of any downpayment.

(ii) The number of payments or period of repayment.

(iii) The amount of any payment.

(iv) The amount of any finance charge.

(2) An advertisement stating any of the terms in paragraph (c)(1) of this section shall state the following terms,[49] as applicable:

[49] An example of one or more typical extensions of credit with a statement of all the terms applicable to each may be used.

(i) The amount or percentage of the downpayment.

(ii) The terms of repayment.

(iii) The *annual percentage rate,* using that term, and, if the rate may be increased after consummation, that fact.

(d) *Catalogs or other multiple-page advertisements; electronic advertisements.* (1) If a catalog or other multiple-page advertisement, or an electronic advertisement (such as an advertisement appearing on an Internet Web site), gives information in a table or schedule in sufficient detail to permit determination of the disclosures required by paragraph (c)(2) of this section, it shall be considered a single advertisement if:

(i) The table or schedule is clearly and conspicuously set forth; and

(ii) Any statement of terms of the credit terms in paragraph (c)(1) of this section appearing anywhere else in the catalog or advertisement clearly refers to the page or location where the table or schedule begins.

(2) A catalog or other multiple-page advertisement or an electronic advertisement (such as an advertisement appearing on an Internet Web site) complies with paragraph (c)(2) of this section if the table or schedule of terms includes all appropriate disclosures for a representative scale of amounts up to the level of the more commonly sold higher-priced property or services offered.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 66 FR 17338, Mar. 30, 2001; 72 FR 63474, Nov. 9, 2007]

### Subpart D—Miscellaneous

 top

### § 226.25   Record retention.

 top

(a) *General rule.* A creditor shall retain evidence of compliance with this regulation (other than advertising requirements under §§226.16 and 226.24) for 2 years after the date disclosures are required to be made or action is required to be taken. The administrative agencies responsible for enforcing the regulation may require creditors under their jurisdictions to retain records for a longer period if necessary to carry out their enforcement responsibilities under section 108 of the act.

(b) *Inspection of records.* A creditor shall permit the agency responsible for enforcing this regulation with respect to that creditor to inspect its relevant records for compliance.

### § 226.26   Use of annual percentage rate in oral disclosures.

 top

(a) *Open-end credit.* In an oral response to a consumer's inquiry about the cost of open-end credit, only the annual percentage rate or rates shall be stated, except that the periodic rate or rates also may be stated. If the annual percentage rate cannot be determined in advance because there are finance charges other than a periodic rate, the corresponding annual percentage rate shall be stated, and other cost information may be given.

(b) *Closed-end credit.* In an oral response to a consumer's inquiry about the cost of closed-end credit, only the annual percentage rate shall be stated, except that a simple annual rate or periodic rate also may be stated if it is applied to an unpaid balance. If the annual percentage rate cannot be determined in advance, the annual percentage rate for a sample transaction shall be stated, and other cost information for the consumer's specific transaction may be given.

### § 226.27   Language of disclosures.

 top

Disclosures required by this regulation may be made in a language other than English, provided that the disclosures are made available in English upon the consumer's request. This requirement for providing English disclosures on request does not apply to advertisements subject to §§226.16 and 226.24.

[66 FR 17339, Mar. 30, 2001]

### § 226.28   Effect on State laws.

 top

(a) *Inconsistent disclosure requirements.* (1) Except as provided in paragraph (d) of this section, State law requirements that are inconsistent with the requirements contained in chapter 1 (General Provisions), chapter 2 (Credit Transactions), or chapter 3 (Credit Advertising) of the act and the implementing provisions of this regulation are preempted to the extent of the inconsistency. A State law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law. A State law is contradictory if it requires the use of the same term to represent a different amount or a different meaning than the Federal law, or if it requires the use of a term different from that required in the Federal law to describe the same item. A creditor, State, or other interested party may request the Board to determine whether a State law requirement is inconsistent. After the Board determines that a State law is inconsistent, a creditor may not make disclosures using the inconsistent term or form.

