UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>BLUEHIPPO FUNDING, LLC,<br><br>　　　　and<br><br>BLUEHIPPO CAPITAL, LLC,<br>　　　　　Defendants. | CIVIL NO. 08 CV 1819 (PAC) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS BLUEHIPPO FUNDING, LLC AND BLUEHIPPO CAPITAL, LLC SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE STIPULATED FINAL JUDGMENT <u>AND ORDER OF PERMANENT INJUNCTION</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................... 2

    A.    The BlueHippo Action ............................................................................... 2

    B.    Stipulated Final Judgment and Order ....................................................... 3

    C.    Recent Complaints and FTC Requests for Information .......................... 4

    D.    Contempt Defendants' Violative Failure to Provide
Required Reports and Information ........................................................... 5

        1.    Contempt Defendants' Failure to Provide
a Compliance Report ................................................................... 5

        2.    Contempt Defendants' Failure To Respond to the
FTC's Demands For Information ................................................ 6

        3.    Contempt Defendants Failure to Provide A Sworn Affidavit
Attesting to the Accuracy of the Consumer Database ................. 8

III. ARGUMENT ........................................................................................................ 9

IV. CONCLUSION .................................................................................................. 12

## I. INTRODUCTION

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), seeks an order to show cause why Defendants Bluehippo Funding, LLC and Bluehippo Capital, LLC (collectively, "Defendants"), should not be held in civil contempt for violating the Court's April 10, 2008 Stipulated Final Judgment and Order of Permanent Injunction ("Final Order") (FTC 1).[1] Despite numerous requests, Defendants have failed to provide a Compliance Report ("Report"); written reports and documents in response to the FTC's written requests; and a "sworn affidavit" attesting to the accuracy of Defendants' consumer database – all of which are required by the express terms of the Final Order. Defendants failure to provide this critical compliance information is especially troubling in light of the hundreds of complaints made by credit-challenged consumers since entry of the Order. As in the underlying matter, consumers complain that they paid Defendants hundreds of dollars in activation fees and weekly payments for computers and other electronics, but have not received any merchandise. Accordingly, the FTC seeks an order to show cause and a coercive sanction of $10,000 per day until Defendants fully comply with the Order by producing all of the required information.

---

[1] The evidentiary documents supporting this motion are included in the accompanying exhibits and are identified by Exhibit Number (FTC ____). For the Court's convenience we have attached the Complaint and Final Order (appendices omitted) found in Docket entries 1 and 2 as FTC 1 and 2.

## II. STATEMENT OF FACTS

### A. The BlueHippo Action

The Commission filed its Complaint against Defendants on February 22, 2008 alleging that Defendants committed unfair or deceptive acts or practices involving their offer to finance the purchase of high-end consumer electronics, including personal computers and plasma televisions, to consumers with poor or no credit.[2] FTC 1. Specifically, in nationwide television and radio commercials, and on their Web site, Defendants touted the ability of consumers with "less than perfect credit, bad credit, no credit" to finance the purchase of a computer. *Id.* at 3. As alleged in the Complaint, Defendants offered to extend credit to consumers to finance these purchases with down payments of $99 to $124 and a year of weekly or bi-weekly payments ranging from $36 to $88.[3] *Id.* at 4. The Complaint also alleged that many consumers who ordered products paid hundreds of dollars and received nothing in return. *Id.* at 5-6. The Complaint further alleged that Defendants violated the FTC's Mail Order Rule by failing to ship merchandise in a timely manner or give consumers the right to cancel and receive a refund. *Id.* at 7-9. In addition, the Complaint alleged that Defendants violated the Truth in Lending Act

---

[2] Specifically, the Complaint alleged that Defendants' conduct violated the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. §§ 45(a)(1), 53(b), and 57(b); the Commission's Trade Regulation Rule concerning the Sale of Mail or Telephone Order Merchandise (the "Mail Order Rule"), 16 C.F.R. Part 435; the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and its implementing Regulation E, 12 C.F.R. Part 205; and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. Part 226.

