UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>BLUEHIPPO FUNDING, LLC<br><br>and<br><br>BLUEHIPPO CAPITAL, LLC,<br><br>Defendants. | CIVIL NO. 08 CV 1819 (PAC) |

OPPOSITION TO ORDER TO SHOW CAUSE WHY DEFENDANTS BLUEHIPPO
FUNDING, LLC AND BLUEHIPPO CAPITAL, LLC
SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE
STIPULATED FINAL JUDGMENT AND ORDER OF PERMANENT INJUNCTION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 2

II. STATEMENT OF FACTS ....................................................................................... 3

   A. Background Facts.................................................................................................. 3

   B. Defendants' Compliance with the Final Order ................................................... 3

      (1) Defendants Produced a Preliminary
          Compliance Report Two Months Ago. ...................................................... 4

      (2) Defendants Produced a Sworn Affidavit to the FTC. ............................... 5

      (3) Defendants Have Produced More Than 2,000
          Pages of Documents to the FTC. ................................................................ 5

   C. Defendants' Good Faith Efforts to Comply with New FTC Requests.......................... 7

III. A CONTEMPT ORDER IS NOT APPROPRIATE OR
     WARRANTED BASEDONTHESE FACTS. ................................................... 8

   A. The FTC's Motion for Civil Contempt Relating to the
      Compliance Report and the Sworn Verification is Moot............................... 9

   B. The FTC Order Lacks Specificity to Support the FTC's
      Motion for Contempt based on Defendants' Alleged Failure to
      Produce Additional Documents that are not Set Forth in the Order........................ 10

IV. EVEN IF THE COURT IS INCLINED TO FIND
     DEFENDANTS IN CONTEMPT, THE REMEDY SOUGHT BY
     THE FTC IS EXCESSIVE AND UNREASONABLE. ................................................. 11

V. CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,*
  87 F. Supp. 2d 281 (S.D.N.Y. 2000).................................................................... 10

*Armstrong v. Guccione,*
  470 F.3d 89 (2d Cir. 2006)..................................................................................9

*Diamant v. GMS Diamonds Corp.,*
  2004 U.S. Dist. LEXIS 23866 at *5
  (S.D.N.Y. Nov. 23, 2004) ................................................................................ 13

*Donovan v. Sovereign Sec. Ltd.,*
  726 F.2d 55 (2d Cir. 1984)................................................................................. 8

*Go-Video v. Motion Picture Ass'n of Am.,*
  10 F.3d 693 (9th Cir. 1993) ............................................................................. 10

*In re Irving,*
  600 F.2d 1027 (2d Cir. 1976)............................................................................9

*International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,*
  389 U.S. 64 (1967)..................................................................................... 8, 10

*International Union, UMW v. Bagwell,*
  512 U.S. 821 (1994)..........................................................................................9

*Judelshon v. Black,*
  64 F.2d 116 (2d Cir. 1933)............................................................................. 12

*Panix Promotions v. Lewis,*
  2004 U.S. Dist. LEXIS 3504 *24
  (S.D.N.Y. 2004) .............................................................................................. 8

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info.,*
  369 F.3d 645 (2d Cir. 2004).............................................................................. 8

*Perfect Fit Industries, Inc. v. Acme Quilting Co.,*
  673 F.2d 53 (2d Cir. 1982)......................................................................... 11, 12

*Secretary of Labor, U.S. Dep't of Labor v. Ottman Custom Processors...,*
  783 F.2d 8 (1st Cir. 1986)................................................................................ 12

*Soobzokov v. CBS, Inc.,*
  642 F.2d 28 (2d Cir. 1981)............................................................................... 11

*Stein Indus. v. Jarco Indus.,*
  33 F. Supp. 2d 163 (E.D.N.Y. 1999) ................................................................. 8

*UFI Razor Blades, Inc. v. Wholesale, Retail, etc.,*
  610 F.2d 1018 (2d Cir. 1979)........................................................................... 12

*United States v. IBM,*
  60 F.R.D. 658 (S.D.N.Y. 1973) ....................................................................... 13

41384151.2

-ii-

Defendants BlueHippo Funding, LLC and BlueHippo Capital, LLC ("Defendants")

hereby oppose the Motion for Order to Show Cause Why Defendants BlueHippo Funding, LLC

and BlueHippo Capital, LLC Should Not be Held in Contempt for Violating the Stipulated Final