(2)(i) State law requirements are inconsistent with the requirements contained in sections 161 (Correction of billing errors) or 162 (Regulation of credit reports) of the Act and the implementing provisions of this regulation and are preempted if they provide rights, responsibilities, or procedures for consumers or creditors that are different from those required by the Federal law. However, a State law that allows a consumer to inquire about an open-end credit account and imposes on the creditor an obligation to respond to such inquiry after the time allowed in the Federal law for the consumer to submit written notice of a billing error shall not be preempted in any situation where the time period for making written notice under this regulation has expired. If a creditor gives written notice of a consumer's rights under such State law, the notice shall state that reliance on the longer time period available under State law may result in the loss of important rights that could be preserved by acting more promptly under Federal law; it shall also explain that the State law provisions apply only after expiration of the time period for submitting a proper written notice of a billing error under the Federal law. If the State disclosures are made on the same side of a page as the required Federal disclosures, the State disclosures shall appear under a demarcation line below the Federal disclosures, and the Federal disclosures shall be identified by a heading indicating that they are made in compliance with Federal law.

(ii) State law requirements are inconsistent with the requirements contained in chapter 4 (Credit billing) of the Act (other than section 161 or 162) and the implementing provisions of this regulation and are preempted if the creditor cannot comply with State law without violating Federal law.

(iii) A State may request the Board to determine whether its law is inconsistent with chapter 4 of the Act and its implementing provisions.

(b) *Equivalent disclosure requirements.* If the Board determines that a disclosure required by state law (other than a requirement relating to the finance charge, annual percentage rate, or the disclosures required under §226.32) is substantially the same in meaning as a disclosure required under the act or this regulation, creditors in that state may make the state disclosure in lieu of the federal disclosure. A creditor, State, or other interested party may request the Board to determine whether a State disclosure is substantially the same in meaning as a Federal disclosure.

(c) *Request for determination.* The procedures under which a request for a determination may be made under this section are set forth in appendix A.

(d) *Special rule for credit and charge cards.* State law requirements relating to the disclosure of credit information in any credit or charge card application or solicitation that is subject to the requirements of section 127(c) of chapter 2 of the act (§226.5a of the regulation) or in any renewal notice for a credit or charge card that is subject to the requirements of section 127(d) of chapter 2 of the act (§226.9(e) of the regulation) are preempted. State laws relating to the enforcement of section 127 (c) and (d) of the act are not preempted.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 54 FR 13867, Apr. 6, 1989; 54 FR 32954, Aug. 11, 1989; 60 FR 15471, Mar. 24, 1995]

### § 226.29  State exemptions.

 top

(a) *General rule.* Any State may apply to the Board to exempt a class of transactions within the State from the requirements of chapter 2 (Credit transactions) or chapter 4 (Credit billing) of the Act and the corresponding provisions of this regulation. The Board shall grant an exemption if it determines that:

(1) The State law is substantially similar to the Federal law or, in the case of chapter 4, affords the consumer greater protection than the Federal law; and

(2) There is adequate provision for enforcement.

(b) *Civil liability.* (1) No exemptions granted under this section shall extend to the civil liability provisions of sections 130 and 131 of the Act.

(2) If an exemption has been granted, the disclosures required by the applicable State law (except any additional requirements not imposed by Federal law) shall constitute the disclosures required by this Act.

(c) *Applications.* The procedures under which a State may apply for an exemption under this section are set forth in appendix B.

[46 FR 20892, Apr. 7, 1981; 46 FR 29246, June 1, 1981]

### § 226.30  Limitation on rates.

 top

A creditor shall include in any consumer credit contract secured by a dwelling and subject to the act and this regulation the maximum interest rate that may be imposed during the term of the obligation[50] when:

[50] Compliance with this section will constitute compliance with the disclosure requirements on limitations on increases in footnote 12 to §§226.6(a)(2) and 226.18(f)(2) until October 1, 1988.

(a) In the case of closed-end credit, the annual percentage rate may increase after consummation, or

(b) In the case of open-end credit, the annual percentage rate may increase during the plan.

[52 FR 43181, Nov. 9, 1987]

## Subpart E—Special Rules for Certain Home Mortgage Transactions

 top

**Source:**  Reg. Z, 60 FR 15471, Mar. 24, 1995, unless otherwise noted.

### § 226.31  General rules.

 top

(a) *Relation to other subparts in this part.* The requirements and limitations of this subpart are in addition to and not in lieu of those contained in other subparts of this part.