[3] Defendants required consumers to agree to a series of automatic, periodic debits from their bank accounts to purchase their products, promising that they would deliver the product once the consumer made 13 weekly, or seven bi-weekly, payments. In many instances, Defendants debited consumers' accounts without first disclosing that consumers could not get a refund even if they canceled before delivery of the product, and regardless of the reason for cancellation.

(TILA) and Regulation Z by failing to make certain written disclosures before a transaction is made under an open-end consumer credit plan, and violated the Electronic Fund Transfer Act (EFTA) and Regulation E by conditioning the extension of credit to consumers on repayment by preauthorized electronic debits. *Id.* at 9-12.

## B. Stipulated Final Judgment and Order

Pursuant to the Final Order, Defendants agreed to pay up to $5 million to settle the FTC's charges and redress consumers for their losses. FTC 2 at 10-12, Part VI, Redress Program. In addition, Defendants agreed to certain conduct requirements. Among other things, Defendants are prohibited from making misrepresentations in the marketing of consumer electronics or any other product requiring four or more periodic payments before shipment. FTC 2 at 3-4, Part I.A, Prohibited Misrepresentations And Failures To Disclose. Defendants also must disclose clearly and conspicuously, before receiving payment, the terms and conditions of their refund, cancellation, and exchange policy.[4] *Id.* at 3-4, Part I.B.

More significantly for the current contempt action, the Final Order also requires Defendants to provide certain compliance information. First, Part X.B of the Order, "Compliance Reporting," requires Defendants to submit a detailed report within 180 days of the Order (in this case by October 7, 2008), sworn to under penalty of perjury, that sets forth the manner and form in which they have complied and are complying with the Order. Second, Part IX of the Order, "Compliance Monitoring," requires Defendants to provide reports and

---

[4] In addition, the Final Order permanently prohibited Defendants from violating the Mail Order Rule, the TILA and Regulation Z, and from conditioning the extension of credit on mandatory preauthorized transfers in violation of the EFTA and Regulation E. FTC 2 at 5-8, Parts III, IV.

3

documents to the Commission within five days, upon request, for the purpose of monitoring and investigating compliance with the Order. Finally, the Order requires Defendants to submit a "sworn affidavit" attesting to the accuracy of the consumer database to be used by the Commission to determine the pool of consumers entitled to redress under the terms of the Order. This affidavit, required by Part VII.B of the Order, Redress Program, was due May 30, 2008.

### C. Recent Complaints and FTC Requests for Information

From August 2008 through March 2009, the Better Business Bureau received more than **1200** complaints against BlueHippo.[5] FTC 3, Local Civil Rule 83.9 Affidavit. During that same time period, the FTC received over 150 complaints. FTC 3. Many of these complaints describe conduct similar to the deceptive conduct challenged in the Commission's Complaint. In particular, hundreds of customers have complained that they have not received the merchandise they ordered from Defendants despite making the required number of consecutive payments.

The FTC has pursued information from Defendants in order to investigate these many complaints. Specifically, the FTC served two written demands for reports and documents upon Defendants dated January 29, 2009 and March 9, 2009, pursuant to Section IX.B of the Final Order. Complete responses to these demands were due within five days of receipt or by February 5, 2009 and March 16, 2009, respectively. However, as set forth in Section D.2 below, Defendants' responses to the FTCs' requests for reports and documents and are deficient in key respects and totally absent in others.

---

[5] The BBB did not begin to receive complaints about BlueHippo's post-order conduct until August, several months after the Final Order was entered in April because Defendants' sales plan requires its customers to make a number of consecutive weekly payments before they are eligible to receive merchandise.