Judgment and Order of Permanent Injunction ("Motion" or "Contempt Motion") filed by the

Federal Trade Commission ("FTC") as follows:

## 1. **INTRODUCTION**

Pared to its essence, the FTC's Motion is an attempt to coerce Defendants to immediately

produce any documents or reports the FTC seeks, without notice or an opportunity to respond,

upon penalty of a civil contempt citation and egregious monetary sanctions.  By repeatedly

mentioning the factual predicate for its original claims and subsequent complaints that it insists

have been lodged by consumers, the FTC hopes to paint so unsavory a portrait of these

Defendants that this Court will issue a contempt order so sweeping in its scope as to defy even

the most elementary notions of fairness and due process.  Despite the FTC's claims and

unflattering innuendo, the Court will no doubt realize that the *sole* issue before it in the Motion is

whether Defendants are in contempt of this Court's April 10, 2008 Stipulated Final Judgment

and Order of Permanent Injunction ("Order" or "Final Order") for failure to have produced

certain documents -- not whether they are in compliance with its injunctive provisions.

In its Motion, the FTC asserts that Defendants should be cited for contempt and forced to

pay ten thousand dollars ($10,000) per day until they comply with the Order and produce

additional documents.  However, the FTC neglects to inform this Court that Defendants have

already produced to the FTC: (1) over 2,000 pages of documents; (2) a preliminary compliance

report on February 12, 2009; and (3) the full $3.5 million required in the Final Order.  In

addition, Defendants have produced the sworn affidavit confirming the accuracy of the consumer

database that was produced months ago, and hope to produce prior to the hearing a full compliance report to supplement the preliminary report produced in February, 2009. In fact, not only have Defendants complied with the vast majority of items contained in the Final Order, but in a noteworthy display of good faith, Defendants are now in the process of gathering additional information newly requested by the FTC that is neither expressly nor implicitly contained within the Order.

Simply stated, there is clearly no basis for contempt on these facts as Defendants have either already complied with the Order, thus rendering moot the relief sought, or the FTC is over-reaching as the Order fails to identify the documents sought by the FTC, thus failing to meet the "clear and unambiguous" standard mandated for the issuance of the "powerful" contempt remedy in this Circuit. As set forth in detail below, since there is simply no basis for a contempt order based on these facts this Court should deny the FTC's Motion in its entirety.

## II. STATEMENT OF FACTS

### A. Background Facts

For purposes of this Opposition, Defendants do not contest the FTC's Statement of Facts sections II A-C (Motion pp. 2-4). Despite the FTC's evidentiary unsupported assertions plainly intended to cast Defendants in an unsavory light and insinuation that Defendants are not in compliance with the injunctive terms of the Final Order, these facts simply are not relevant to the Motion before the Court, and Defendants will not further address them at this time.

### B. Defendants' Compliance with the Final Order

The FTC claims that Defendants failed to provide three categories of information required in the Final Order: (1) a compliance report pursuant to Section X.B. of the Order (*see* Motion II. D1, p. 5) ; (2) a sworn affidavit confirming the accuracy of the consumer database

Defendants produced (*see* Motion II. D3, p. 8); and (3) "reports and documents" not specified in the Final Order (*see* Motion II. D2, pp. 6-7).  As set forth below, Defendants have, in fact, either complied with the letter of the Final Order, or have made a good faith effort to do so.

*(1)  Defendants Produced a Preliminary Compliance Report Two Months Ago.*

While the FTC correctly notes that Section X of the Order requires Defendants to provide a compliance report, it completely neglects to mention that over two months ago, on February 12, 2009, Defendants sent a letter response to the FTC that contained a preliminary compliance report and enclosed nearly 1,000 pages of responsive documents.  *See* Declaration of Shari Mulrooney Wollman in Support of Defendants' Opposition to Motion for Order to Show Cause, filed concurrently herewith ("Wollman Decl."), ¶ 2.

The express terms of the Order provide: "...Defendants shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which Defendants have complied and are complying with this Order." *See* Order, Sec. X, p. 18, FTC 2.[1]  With the exception of provisions related to changes in corporate structure and acknowledgments of receipt of the Order, the Order itself does not further define or specify the scope or contents of the Order.