(b) *Form of disclosures.* The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures required by this subpart may be provided to the consumer in electronic form, subject to compliance with the consumer consent and other applicable provisions of the Electronic Signatures in Global and National Commerce Act (E-Sign Act) (15 U.S.C. §7001 *et seq.* ).

(c) *Timing of disclosure*— (1) *Disclosures for certain closed-end home mortgages.* The creditor shall furnish the disclosures required by §226.32 at least three business days prior to consummation of a mortgage transaction covered by §226.32.

(i) *Change in terms.* After complying with paragraph (c)(1) of this section and prior to consummation, if the creditor changes any term that makes the disclosures inaccurate, new disclosures shall be provided in accordance with the requirements of this subpart.

(ii) *Telephone disclosures.* A creditor may provide new disclosures by telephone if the consumer initiates the change and if, at consummation:

(A) The creditor provides new written disclosures; and

(B) The consumer and creditor sign a statement that the new disclosures were provided by telephone at least three days prior to consummation.

(iii) *Consumer's waiver of waiting period before consummation.* The consumer may, after receiving the disclosures required by paragraph (c)(1) of this section, modify or waive the three-day waiting period between delivery of those disclosures and consummation if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the waiting period, and bears the signature of all the consumers entitled to the waiting period. Printed forms for this purpose are prohibited, except when creditors are permitted to use printed forms pursuant to §226.23(e)(2).

(2) *Disclosures for reverse mortgages.* The creditor shall furnish the disclosures required by §226.33 at least three business days prior to:

(i) Consummation of a closed-end credit transaction; or

(ii) The first transaction under an open-end credit plan.

(d) *Basis of disclosures and use of estimates* —(1) *Legal Obligation.* Disclosures shall reflect the terms of the legal obligation between the parties.

(2) *Estimates.* If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided, and shall state clearly that the disclosure is an estimate.

(3) *Per-diem interest.* For a transaction in which a portion of the interest is determined on a per-diem basis and collected at consummation, any disclosure affected by the per-diem interest shall be considered accurate if the disclosure is based on the information known to the creditor at the time that the disclosure documents are prepared.

(e) *Multiple creditors; multiple consumers.* If a transaction involves more than one creditor, only one set of disclosures shall be given and the creditors shall agree among themselves which creditor must comply with the requirements that this part imposes on any or all of them. If there is more than one consumer, the disclosures may be made to any consumer who is primarily liable on the obligation. If the transaction is rescindable under §226.15 or §226.23, however, the disclosures shall be made to each consumer who has the right to rescind.

(f) *Effect of subsequent events.* If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of Regulation Z (12 CFR part 226), although new disclosures may be required for mortgages covered by §226.32 under paragraph (c) of this section, §226.9(c), §226.19, or §226.20.

(g) *Accuracy of annual percentage rate.* For purposes of §226.32, the annual percentage rate shall be considered accurate, and may be used in determining whether a transaction is covered by §226.32, if it is accurate according to the requirements and within the tolerances under §226.22. The finance charge tolerances for rescission under §226.23(g) or (h) shall not apply for this purpose.

[Reg. Z, 60 FR 15471, Mar. 24, 1995, as amended at 60 FR 29969, June 7, 1995; 61 FR 49247, Sept. 19, 1996; 66 FR 17339, Mar. 30, 2001; 72 FR 63475, Nov. 9, 2007]

### § 226.32  Requirements for certain closed-end home mortgages.

 top

(a) *Coverage.* (1) Except as provided in paragraph (a)(2) of this section, the requirements of this section apply to a consumer credit transaction that is secured by the consumer's principal dwelling, and in which either:

(i) The annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or

(ii) The total points and fees payable by the consumer at or before loan closing will exceed the greater of 8 percent of the total loan amount, or $400; the $400 figure shall be adjusted annually on January 1 by the annual percentage change in the Consumer Price Index that was reported on the preceding June 1.