## D. Contempt Defendants' Violative Failure to Provide Required Reports and Information

Defendants failure to provide the required information violates the Final Order. First, Defendants have failed to provide the FTC with a Compliance Report thereby violating Section X of the Final Order. Second, Defendants have failed to provide important compliance information in response to the FTC's Demand Letters as required under Section IX of the Final Order. Finally, Defendants' continuing failure to provide a sworn affidavit verifying the accuracy of its consumer database violates Section VI of the Final Order. Accordingly, the FTC seeks civil contempt sanctions against Defendants, including coercive monetary relief to force Defendants to comply with the Order.

### 1. Contempt Defendants' Failure to Provide a Compliance Report

Section X of the Order requires Defendants to "provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which Defendants have complied and are complying with this Order." These items were due October 7, 2008. The FTC notified Defendants of their overdue Compliance Report on numerous occasions, including five written requests starting on October 16, 2008 and continuing through March of this year. *See* FTC 4-8. The FTC made clear to Defendants that their continued failure to produce the Report risked further action by the Commission. *See e.g.,* FTC 4, 6b, 8. Defendants assured the FTC on various occasions that they would immediately prepare the report. *See e.g.,* FTC 9, 10. However, despite the Order's express requirements, the FTC's repeated demands, and their repeated assurances, Defendants have failed to produce their Report.

## 2. Contempt Defendants' Failure To Respond to the FTC's Demands For Information

Faced with a swell of complaints and no compliance report, on January 29, 2009, the FTC demanded certain reports and documents from Defendants pursuant to Section IX of the Final Order. Section IX authorizes the FTC to obtain reports and documents for the purpose of monitoring and investigating compliance with the Order. FTC 6a; *see* FTC 2 at 16-17. The FTC issued a second set of requests on March 9, 2009. FTC 8.

Specifically, the FTC's January 29, 2009 letter sought information related to the hundreds of consumer complaints alleging that BlueHippo failed to provide computers or other electronic merchandise after customers had made the minimum number of consecutive payments required by BlueHippo. In particular, the FTC sought copies of Defendants' post-order marketing materials, information regarding monetary payments and merchandise deliveries to Defendants' customers, and consumer complaints. *See* FTC 6a. This information is necessary in order to determine whether Defendants are violating the Court's Order.

The FTC's January 29, 2009 request identified the information it sought with specificity, including, but not limited to, FTC Request 3, which sought a report identifying contact, payment, merchandise and delivery information "for each customer who has paid the defendants any amount of money for any product since April 10, 2008" and FTC Request 4, which sought a copy of all customer complaints since April 10, 2008. FTC 6a. In addition, FTC Requests 1 and 2 sought a copy of each telephone script used by Defendants since April 10, 2008, and a copy of **each** document provided to customers who placed orders since April 10, 2008. *Id.*[6]

---

[6] Of course, the FTC seeks a copy of each unique document – not literally every document sent to consumers.

However, Defendants completely failed to respond to Requests 3 and 4 regarding customer payment, delivery information, and complaints. Moreover, Defendants' response to Requests 1 and 2 was deficient. Although FTC Request 1 demanded a copy of **each** telephone script used by Defendants since April 10, 2008, Defendants provided a single script that appears to be outdated. Similarly, although, FTC Request 2 demanded a copy of **each** document provided to customers who placed orders since April 10, 2008, Defendants by their own admission, merely provided the "representative sample copies."

On March 9, 2009, the FTC sought additional information from Defendants in order to determine whether Defendants are violating the Court's Order. FTC 8. The FTC's written demand included, among other things, a demand for information regarding payments made by Defendants' customers, the receipt by customers of promised rebates and "gifts" offered by Defendants. *Id.* The FTC also once again demanded that Defendants remedy the deficiencies in their response to the FTC's January 29, 2009 Requests for information and provide the past-due Compliance Report and sworn verification. *Id.* Although Defendants' counsel represented they would provide the requested information, to date they have neither supplemented their deficient earlier response nor responded at all to the FTC's March Requests.