The preliminary compliance report sent to the FTC on February 12, 2009 contained all of the following information: (1) an update regarding the current sales script language; (2) details regarding the requirement that consumers verbally confirm consent and acknowledgment of their order in all calls; (3) details regarding revisions to documents provided to consumers to ensure accurate reflection of the terms and conditions of the purchase; (4) refund terms and conditions; (5) a clear statement of the lack of a refund policy to consumers; and (6) efforts to comply with

---

[1] All references to "FTC __" shall refer to the document entitled FTC Exhibits filed by the FTC in support of the Motion.

Truth-in-Lending and Regulation Z.[2]  Wollman Decl., ¶ 2.

While Defendants indicated they intended to provide a more complete compliance report in the future, there is no question that this preliminary report satisfied the material requirements of the Order and evidences a good faith intent to comply with its terms, particularly since the Order itself did not specify what needed to be contained in the report.  Moreover, Defendants hope to be able to send a full compliance report to the FTC prior to the hearing on the Motion. Wollman Decl. ¶ 3.

### (2)  Defendants Produced a Sworn Affidavit to the FTC.

On April 13, 2009 Defendants produced a sworn, notarized affidavit to the FTC attesting to the accuracy of the consumer database, which had been produced to the FTC months ago. Wollman Decl. ¶ 4.

### (3)  Defendants Have Produced More Than 2,000 Pages of Documents to the FTC.

The FTC insists that Defendants should be held in contempt for failure to comply with Section IX of the Order, which provides: "Within five (5) days of receipt of written notice from a representative of the Commission, Defendants shall submit additional written reports, sworn to under penalty of perjury; [and] produce documents for inspection and copying...." See Order, FTC Exhibit 2, Section IX. A., p. 17.  This broad, non-specific language is the sole predicate for the FTC's request for a contempt citation based upon what it insists is "Defendants' failure to respond to the FTC's demands for information." See Motion II. D.2, p. 6.  The FTC insists that the breadth of the language gives it carte blanche to demand any documents it wants from Defendants at any time, and to hold Defendants in contempt for their failure to immediately comply with its demands.

---

[2] Defendants do not attach a copy of the February 12, 2009 letter to the FTC due to confidentiality concerns, but will provide a copy to the Court for review upon request at the hearing on the Motion.

However, implicitly acknowledging that this broad language cannot sustain a finding of contempt, the FTC insists that Defendants' failure to produce specific documents listed in two letters it sent to Defendants, first on January 29, 2009 and then on March 9, 2009, may serve as the basis for contempt. Specifically, the FTC claims that the following categories of documents, *admittedly listed only in its January 29 and March 9 correspondence but not in the Order,* serve as the basis for its contempt request: (1) FTC Request 1 (telephone scripts); (2) FTC Request 2 (copies of "each document provided to customers who placed orders since April 10, 2008"); (3) FTC Request 3 (a report including detailed consumer information, including a "description of the product the customer ordered," "a description of any additional products or rebates the customer was promised;" and "delivery or shipment date or time-frame"); and (4) FTC Request 4 (a copy of "all consumer complaints"). *See* Motion II D.2 p. 6-7. *None* of these documents for which the FTC seeks to hold Defendants in contempt are listed in the Order.

Not only does the FTC seek to hold Defendants in contempt for failing to produce documents not listed in the Order, but it fails to acknowledge the many responsive documents that Defendants have produced. On February 12, 2009 Defendants produced nearly 1,000 pages of documents to the FTC, including telephone scripts, copies of documents provided to customers who placed orders since April 10, 20008, documents relating to specific customers and current advertisements that describe the terms of the offer. Wollman Decl. ¶ 2. Instead, the FTC grudgingly acknowledges that some documents were produced only while commenting upon their deficiency, noting, for example, that while some telephone scripts and documents provided to customers since April 10, 2008 were produced, not *all* were produced. *See* Motion, p. 7.