(2) This section does not apply to the following:

(i) A residential mortgage transaction.

(ii) A reverse mortgage transaction subject to §226.33.

(iii) An open-end credit plan subject to subpart B of this part.

(b) *Definitions.* For purposes of this subpart, the following definitions apply:

(1) For purposes of paragraph (a)(1)(ii) of this section, *points and fees* means:

(i) All items required to be disclosed under §226.4(a) and 226.4(b), except interest or the time-price differential;

(ii) All compensation paid to mortgage brokers;

(iii) All items listed in §226.4(c)(7) (other than amounts held for future payment of taxes) unless the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge, and the charge is not paid to an affiliate of the creditor; and

(iv) Premiums or other charges for credit life, accident, health, or loss-of-income insurance, or debt-cancellation coverage (whether or not the debt-cancellation coverage is insurance under applicable law) that provides for cancellation of all or part of the consumer's liability in the event of the loss of life, health, or income or in the case of accident, written in connection with the credit transaction.

(2) *Affiliate* means any company that controls, is controlled by, or is under common control with another company, as set forth in the Bank Holding Company Act of 1956 (12 U.S.C. 1841 et seq.).

(c) *Disclosures.* In addition to other disclosures required by this part, in a mortgage subject to this section, the creditor shall disclose the following in conspicuous type size:

(1) *Notices.* The following statement: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."

(2) *Annual percentage rate.* The annual percentage rate.

(3) *Regular payment; balloon payment.* The amount of the regular monthly (or other periodic) payment and the amount of any balloon payment. The regular payment disclosed under this paragraph shall be treated as accurate if it is based on an amount borrowed that is deemed accurate and is disclosed under paragraph (c)(5) of this section.

(4) *Variable-rate.* For variable-rate transactions, a statement that the interest rate and monthly payment may increase, and the amount of the single maximum monthly payment, based on the maximum interest rate required to be disclosed under §226.30.

(5) *Amount borrowed.* For a mortgage refinancing, the total amount the consumer will borrow, as reflected by the face amount of the note; and where the amount borrowed includes premiums or other charges for optional credit insurance or debt-cancellation coverage, that fact shall be stated, grouped together with the disclosure of the amount borrowed. The disclosure of the amount borrowed shall be treated as accurate if it is not more than $100 above or below the amount required to be disclosed.

(d) *Limitations.* A mortgage transaction subject to this section shall not include the following terms:

(1)(i) *Balloon payment.* For a loan with a term of less than five years, a payment schedule with regular periodic payments that when aggregated do not fully amortize the outstanding principal balance.

(ii) *Exception.* The limitations in paragraph (d)(1)(i) of this section do not apply to loans with maturities of less than one year, if the purpose of the loan is a "bridge" loan connected with the acquisition or construction of a dwelling intended to become the consumer's principal dwelling.

(2) *Negative amortization.* A payment schedule with regular periodic payments that cause the principal balance to increase.

(3) *Advance payments.* A payment schedule that consolidates more than two periodic payments and pays them in advance from the proceeds.

(4) *Increased interest rate.* An increase in the interest rate after default.

(5) *Rebates.* A refund calculated by a method less favorable than the actuarial method (as defined by section 933(d) of the Housing and Community Development Act of 1992, 15 U.S.C. 1615(d)), for rebates of interest arising from a loan acceleration due to default.

(6) *Prepayment penalties.* Except as allowed under paragraph (d)(7) of this section, a penalty for paying all or part of the principal before the date on which the principal is due. A prepayment penalty includes computing a refund of unearned interest by a method that is less favorable to the consumer than the actuarial method, as defined by section 933(d) of the Housing and Community Development Act of 1992.

(7) *Prepayment penalty exception.* A mortgage transaction subject to this section may provide for a prepayment penalty otherwise permitted by law (including a refund calculated according to the rule of 78s) if:

(i) The penalty can be exercised only for the first five years following consummation;

(ii) The source of the prepayment funds is not a refinancing by the creditor or an affiliate of the creditor; and

(iii) At consummation, the consumer's total monthly debts (including amounts owed under the mortgage) do not exceed 50 percent of the consumer's monthly gross income, as verified by the consumer's signed financial statement, a credit report, and payment records for employment income.