The FTC notified Defendants of these failures to comply with the Order and Defendants represented that they would provide additional information. *See* FTC 7, 8, 10, 12. Defendants, however, have failed to provide this information and have therefore violated Section IX of the Order. These failures to comply with the Order, while inexcusable in their own right, are even more crucial given the large volume of complaints concerning Defendants' current business practices. Moreover, Defendants' failure to produce the requested information, coupled with their failure to produce a Compliance Report, further underscore the possibility that Defendants

7

are attempting to hide their lack of compliance with the conduct provisions of the Court's Order that prohibit misrepresentations in the marketing of consumer electronics.

### 3. Contempt Defendants Failure to Provide A Sworn Affidavit Attesting to the Accuracy of the Consumer Database

Section VI of the Final Order requires Defendants to provide a searchable electronic file (the "Consumer Database") containing the name, contact information, and payment information of each eligible purchaser. FTC 2 at 10-11. This provision also requires Defendants to update the purchaser's address information through the National Change of Address database, report the total amounts paid by purchaser, the dates of each payment, and the amount and dates of any refunds provided by Defendants to purchasers. *Id.* Significantly, the Order also requires Defendants to submit a sworn affidavit attesting to the accuracy of the Consumer Database "no later than thirty (30) days following entry of the Order, or by May 9, 2008." *Id.* at 11.

Defendants' verification is important because the Commission is relying upon the accuracy of Defendants' information to determine how many consumers should receive redress and in what amount. Significantly, Defendants' ultimate liability hinges on the accuracy of this data, because the Final Order requires Defendants to make additional payments of up to $1.5 million "to cover the difference between the amount paid by Current Eligible Purchasers" and the amount initially paid by Defendants. FTC 2 at 12, Part VI.C.2, Redress Program. Put simply, the required verification forces Defendants to swear to that they have not undercounted the number of consumers or the amounts they are owed in order to escape this potential liability. However, despite numerous demands starting in July 2008, nearly 11 months ago, Defendants have yet to provide this verification. *See* FTC 11, 4, 8.

## III. ARGUMENT

A district court has the authority to enforce its own orders. *See In re Debs*, 158 U.S. 564, 594 (1895) ("[T]he power of a court to make an order carries with it equal power to punish for a disobedience of that order"); *accord Shilitani v. United States*, 384 U.S. 364, 369-70 (1966) (Courts have "inherent power to enforce compliance with their lawful orders" through contempt proceedings); *see also In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 93 (2d Cir. 1985) (a court's jurisdiction to enforce its own orders "is recognized as part of [the] court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity"). As a party to the original action, the Commission may invoke the Court's order enforcement power by initiating a proceeding for civil contempt in the same action. *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444-45 (1911).

A finding of contempt is proper if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedic Electromedia Comercial, LTDA v. GE Medical Systems Information Technologies, Inc.*, 369 F. 3d 645, 655 (2d Cir. 2004). Moreover, movants need not establish that Defendants willfully violated the order to hold a party in civil contempt. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).

Here, as set out above, the evidence establishes that Defendants are in contempt of the Final Order. First, the Order provisions at issue are clear and definite both with respect to the content and timing of the information Defendants are required to produce. Second, Defendants have violated the Order by failing to provide a Compliance Report in violation of Section X of the Final Order, failing to provide key documents and information in violation of Section IX of

the Final Order, and failing to provide a sworn verification attesting to the accuracy of their Consumer Database in violation Section VI of the Final Order. Indeed, despite numerous requests, Defendants continue to engage in a pattern of delay and noncompliance. This pattern is particularly troubling in light of the hundreds of complaints received concerning Defendants post-order business practices. Third, Defendants' utter failure to produce either a Compliance Report or sworn verification of their Consumer Database coupled with their severely deficient responses to the FTC's requests for information establish Defendants' lack of diligence in complying with the Final Order.