Despite the fact that the Order did not require Defendants to produce the vast majority of documents listed in the FTC's January 29 and March 9 letters, Defendants nevertheless

undertook a good faith effort to comply with the FTC's demand, first by producing the above

noted documents on February 12, 2009, and then by producing an additional approximately

1,700 documents on April 13, 2009, including an additional telephone script, documents showing

customer complaints since April 10, 2008 and updated customer information. Wollman Decl. ¶

4.[3]

### C. Defendants' Good Faith Efforts to Comply with New FTC Requests

The FTC's March 9, 2009 letter included not only renewed demands for previously

sought documents, but also demanded additional documents that are even farther attenuated from

the Order. These documents include further requests for "written reports" regarding: (1)

computer rebates since the Order was issued; (2) customers offered a "bonus" or "free gift" since

the Order was issued; (3) reports of customer payments histories to any credit bureaus since the

Order was issued; and (4) the BlueHippo Foundation, including who manages it and its revenue

for 2007, 2008 and 2009. *See* FTC 8 , pp. 2-3. Despite the breadth of these additional requests,

demanded only approximately one month ago, and their marked distance from the terms of the

Order, the FTC nevertheless insists that Defendants' failure to produce these documents further

serves as the basis for a contempt citation. *See* Motion II. D.2 p. 7.

While not acknowledging at any time that they were compelled to produce the documents

listed in either the January 29 or March 9 letters pursuant to the Order, Defendants nevertheless

promised to undertake good faith efforts to satisfy the FTC's demands. However, those efforts

have been hampered by the demands of multiple ongoing litigation with third parties and a

shortage of in-house personnel available to process these "reports" and locate responsive

documents. *See* Declaration of Andrew Campbell in Support of in Support of Defendants'

Opposition to Motion for Order to Show Cause ("Campbell Decl."), filed concurrently herewith.

---

[3] Again, this letter is not attached due to confidentiality concerns, but will be available at the hearing on the Motion.

Thus, while Defendants intend to continue their good faith efforts to cooperate with the FTC, their ability to comply has not kept pace with the FTC's demands.

## III.  A CONTEMPT ORDER IS NOT APPROPRIATE OR WARRANTED BASED ON THESE FACTS.

Civil contempt is appropriate only if: (1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info.*, 369 F.3d 645, 655 (2d Cir. 2004); *citing Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984).  "[T]he civil contempt power is an extreme remedy and indeed a 'potent weapon' and therefore should not be utilized where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Panix Promotions v. Lewis*, 2004 U.S. Dist. LEXIS 3504 *24 (S.D.N.Y. 2004); *Stein Indus. v. Jarco Indus.*, 33 F. Supp. 2d 163, 170 (E.D.N.Y. 1999) (magistrate judge refused to certify motion for civil contempt to the district court because the alleged contemnor did not violate the consent decree since the alleged violation was a *de minimis* act that resulted in no injury to the party seeking contempt, and the alleged contemnor did not act in bad faith); *see also International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) (holding that the contempt power is a "potent weapon" and that when founded upon a decree too vague to be understood, it can be a deadly one, the Supreme Court reversed the district court's contempt order seeking to enforce an arbitrator's award because the award was "too vague.")

Here, the FTC has failed to demonstrate sufficient grounds to hold Defendants in civil contempt for allegedly violating the Order.  Based on the evidence before the Court, the FTC has failed to make a clear and convincing showing that Defendants failed to comply with the Order. Prior to the hearing on the Motion, Defendants will have produced not only the preliminary compliance report but the sworn affidavit confirming the accuracy of the consumer database, and also hope to have produced the full compliance report.  In addition, Defendants have diligently attempted to comply with the FTC's many demands for documents and information in a

reasonable manner, albeit not as quickly as the FTC would at times prefer.  And despite the fact

that the majority of documents demanded by the FTC are not included within the terms of the

Order, at no time have Defendants refused to comply with the Order or the FTC's demand and in

fact have promised to continue their good faith efforts to comply.  Accordingly, civil contempt is

neither warranted nor appropriate based on these facts and the Court should deny the Motion.

A.    **The FTC's Motion for Civil Contempt Relating to the Compliance Report and the Sworn Verification is Moot.**

Although a party may seek to hold an opposing party in civil contempt for allegedly

violating a court order, the moving party's motion for contempt becomes moot once the

opposing party complies with the order.  *See Armstrong v. Guccione*, 470 F.3d 89, 101 (2d Cir.