(8) *Due-on-demand clause.* A demand feature that permits the creditor to terminate the loan in advance of the original maturity date and to demand repayment of the entire outstanding balance, except in the following circumstances:

(i) There is fraud or material misrepresentation by the consumer in connection with the loan;

(ii) The consumer fails to meet the repayment terms of the agreement for any outstanding balance; or

(iii) There is any action or inaction by the consumer that adversely affects the creditor's security for the loan, or any right of the creditor in such security.

[Reg. Z, 60 FR 15472, Mar. 24, 1995, as amended at 60 FR 29969, June 7, 1995; 66 FR 65617, Dec. 20, 2001]

## § 226.33  Requirements for reverse mortgages.

 top

(a) *Definition.* For purposes of this subpart, *reverse mortgage transaction* means a nonrecourse consumer credit obligation in which:

(1) A mortgage, deed of trust, or equivalent consensual security interest securing one or more advances is created in the consumer's principal dwelling; and

(2) Any principal, interest, or shared appreciation or equity is due and payable (other than in the case of default) only after:

(i) The consumer dies;

(ii) The dwelling is transferred; or

(iii) The consumer ceases to occupy the dwelling as a principal dwelling.

(b) *Content of disclosures.* In addition to other disclosures required by this part, in a reverse mortgage transaction the creditor shall provide the following disclosures in a form substantially similar to the model form found in paragraph (d) of Appendix K of this part:

(1) *Notice.* A statement that the consumer is not obligated to complete the reverse mortgage transaction merely because the consumer has received the disclosures required by this section or has signed an application for a reverse mortgage loan.

(2) *Total annual loan cost rates.* A good-faith projection of the total cost of the credit, determined in accordance with paragraph (c) of this section and expressed as a table of "total annual loan cost rates," using that term, in accordance with Appendix K of this part.

(3) *Itemization of pertinent information.* An itemization of loan terms, charges, the age of the youngest borrower and the appraised property value.

(4) *Explanation of table.* An explanation of the table of total annual loan cost rates as provided in the model form found in paragraph (d) of Appendix K of this part.

(c) *Projected total cost of credit.* The projected total cost of credit shall reflect the following factors, as applicable:

(1) *Costs to consumer.* All costs and charges to the consumer, including the costs of any annuity the consumer purchases as part of the reverse mortgage transaction.

(2) *Payments to consumer.* All advances to and for the benefit of the consumer, including annuity payments that the consumer will receive from an annuity that the consumer purchases as part of the reverse mortgage transaction.

(3) *Additional creditor compensation.* Any shared appreciation or equity in the dwelling that the creditor is entitled by contract to receive.

(4) *Limitations on consumer liability.* Any limitation on the consumer's liability (such as nonrecourse limits and equity conservation agreements).

(5) *Assumed annual appreciation rates.* Each of the following assumed annual appreciation rates for the dwelling:

(i) 0 percent.

(ii) 4 percent.

(iii) 8 percent.

(6) *Assumed loan period.* (i) Each of the following assumed loan periods, as provided in Appendix L of this part:

(A) Two years.

(B) The actuarial life expectancy of the consumer to become obligated on the reverse mortgage transaction (as of that consumer's most recent birthday). In the case of multiple consumers, the period shall be the actuarial life expectancy of the youngest consumer (as of that consumer's most recent birthday).

(C) The actuarial life expectancy specified by paragraph (c)(6)(i)(B) of this section, multiplied by a factor of 1.4 and rounded to the nearest full year.

(ii) At the creditor's option, the actuarial life expectancy specified by paragraph (c)(6)(i)(B) of this section, multiplied by a factor of .5 and rounded to the nearest full year.

## § 226.34   Prohibited acts or practices in connection with credit secured by a consumer's dwelling.

 top

(a) *Prohibited acts or practices for loans subject to §226.32.* A creditor extending mortgage credit subject to §226.32 shall not—

(1) *Home improvement contracts.* Pay a contractor under a home improvement contract from the proceeds of a mortgage covered by §226.32, other than:

(i) By an instrument payable to the consumer or jointly to the consumer and the contractor; or

(ii) At the election of the consumer, through a third-party escrow agent in accordance with terms established in a written agreement signed by the consumer, the creditor, and the contractor prior to the disbursement.