Courts may impose sanctions for civil contempt "to coerce the contemnor into future compliance with the court's order. . ." *New York State Nat'l Org. For Women v. Terry*, 886 F.2d 1339, 1352-53 (2d. Cir. 1989) (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1946)). Sanctions that may be imposed for civil contempt include fines that cease to accrue when the noncomplying party purges himself of the contempt. *See Penfield Co. v. SEC*, 330 U.S. 585, 590 (1947). To the extent that a contempt sanction is coercive, the court has broad discretion to design a remedy that will bring about compliance." *Paramedics*, 369 F.3d at 657.

In deciding whether to impose a coercive remedy, the district court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *United States v. Asero*, 2009 U.S. Dist. LEXIS 18629 at *8-9 (S.D.N.Y. March 5, 2009); *accord Perfect Fit Industries, Inc. v. Acme Quilting Co. Inc.*, 673 F.2d 53, 57 (2d Cir. 1981).

In this situation, Defendants' refusal to comply with the compliance and redress provisions of the Final Order raises serious concerns. The recent swell of consumer complaints that mirror the very conduct prohibited by the Court's conduct prohibitions foreshadow potentially serious compliance issues. Thus, Defendants' refusal to provide a compliance report and important information in response to the FTC's specific requests about Defendant's post-Order conduct amplifies the need for a coercive sanction aimed at bringing about swift compliance. The requested sanction should effectively coerce Defendants' production of the required information because Defendants, as a business enterprise, are presumably motivated by economic considerations. Hence the Court should "impose a fine sizeable enough to make it economically unwise" for Defendants to continue to ignore the provisions of the previous court orders. *See Perfect Fit industries*, 673 F.2d at 57.

Courts have consistently imposed significant sanctions in civil contempt actions to coerce Defendants to comply with demands for documents and other reports. *See, e.g., Diamant v. GMS Diamonds Corp.*, 2004 U.S. Dist. LEXIS 23866 at *5 (S.D.N.Y. Nov. 23, 2004) (imposing fine of $1000 per day for failure to comply with post-default judgment subpoena); *United States v. IBM*, 60 F.R.D. 658, 667 (S.D.N.Y. 1973) (imposing fine of $150,000 per day for failure to produce documents in compliance with pre-trial order). Given the scope of Defendants' business operations as evidenced by their advertising and the volume of complaints a fine of $10,000 per day is appropriate to coerce full compliance with the Court's Final Order. Of course, if Defendants comply immediately, they need not pay any fines.

## IV. CONCLUSION

The FTC requests that the Court enter the proposed Order to Show Cause. Defendants Bluehippo Funding, LLC and Bluehippo Capital, LLC have failed to comply with numerous key provisions of the Order that are vital to the FTC's ability to monitor Defendants' compliance with the substantive conduct provisions of the Order. In the face of hundreds of recent complaints that bear a striking resemblance to Defendants' original deceptive conduct, Defendants' refusal to provide information thwarts the FTC's ability to protect consumers and flouts this Court's Final Order. The FTC seeks a monetary sanction that will swiftly coerce Defendants to comply so that the FTC may monitor Defendants' compliance and investigate the hundreds of consumer complaints concerning Defendants' post-order conduct. Accordingly, the FTC requests that the Court impose a sanction of $10,000 per day to be paid to the Court registry until Defendants provide a Compliance Report, complete full responses to the FTC's requests for information, and provide a sworn verification attesting to the accuracy of their Consumer Database.

Dated: April 8, 2009

Respectfully submitted,

*Carole A. Paynter*

Laureen Kapin
Julie Mack
Federal Trade Commission
601 New Jersey Avenue, NW
Suite 2122
Washington, DC 20001
Telephone: (202) 326-3237
Facsimile: (202) 326-2559
lkapin@ftc.gov
jmack@ftc.gov

Carole A. Paynter
Federal Trade Commission
Northeast Division
One Bowling Green
Suite 318
New York, NY 10004
Telephone: (212) 607-2829
Facsimile: (212) 607-2822
reichen@ftc.gov

Attorneys for the Federal Trade Commission