2006); *In re Irving*, 600 F.2d 1027, 1031 (2d Cir. 1976).  Indeed, the Second Circuit Court of

Appeals has aptly stated:

> The chief characteristic of civil contempt is that its purpose is to
> compel obedience to an order of the court to enforce the rights of
> the other party to the action.  Consistent with this remedial
> purpose, the sanction imposed is generally made contingent on
> compliance.  This is often accomplished by a purgation provision,
> whereby a civil contemnor may purge himself of contempt at any
> time by compliance....

*Armstrong v. Guccione*, 470 F.3d at 101 (quoting *In re Irving*, 600 F.2d at 1031); *see also,*

*International Union, UMW v. Bagwell*, 512 U.S. 821, 826-30 (1994) (stating that "civil contempt

sanctions, or those penalties designed to compel future compliance with a court order, are

considered to be coercive and avoidable through obedience....").

Prior to the hearing on the Motion, Defendants hope to have fully complied with the letter

of the Order by producing both the full compliance report and the sworn affidavit as required

under Sections VI and X of the Order.  The FTC's request to hold Defendants in civil contempt

is therefore moot with respect to the preliminary compliance report (and hopefully full report as

well), and the sworn affidavit.  Accordingly, the Court should deny the Motion based upon

Defendants' purported failure to have produced these documents as moot.

**B.    The FTC Order Lacks Specificity to Support the FTC's Motion for Contempt based on Defendants' Alleged Failure to Produce Additional Documents that are not Set Forth in the Order.**

The United States Supreme Court has long held that a party may not be in contempt if the order is "too vague to be understood:"

> The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. Because the decree of this District Court was not so framed, it cannot stand. And with it must fall the District Court's decision holding the union in contempt.

*International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). Indeed, inadvertence is a defense to contempt if the person who has violated a court order has interpreted the order in a reasonable manner and in good faith. *See Go-Video v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993) (judgment of contempt vacated because plaintiff substantially complied with reasonable interpretation of protective order).

The Second Circuit has defined a "clear and unambiguous order" as:

> [O]ne that leaves 'no uncertainty in the minds of those to whom it is addressed,' who 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.' A district court may not impose obligations on a party that are not unambiguously mandated by the decree itself. Consequently, 'the longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.'

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 290 (S.D.N.Y. 2000).

As set forth above, the Order does not compel production of the vast majority of documents listed in the FTC's January 29 and March 9 letters, and those that are arguably encompassed within the terms of Section VI's requirements pertaining to the identification of

customer information were long ago produced. To the extent that the FTC is claiming that

Section X's requirement for the production of "additional written reports" and "documents for

inspection and copying" are sufficient either in and of themselves to support a contempt citation

for any conceivable "report" or "document" the FTC may conjure, or that the language supports

extension of the terms of the Order to any demand that the FTC might at any time articulate in

written correspondence between the parties – and whimsically demand on as little as five days'

notice -- the above authorities establish that such arguments are legally insufficient to meet the

"clear and unambiguous" standard for contempt citations in this Circuit.

## IV.  EVEN IF THE COURT IS INCLINED TO FIND DEFENDANTS IN CONTEMPT, THE REMEDY SOUGHT BY THE FTC IS EXCESSIVE AND UNREASONABLE.

A civil fine for contempt may serve one or both of the following goals: (1) to coerce the

contemnor to comply with the underlying order; or (2) to compensate the party seeking contempt

for that party's actual damages stemming from the contemnor's noncompliance of the underlying

order. *See Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56 – 57 (2d Cir. 1982)

(upholding district court's contempt order because the court properly weighed all of the relevant

factors and concluded contempt and a fine were necessary due to the contemnor's "'deliberate,'

'willful,' and indeed 'brazen'" contumacy"). "Because sanctions for civil contempt are designed

to coerce the contemnor into compliance with the court's mandate and to remedy past non-

compliance, they should be remedial and compensatory, not punitive. When it becomes obvious

that sanctions are not going to compel compliance, they lose their remedial characteristics and

take on more of the nature of punishment." *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir.

1981).

District courts weigh certain factors when determining coercive fines in contempt

proceedings, "including the character and magnitude of the harm threatened by continued

contumacy, … the probable effectiveness of any suggested sanction in bringing about

(compliance), and the amount of (the contemnor's) financial resources and the consequent

seriousness of the burden to (him)." *Perfect Fit Industries, Inc. v. Acme Quilting Co., supra,* 673

F.2d at 57.  While each of these factors must be weighed, the "overriding consideration is

whether the coercive fine was reasonably set in relation to the facts and was not arbitrary." *Id.;*

*cf. UFI Razor Blades, Inc. v. Wholesale, Retail, etc.,* 610 F.2d 1018, 1025 (2d Cir.