(2) *Notice to assignee.* Sell or otherwise assign a mortgage subject to §226.32 without furnishing the following statement to the purchaser or assignee: "Notice: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this mortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the creditor."

(3) *Refinancings within one-year period.* Within one year of having extended credit subject to §226.32, refinance any loan subject to §226.32 to the same borrower into another loan subject to §226.32, unless the refinancing is in the borrower's interest. An assignee holding or servicing an extension of mortgage credit subject to §226.32, shall not, for the remainder of the one-year period following the date of origination of the credit, refinance any loan subject to §226.32 to the same borrower into another loan subject to §226.32, unless the refinancing is in the borrower's interest. A creditor (or assignee) is prohibited from engaging in acts or practices to evade this provision, including a pattern or practice of arranging for the refinancing of its own loans by affiliated or unaffiliated creditors, or modifying a loan agreement (whether or not the existing loan is satisfied and replaced by the new loan) and charging a fee.

(4) *Repayment ability.* Engage in a pattern or practice of extending credit subject to §226.32 to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment. There is a presumption that a creditor has violated this paragraph (a)(4) if the creditor engages in a pattern or practice of making loans subject to §226.32 without verifying and documenting consumers' repayment ability.

(b) *Prohibited acts or practices for dwelling-secured loans; open-end credit.* In connection with credit secured by the consumer's dwelling that does not meet the definition in §226.2(a)(20), a creditor shall not structure a home-secured loan as an open-end plan to evade the requirements of §226.32.

[Reg. Z, 66 FR 65618, Dec. 20, 2001]

## § 226.35   [Reserved]

 top

## Appendix A to Part 226—Effect on State Laws

 top

Request for Determination

A request for a determination that a State law is inconsistent or that a State law is substantially the same

# Appendix C

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BlueHippo Funding, LLC | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 7000 Security Boulevard | Baltimore | MD | 21244 | |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Federal Trade Commission | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 600 Pennsylvania Avenue, N.W. | Washington | DC | 20580 | |

4. This FINANCING STATEMENT covers the following collateral:

Not subject to recordation tax. Filed and recorded to perfect a security interest granted to the United States.

Debtor hereby grants to Secured Party a continuing security interest in all assets, now owned or hereafter acquired and wherever located, including without limitation all equipment, inventory, investment property, cash and deposit accounts, policies of insurance, fixtures and general intangibles of every kind, together with all improvements and additions to, replacements and upgrades for and proceeds of all of the foregoing, and excluding customer account receivables.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | | (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

International Association of Commercial Administrators (IACA)

## United States District Court
## Southern District of New York
### Office of the Clerk
### U.S. Courthouse
### 500 Pearl Street, New York, N.Y. 10007-1213


Date:

In Re:

-v-

Case #:                    (          )


Dear Litigant,

      Enclosed is a copy of the judgment entered in your case.

      Your attention is directed to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, which requires that if you wish to appeal the judgment in your case, you must file a notice of appeal within 30 days of the date of entry of the judgment (60 days if the United States or an officer or agency of the United States is a party).

      If you wish to appeal the judgment but for any reason you are unable to file your notice of appeal within the required time, you may make a motion for an extension of time in accordance with the provision of Fed. R. App. P. 4(a)(5). That rule requires you to show "excusable neglect" or "good cause" for your failure to file your notice of appeal within the time allowed. Any such motion must first be served upon the other parties and then filed with the Pro Se Office no later than 60 days from the date of entry of the judgment (90 days if the United States or an officer or agency of the United States is a party).

      The enclosed Forms 1, 2 and 3 cover some common situations, and you may choose to use one of them if appropriate to your circumstances.