1979) (reversing contempt order and coercive fine because they were not supported by the

evidence but instead inappropriately based on the district court's "impressions or vague

feelings"); *Judelshon v. Black,* 64 F.2d 116, 117 (2d Cir. 1933) (district court's $2,000 contempt

fine was reversed on appeal because defendant did not violate injunction prohibiting patent

infringement); *Secretary of Labor, U.S. Dep't of Labor v. Ottman Custom Processors...,* 783

F.2d 8, 9 (1st Cir. 1986) ($300 daily contempt fine was reversed on appeal because the defendant

did not violate the court's order).

In the case at bar, the FTC has requested sanctions for civil contempt "to coerce"

Defendants to comply with the Order.  *See* Motion, p. 10.  While Defendants have already

demonstrated that a contempt order is not warranted based on these facts, if the Court is

nevertheless inclined to issue a contempt order Defendants respectfully submit that the $10,000

per day fine proposed by the FTC is not only arbitrary but punitive.  The FTC makes no effort to

address any of the elements required to establish the propriety of a fine, such as the Defendants'

"financial resources and the consequent seriousness" of the fine upon them.  *See Perfect Fit*

*Industries, Inc. v. Acme Quilting Co.,* 673 F.2d at 56 – 57.  And unlike the cases cited by the

FTC, Defendants have made numerous good faith efforts to comply with the FTC's demands for

increasingly tenuous documents.  *See, e.g., Diamant v. GMS Diamonds Corp.,* 2004 U.S. Dist.

LEXIS 23866 at *5 (S.D.N.Y. Nov. 23, 2004) (civil fine against principal of corporation was

appropriate because the corporation ignored a post-default judgment subpoena and the principal could not evade contempt warranting a daily fine of $1,000); *United States v. IBM,* 60 F.R.D. 658, 667 (S.D.N.Y. 1973) (daily fine was appropriate because defendant's counsel decided at the contempt hearing that he would not produce the documents ordered by the court, defendant never disputed the fact that it failed to comply with the underlying order, defendant failed to deny the government's factual allegations, and thus the court held defendant in contempt by assessing a daily fine of $150,000 based on the undisputed evidence of IBM's "net earnings for 1972 [of] $1,279,267,555 as against $1,078,846,907 for 1971 [and the] stockholder's equity as of December 31, 1972 ... reported as $7,565,894,847."); Motion p. 11.

Finally, while Defendants' repeated assurances to the FTC that they will comply with the FTC's requests renders it unnecessary for the Court to issue any further orders compelling the production of documents, should the Court nevertheless wish to consider issuing an specific order pertaining to the production of documents such a remedy could certainly be crafted in such a way as to afford Defendants adequate notice of what documents are sought as well as a reasonable time frame in which to comply. For example, the Court could consider issuing an order listing the documents and a time period in which they would be produced. However, as the FTC has not submitted such a proposed order, Defendants recommend that the Court simply direct the parties to meet and confer for the purpose of drafting a stipulation and proposed order for submission to the Court.

## V. CONCLUSION

For all of the above reasons, the FTC's Motion should be denied.


Dated: New York, New York.                    Respectfully submitted,
      April 14, 2009
                                       Manatt, Phelps & Phillips, LLP
                                       7 Times Square
                                       New York, NY  10036
                                       (212) 790-4500


By:_____/s/_____
               Kimo S. Peluso
               Manatt, Phelps & Phillips, LLP
               7 Times Square
               New York, NY  10036
               (212) 790-4500

               Attorneys for Defendants BlueHippo
               Funding, LLC and BlueHippo Capital, LLC

Of Counsel:
               Linda A. Goldstein
               Manatt, Phelps & Phillips, LLP
               7 Times Square
               New York, NY  10036
               (212) 790-4500

               Shari M. Wollman
               Manatt, Phelps & Phillips, LLP
               11355 W. Olympic Blvd.
               Los Angeles, CA 90064
               (310) 312-4000

               Attorneys for Defendants BlueHippo
               Funding, LLC and BlueHippo Capital, LLC

41384151.2

-14-