      The Filing fee for a notice of appeal is $5.00 and the appellate docketing fee is $450.00 payable to the "Clerk of the Court, USDC, SDNY" by certified check, money order or cash. **No personal checks are accepted.**


J. Michael McMahon, Clerk of Court


by: _____

, Deputy Clerk

**United States District Court**
**Southern District of New York**
**Office of the Clerk**
**U.S. Courthouse**
**500 Pearl Street, New York, N.Y. 10007-1213**

```
-------------------------------------------X
                                           |        NOTICE OF APPEAL
                                           |
            -V-                            |
                                           |        civ.          (    )
                                           |
-------------------------------------------X
```

Notice is hereby given that _____
                                            (party)
hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment [describe it]




entered in this action on the _____ day of _____ , _____ .
                                   (day)              (month)          (year)


                                        _____
                                                    (Signature)

                                        _____
                                                    (Address)

                                        _____
                                             (City, State and Zip Code)

Date: _____              (     ) _____-_____
                                                   (Telephone Number)


**Note:** You may use this form to take an appeal provided that it is <u>received</u> by the office of the Clerk of the District Court within 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

FORM 1

# United States District Court
## Southern District of New York
### Office of the Clerk
### U.S. Courthouse
### 500 Pearl Street, New York, N.Y. 10007-1213

```
--------------------------------------------X
                                            |
                                            |      MOTION FOR EXTENSION OF TIME
                                            |      TO FILE A NOTICE OF APPEAL
                                            |
              -V-                           |
                                            |         civ.            (    )
                                            |
                                            |
                                            |
--------------------------------------------X
```

Pursuant to Fed. R. App. P. 4(a)(5), _____ respectfully
                                                    (party)

requests leave to file the within notice of appeal out of time. _____
                                                                              (party)

desires to appeal the judgment in this action entered on _____ but failed to file a
                                                                (day)

notice of appeal within the required number of days because:

[Explain here the "excusable neglect" or "good cause" which led to your failure to file a notice of appeal within the
required number of days.]


_____
(Signature)

_____
(Address)

_____
(City, State and Zip Code)

Date: _____     (    ) _____-_____
                                          (Telephone Number)


**Note:** You may use this form, together with a copy of Form 1, if you are seeking to appeal a judgment and
did not file a copy of Form 1 within the required time. If you follow this procedure, these forms must be
<u>received</u> in the office of the Clerk of the District Court no later than 60 days of the date which the judgment
was entered (90 days if the United States or an officer or agency of the United States is a party).

FORM 2

# United States District Court
## Southern District of New York
### Office of the Clerk
### U.S. Courthouse
### 500 Pearl Street, New York, N.Y. 10007-1213

```
----------------------------------X
                                  |
                                  |         NOTICE OF APPEAL
                                  |              AND
              -V-                 |    MOTION FOR EXTENSION OF TIME
                                  |
                                  |         civ.        (    )
                                  |
                                  |
----------------------------------X
```

1.     Notice is hereby given that _____ hereby appeals to

                                         (party)

the United States Court of Appeals for the Second Circuit from the judgment entered on _____.

                                    [Give a description of the judgment]

2.     In the event that this form was not received in the Clerk's office within the required time

_____ respectfully requests the court to grant an extension of time in
             (party)

accordance with Fed. R. App. P. 4(a)(5).

    a.     In support of this request, _____ states that
                                            (party)

this Court's judgment was received on _____ and that this form was mailed to the
                                 (date)

court on _____ .
           (date)

                                _____

                                      (Signature)

                                _____

                                      (Address)

                                _____

                           (City, State and Zip Code)

Date: _____     (     ) _____-_____
                                       (Telephone Number)

**Note**: You may use this form if you are mailing your notice of appeal and are not sure the Clerk of the District Court will <u>receive</u> it within the 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

APPEAL FORMS

Docket Support Unit

Revised: April 9, 2006

FORM 3

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

```
-----------------------------------------X
                                         |
                                         |         AFFIRMATION OF SERVICE
                                         |
             -V-                         |
                                         |         civ.          (    )
                                         |
                                         |
-----------------------------------------X
```

I, _____, declare under penalty of perjury that I have

served a copy of the attached _____

_____

upon _____

_____

whose address is: _____

_____

Date: _____
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Signature)

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Address)

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　(City, State and Zip Code)