# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 08-cv-1819 (PAC) |
| | * | |
| BLUEHIPPO FUNDING, LLC *et al*., | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OF JOSEPH RENSIN CONCERNING
## APPLICABILITY OF A PRESUMPTION OF RELIANCE

Martin S. Himeles, Jr.
John J. Connolly
ZUCKERMAN SPAEDER LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD  21202
(410) 332 0444 (telephone)
(410) 659 0436 (facsimile)
mhimeles@zuckerman.com
jconnolly@zuckerman.com

4870564.21

## TABLE OF CONTENTS

I.    Introduction and Summary of Argument ............................................................... 1

II.   The FTC Did Not Meet its Burden to Establish an Omission of a Kind
      Usually Relied upon by Reasonable Prudent Persons. ......................................... 5

      A.   The FTC Offered No Evidence That BlueHippo's Online Store Policy
           Affected Consumers. ................................................................................. 5

      B.   The Record Evidence Fails To Establish How Often, If At All,
           BlueHippo Actually Charged for Shipping, Handling, Or Taxes. ............... 10

      C.   Apart from the Absence of Evidence that BlueHippo Charged Taxes,
           Shipping or Handling in Practice, the Remaining Evidence Does Not
           Support a Finding of Usual Reliance ........................................................ 13

III.  Law of the Case does not Apply to the Question on Remand. ............................. 16

      A.   Law of the Case does not Apply because neither this Court nor the Court
           of Appeals Previously Decided the Same Issue. ...................................... 16

      B.   Law of the Case does not Apply because the Court of Appeals
           Remanded for this Court to Decide whether the Presumption of Reliance
           Applies. ................................................................................................... 18

      C.   The Court's Prior Decision on the Materiality of Cost Cannot Support a
           Finding that Reasonable Prudent Persons Usually would have Relied on
           the Store Credit Omissions. ..................................................................... 20

      D.   Defendant did not Waive the Right to Challenge the Materiality Findings
           on Remand by Declining to Appeal from the Store Credit Findings. ......... 23

      E.   The Prior Decision Rule also does not Apply because the Court of
           Appeals' New Test Constitutes an Intervening Change in the Law. .......... 25

IV.   Conclusion ...................................................................................................... 25

4870564.21

Pursuant to this Court's Order at the March 24, 2015 pre-motion conference, Defendant Joseph Rensin submits this brief addressing the new test for a presumption of reliance announced by the Court of Appeals.

## I.     Introduction and Summary of Argument

The Court of Appeals held, for the first time in this Circuit, that the FTC would be entitled to a presumption of reliance if it could establish three elements.

> We . . . hold that the FTC is entitled to a presumption of consumer reliance upon showing that (1) the defendant made material misrepresentations or omissions that "were of a kind usually relied upon by reasonable prudent persons;" (2) the misrepresentations or omissions were widely disseminated; and (3) consumers actually purchased the defendants' products.

*Federal Trade Comm'n* v. *BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014). The Court made clear that the FTC retains the burden of proving damages, and that burden includes establishing the conditions for applicability of a presumption of reliance. But the Court did *not* conclude that the FTC satisfied its burden to show that the presumption applied in this case. Instead, the Court stated twice that "[b]ecause *the district court's opinion and order does not reflect the application of this principle*," *id.* at 242 (emphasis added), it was remanding for *this* Court "to consider, in the first instance, whether the requirements for this presumption have been met." *Id.*; *see also id.* at 246. The FTC still must show that its evidence was sufficient to establish these three elements to benefit from a presumption of reliance. Thus, the threshold question on remand is whether the FTC has met its burden to establish that "reasonable prudent persons" *usually* would *not have ordered a computer* from BlueHippo had they been informed at the outset of certain details concerning BlueHippo's store credit policy.

What BlueHippo did not disclose was its policy concerning how consumers could pay for shipping and tax charges in BlueHippo's online store. The FTC *assumed* that the existence of the policy concerning *payment* of such charges meant that taxes and shipping were charged on *every*

online store order, but the policy itself said no such thing. The FTC did not offer *any* evidence that BlueHippo *ever* charged for shipping or taxes in its online store. Absent evidence whether or how frequently such charges were imposed, the FTC could not meet its burden and, indeed, could not show that the omitted information affected consumers at all. The record evidence compels the conclusion that the FTC failed to establish that the store credit policy was of a kind usually relied upon by reasonable prudent consumers.

The FTC's failure to offer evidence on such a critical point was foreshadowed by its shifting focus during this Court's hearing. The FTC's primary theory, until after the evidence was in, concerned BlueHippo's "financing misrepresentations" – principally that a consumer would receive a computer 3-4 weeks after satisfying the conditions for financing. The Court found that these representations were materially false with respect to consumers who qualified for financing during the relevant period but did not timely receive a computer or online store merchandise. Op. at 8. But the Court found no financing misrepresentation as to tens of thousands of other consumers who heard the same representations, ordered computers, and never qualified for financing.

Only after recognizing that the financing representations would not support a massive damages award did the FTC shift its emphasis, during closing arguments, and press its claim based on the store credit omissions. There was no dispute that BlueHippo fully disclosed that it did not provide cash refunds after an initial seven-day period, and that consumers could cancel their computer orders and obtain credit to purchase items in BlueHippo's online store. The Court found that BlueHippo did not disclose its policy that consumers could not use store credit to pay for shipping, handling, and tax charges, and could order only one item at a time from the online store. The policy, the Court found, was "[i]nformation concerning cost" and was therefore

2

"presumed material." Op. at 8 (citing *FTC* v. *Crescent Pub'g Co.*, 129 F. Supp. 2d 311, 321 (S.D.N.Y. 2001)).

The FTC sought damages of $14,062,627.51 – the total amount paid by consumers who did not receive computers or online store merchandise. This Court instead awarded damages of $609,856.38, the amount paid by 677 consumers who qualified for financing but did not receive computers or online store merchandise. The Court did not award damages for consumers who received computers late (for whom the FTC did not seek damages), or who never qualified for financing. Nor did the Court award damages for the online store omissions.

The FTC did not appeal any aspect of the Court's ruling on the financing misrepresentations. Instead, the FTC appealed the ruling on damages on the theory it never fully embraced until closing arguments: BlueHippo's omission of details about its store credit policy. The FTC argued that this Court erred by failing to presume reliance by *every* customer who did not receive a computer or store credit merchandise, because no customer would have ordered a computer had BlueHippo explained at the outset that store credits could not be used to cover taxes or shipping and handling.

This theory always seemed implausible in the extreme. The FTC knew full well that tens of thousands of consumers ordered computers from BlueHippo when its policy was to provide *no* refunds or store credits. BlueHippo's customers were interested in purchasing computers, and when they placed their computer orders they did not expect to cancel those orders and use store credits in the online store. It makes no sense to presume, as the FTC did, that "each [of more than 62,000 BlueHippo] consumers relied on the misrepresentation" and would have walked away had this policy been disclosed. *See* Response of FTC to Petition for Panel Rehearing at 4.

Moreover, the policy itself simply did not say what the FTC has always contended. It was silent concerning whether or how frequently BlueHippo charged for shipping and handling or taxes, and addressed only the means of payment for such charges, if any. A policy that concerned *payment* for shipping and taxes charges could have no impact on consumers if there were no such charges. Reasonable prudent consumers would not have relied on a policy that limited the means of payment for costs if the costs were not charged. Still, the FTC offered no evidence that shipping and taxes were charged at all.

Not only did the FTC fail to offer such evidence, but its assumption that such charges were imposed on every transaction was belied by the law and by Mr. Rensin's evidence. Maryland was the only state that could constitutionally tax BlueHippo sales, and BlueHippo sold only 14 computers in Maryland after April 10, 2008. The FTC's expert did not even address the online store policy until cross-examination, and he then testified that a large percentage of BlueHippo customers who received online store merchandise did not pay anything to supplement their store credits, and thus could not have been charged shipping or taxes. The FTC's expert also testified that many others who did pay additional funds ordered items that cost more than their store credits, and had to send in money for that reason. Indeed, the FTC's expert could not identify a *single* transaction in which shipping and handling or taxes were charged.

For these reasons and others discussed in more detail in Part II below, the Court should find that the FTC failed to establish its burden of showing that a presumption of reliance applies in this case. Part III below addresses the Court's query at the pre-motion conference concerning law of the case. The Court of Appeals' decision and controlling law establishes that law of the case presents no impediment because this Court has not addressed the first of the three prongs of the Court of Appeals' test for a presumption of reliance (the second and third prongs are not at

issue). The Court decided that the store credit omissions were "material" for a different purpose and under a different legal standard – indeed, before the Second Circuit had adopted the new standard. It found materiality not as a fact, but based on a legal presumption that, if it applies at all, applies in different circumstances, and does not satisfy the Second Circuit's requirement that the Court make a factual determination that reasonable prudent BlueHippo consumers purchasing computers would usually rely on the omission. The Second Circuit remanded precisely because it found that the Court had not previously addressed the issue, a point it made at least twice. And if the Court finds it necessary to reconsider its materiality finding, for a different purpose and under a different standard, the law of the case doctrine does not preclude it from doing so where, as here, there has been an intervening change in the law. While the Court need not disturb its prior findings, it is not precluded from doing so. Either way, the Court may, and indeed must, determine whether the FTC met its burden, and the evidence leaves no doubt that it failed to do so. The Court should find as a fact that the FTC failed to establish an essential precondition for a presumption of reliance, and that absent a presumption of reliance, the FTC offered insufficient evidence to obtain compensatory relief for the online store omissions.

## II.     The FTC Did Not Meet its Burden to Establish an Omission of a Kind Usually Relied upon by Reasonable Prudent Persons.

### A.     The FTC Offered No Evidence That BlueHippo's Online Store Policy Affected Consumers.

Throughout the evidentiary hearing and the pre-hearing proceedings, the FTC based its store-credit arguments on a one-sentence description of an online store policy concerning *payment* for certain charges contained in a letter from BlueHippo's counsel. But whether consumers usually rely on a policy concerning payment depends not just on the payment policy, but on whether and how often BlueHippo imposed the charges to which it applied. If BlueHippo had a policy against the use of store credits to pay for sales tax but never charged sales tax

because it did not sell to consumers in states where it had a physical presence, no one could contend that a failure to disclose the policy was the kind of omission usually relied upon by reasonable prudent consumers. The starting point for the FTC in attempting to meet its burden of showing that reasonable BlueHippo consumers usually would have relied on BlueHippo's policy, therefore, was to show whether and with what frequency BlueHippo charged for shipping and handling and for taxes. This the FTC did not do.

The BlueHippo policy was described in a single sentence in a two-page description of the online store contained in a letter from a lawyer for BlueHippo to the FTC:

> Store credit cannot be used for taxes or shipping and handling (store credit amount is principal paid, so store credits can only be used for principal).

*See* FTC Ex. 22F at 6. This sentence is a slim reed on which to base a claim for more than $14 million. It does not state or imply that such charges must be paid on every online store item, or how frequently, if at all, taxes or shipping and handling are charged. It merely states that store credit cannot be used to pay any charges that may apply for taxes or shipping and handling. Thus, the extent to which the policy affected consumers, if at all, depends on whether and how frequently BlueHippo charged for taxes and shipping and handling.[1]

The FTC offered no evidence of BlueHippo's policy or practice concerning charging for shipping, handling, or taxes. The FTC overlooked the importance of such evidence because it chose to read the policy to mean that shipping, handling, and taxes were charged on every item, or on so many items that the policy itself established that reasonable prudent consumers would

---

[1] The FTC also relies on a second policy described in the same letter permitting only one store credit order at a time. The significance of that policy depends on the extent to which shipping and taxes were charged in the online store. If the evidence did not establish that taxes or shipping and handling were charged in practice, or that consumers had to pay additional funds for such charges, this policy would have had no financial impact. The extent to which reasonable prudent consumers would have relied upon this policy therefore depends upon the same analysis of the evidence of BlueHippo's practice regarding shipping and taxes. In any event, the FTC offered no evidence that consumers were affected by this policy.

4870564.21

not have purchased computers if they knew of it when placing their orders. But the sentence describing the policy simply cannot be read as the FTC contends. The policy addresses how these charges can be paid, without addressing the frequency with which they are charged.

Neither the law nor the evidence supports the FTC's reading of the policy. The dormant Commerce Clause does not permit a state to tax sales by a seller that does not have a physical presence in the purchaser's state. *Quill Corp.* v. *North Dakota*, 504 U.S. 298 (1992). BlueHippo's sole location was in Maryland. *See* FTC Ex. 63 at 10-11. Only Maryland could have required BlueHippo customers to pay sales tax. But the BlueHippo spreadsheet listing the 62,673 orders after April 10, 2008, includes only 14 sales to Maryland customers, none of them after October 2008. BlueHippo discontinued Maryland sales, and only the few that slipped through would have been subject to sales tax. A policy against using store credits to pay sales tax on online store purchases therefore would have been entirely irrelevant to all but 14 of the more than 55,000 consumers for whom the FTC seeks damages on this theory. The evidence established that reasonable prudent consumers usually would not have relied on the policy as it related to taxes, because in all but a few cases, the policy would not have affected them.

The FTC fares no better in meeting its burden for shipping and handling. It is common among online merchants to provide free shipping and handling, sometimes across the board, sometimes on all orders above a dollar threshold, and sometimes on particular products.[2]

---

[2] For example, Walmart provides free shipping (as opposed to expedited shipping) for orders that exceed $50.00 (*see* http://help.walmart.com/app/answers/detail/a_id/276). Toys"R"Us offers free shipping on orders above $49.00 (http://www.toysrus.com/shop/index.jsp?categoryId=3554259). Dell and Nordstrom do not charge for shipping irrespective of cost (http://www.dell.com/learn/us/en/19/campaigns/free-shipping-easy-returns; http://shop.nordstrom.com/c/free-shipping?origin=leftnav). And Costco charges for shipping on some products but not on others (https://customerservice.costco.com/system/templates/selfservice/costco_en_us/#!portal/200500000001002/article/200500000003089/Product-Shipping-and-Handling-Charges).

4870564.21

Moreover, businesses often modify their practices to address market conditions, technological developments, and other extrinsic forces, but neglect to revise policies that are no longer relevant. The existence of BlueHippo's policy might mean that it charged for shipping and handling for some items but not for others; that it discontinued such charges without updating the policy; that it never imposed the charges but issued the policy in case its practice changed; or that it charged shipping and handling on every transaction. The policy, without more, simply does not mean that it applies to every, most, or any transactions; only evidence of the frequency with which BlueHippo imposed such charges, if at all, can establish whether the policy affected all orders, no orders, or some percentage in between.

The Second Circuit did not relieve the FTC of its burden of proving damages, and where its damages theory rests entirely on a presumption of reliance, as it does here, it has the burden of establishing the three elements the Second Circuit required for application of the presumption. *See* 762 F.3d at 244 ("Once the FTC makes a showing sufficient to trigger this presumption …"); *id*. at 246 (remanding for determination whether "the FTC has established the presumption appropriately applies on the facts of this case"). In order to satisfy its burden, the FTC had to offer not just evidence of a payment policy, but evidence that the payment policy mattered to consumers because charges that were subject to the policy were in fact imposed, and with sufficient regularity to cause consumer reliance.[3]

Instead, throughout the contempt hearing, the FTC simply assumed, without offering any supporting evidence, that the policy described in counsel's letter established not only that *if* there

---

[3] For reasons we explain below, even if there had been shipping, handling, and tax charges on every online store order — which the evidence clearly establishes was not the case — that would not have been sufficient to establish that a reasonably prudent consumer would have relied on BlueHippo's online store policy. *See infra* Part II(C). But if the FTC offered no evidence that BlueHippo ever charged shipping, handling, and taxes in the online store, or if the evidence established that these charges were infrequently imposed, the Court need look no further to find that the FTC did not meet its burden.

4870564.21

were shipping or sales taxes, customers were required to pay them in cash, but also that there *were* such charges – not in a few, or some, or even many transactions, but *in every online store transaction. See, e.g.,* Tr. 331 ("BlueHippo hid from consumers that if they wanted to get any value for this money *they would have to pay even more money in advance for taxes, shipping, and handling*.") (emphasis added); Tr. 340 (when a customer places an online store order, "*they're going to have to fork over even more money* for taxes, shipping, and handling before they can receive a computer. And that they can't apply their store credit to those charges. They have to go out, get a money order, send it in.") (emphasis added).

Not only did the FTC fail to offer evidence of such charges, it expressly disclaimed the need to do so. In her rebuttal closing argument, for example, the FTC's counsel implicitly retreated from her earlier position that shipping and taxes were charged on all orders, arguing that BlueHippo's practice did not matter:

> We don't have to prove that everyone was actually charged shipping and handling. What we have shown through the evidence is that it was BlueHippo's policy not to allow customers to apply taxes, shipping and handling to their store credit.

Tr. 411-12. The FTC adhered to that position at the March 24 pre-argument conference.

Although the FTC did not attempt to establish that BlueHippo imposed shipping and tax charges, Mr. Rensin did present evidence – including the admissions of the FTC's expert on cross-examination – that went directly to this point. That evidence conclusively disproves the FTC's assertion that consumers had to pay additional funds to get anything from the online store. The evidentiary record permits only one conclusion: the FTC failed to establish that reasonable prudent consumers usually relied on BlueHippo's omission.

4870564.21

**B.      The Record Evidence Fails To Establish How Often, If At All, BlueHippo Actually Charged for Shipping, Handling, Or Taxes.**

The FTC's view that it need not establish that BlueHippo actually charged for shipping, handling, or taxes, is reflected by its failure to ask its expert, Dr. Erez Yoeli, a single question on the subject on direct examination. Nor did the FTC question Dr. Yoeli concerning the harm caused by BlueHippo's omission, or offer any other evidence that supported its damages theory. BlueHippo simply assumed that the mere existence of the policy necessarily meant that every customer who ordered an online store item was required to pay shipping and tax charges in order to receive his merchandise, and therefore every consumer relied on the omission of the policy.[4]

On cross-examination, however, Dr. Yoeli testified to facts that disproved the FTC's assumption. He acknowledged that numerous customers placed online store orders, had no balance due on their orders, and received their merchandise *without making any additional cash payment* to supplement their store credits. Tr. 150. Those customers obviously were not required to pay additional funds for shipping and taxes; they received online store merchandise in exchange for their store credits, and nothing more. Moreover, Dr. Yoeli conceded that he simply did not know whether shipping and taxes were charged on every online store order, Tr. 188, or on any particular order. *Id.* 187-88.

After hearing these damaging admissions on cross-examination, the FTC had Dr. Yoeli review the spreadsheet again. On redirect, he testified that based on his further review, two-thirds of the customers who had no balance due and received online store items paid additional funds. Tr. 200. But that testimony, particularly taken together with the balance of Dr. Yoeli's testimony,

---

[4] In its counsel's rebuttal closing argument, the FTC for the first time retreated from this position, disclaiming the need to prove that shipping and taxes were charged on every online store order and arguing instead that the mere existence of the policy was sufficient. Tr. 411-12 (quoted *supra* at p. 9). Even after its eleventh hour retreat, however, the FTC disclaimed any obligation to show that shipping and taxes were ever charged; it had no choice, having offered no evidence on the point. Instead, it argued that the policy alone met its burden, without explaining why consumers would have relied on a policy if it had no effect on them.

offers no support for the FTC. His testimony established that a full one-third of the customers who had no balance due and received online store merchandise did not pay any additional funds, but simply used store credits. Thus, the FTC established conclusively that one-third of customers who received online store merchandise were not charged shipping, handling, or taxes. But it did not establish that the other two-thirds, who did pay additional funds, were charged shipping, handling or taxes. Dr. Yoeli did not testify that any of them incurred such charges, or that any of them had unused store credits available to apply to such charges. Rather, he testified that "there are plenty of additional paid entries that are very large," Tr. 149, and for those orders, customers owed additional funds because their store credits did not cover the cost of the item. Tr. 149-150. Of course, a customer who ordered an online store item that cost more than his store credit would have needed to pay additional funds whether or not there were shipping and handling or tax charges, or a policy against paying any such charges with store credits; the customer's store credit was insufficient even to pay for the product, and nothing was left to pay any ancillary charges. Given Dr. Yoeli's testimony that he did not know whether any customer who paid additional funds was charged for shipping, handling, or taxes, the FTC's evidence says nothing about whether shipping and taxes were charged on some, few, or any online store orders. Those who paid additional funds may have been paying for the portion of the purchase price that exceeded the customer's store credit.

The only evidence the FTC offered to show that the online store policy had an effect on any customers consisted of five hearsay complaints from consumers concerning the online store. *See* FTC Ex. 48D-48H. But these complaints, even assuming they are true, cannot support a finding that BlueHippo's practice regarding such charges was of a kind on which reasonable prudent consumers usually rely. Rather, after combing through 18,047 pages of consumer

11

complaints produced by BlueHippo and additional complaints from its own database, the FTC was able to identify only five complaints concerning online store shipping, handling, or tax charges. *See* FTC Ex. 48 at ¶¶ 4-5. To be sure, the number of complaints concerning BlueHippo is not a badge of honor. But the large number reflects that BlueHippo's customers were not hesitant to express their displeasure, in writing, and those complaints concerned other matters – principally matters which were the subject of the FTC's other claims and the Court's findings concerning them. Only a minuscule fraction of the complaints, five of more than 18,000, concerned the online store. The Court has already made findings concerning the damages incurred by consumers as a result of the other problems identified by the FTC, and those consumers will be compensated. The paucity of complaints concerning taxes or shipping and handling in the online store is strong evidence that the online store policies, as applied in practice, caused very few consumers to pay shipping and tax charges, and if BlueHippo ever charged shipping and handling or taxes, it did so rarely.

The FTC thus wholly failed to meet its burden of showing that BlueHippo charged taxes or shipping and handling and required consumers with available store credits to pay additional funds for those charges. On the contrary, the evidence conclusively established that a substantial percentage of online store customers received merchandise without paying additional funds, and for those who paid additional funds, there is no evidence that those payments were for shipping and handling or taxes, as opposed to the amount by which the price of the item ordered exceeded the amount of the store credit. Absent such evidence, the FTC failed to meet its burden to prove

that BlueHippo's policy in conjunction with its practice regarding taxes and shipping and handling was of a kind on which reasonable prudent consumers usually rely.[5]

### C. Apart from the Absence of Evidence that BlueHippo Charged Taxes, Shipping or Handling in Practice, the Remaining Evidence Does Not Support a Finding of Usual Reliance.

In light of the FTC's burden of proof and its failure to offer evidence that BlueHippo charged for shipping and handling or taxes, there is no need for the Court to look further. But even if the FTC had shown that BlueHippo required payment of additional funds before a customer could obtain online store merchandise, it would be entitled to a presumption of reliance only if it also established as a fact that under the circumstances, reasonable prudent BlueHippo customers purchasing computers usually would have relied upon BlueHippo's online store policy had they been aware of it. Again, the evidence supports the opposite conclusion.

In the first instance, it is common sense that a reasonable prudent consumer would not agree to make weekly payments for a year to purchase a computer at an average cost of

---

[5] The Second Circuit's comments in *dicta* that disclosure of the online store policies would likely have influenced consumers, *see* 762 F.3d at 246, do not require this Court to find that the FTC has met its burden. *See United States v. Hussein*, 178 F.3d 125, 129-30 (2d Cir. 1999) (law of the case does not apply to dicta). The Court of Appeals recognized several times that this Court had not addressed the issue under its new legal standard. *See supra* Part I. Moreover, the appellate court's observations were based on its factual recitation, which did not comport with the record. The Court believed that the BlueHippo practice, *before entering into the Consent Order*, was not to disclose that taxes and shipping and handling in the online store had to be paid in cash rather than with store credits, and consumers therefore had to send in additional funds to receive online store merchandise. *See* 762 F.3d at 240-41. In fact, the Complaint's only allegations concerning BlueHippo's refund policy related to the period before March 2006, when BlueHippo had no online store and a strict policy of not refunding any payments. *See* Complaint at ¶¶ 17-18. The FTC was aware of the subsequently established online store before it filed the Complaint and had every opportunity to investigate it — and to use the online store itself — but it never alleged that the online store was problematic in any respect in the underlying proceeding. The issue first arose in the contempt proceeding.

Moreover, the Court of Appeals was under the mistaken impression that the FTC had established that the only way consumers could obtain online store merchandise was by paying additional funds for taxes and for shipping and handling. *See* 762 F.3d at 240-41, 246. In fact, the FTC established only the policy that applied when there were such charges, if ever; it did not meet its burden to show that the charges were in fact imposed. If this Court makes factual findings, based on the evidence of record, that the FTC did not establish that the online store in practice charged taxes or shipping and handling – at all or with any regularity – and required consumers to make additional payments for such charges, those factual findings, amply supported by the record, will fully support a determination that the FTC failed to meet its burden to be entitled to a presumption of reliance.

4870564.21

approximately $2,000 if he expected to cancel the order. Of course, the evidence established that most BlueHippo customers did not make sufficient payments to obtain computers. But whether consumers "usually rely" upon a representation or omission depends upon consumers' state of mind at the time they place orders; the question is whether a reasonable prudent consumer who was going to order a BlueHippo computer usually would not have placed his order if he had known of the online store policy and practice. A consumer's later inability or unwillingness to continue making payments may reflect that the consumer had unrealistic expectations, or may be based on other factors that the consumer did not anticipate when placing the order. Subsequent cancellation does not suggest that the consumer expected to discontinue payments when placing the order.

It is equally clear that consumers ordered computers from BlueHippo because they wanted computers, not because they wanted online store merchandise. A computer purchaser is concerned primarily with the computer's features, its total cost, the number of payments required to obtain it, and similar matters. While the availability of refunds in some form may have mattered to some BlueHippo consumers, details concerning payment for shipping and tax charges for items purchased with store credits – if a consumer later canceled his computer order – were so far removed from the computer purchase that BlueHippo's consumers did not rely on them – "usually" or at all.

There is no better evidence of what consumers would have done than what identically situated consumers in fact did. Before March 1, 2006, BlueHippo did not permit refunds of any kind; all payments were non-refundable. BlueHippo changed its policy and paid $3.5 million to the FTC in accordance with the consent order to compensate consumers who ordered and did not receive computers while the policy was in effect. Irrespective of the merits of that earlier policy,

14

consumer behavior while it was in effect is powerful evidence that large numbers of BlueHippo customers did not even rely on the availability of refunds.

More than 43,568 consumers ordered computers before March 1, 2006, when payments were non-refundable.[6] The script that BlueHippo used during that period disclosed that payments were non-refundable. Each consumer acknowledged during the recorded sales verification that he or she understood "that this verbal agreement is legally binding and all payments made are non-refundable." Rensin Ex. N at 6. And the shipping verification form and revolving credit account agreement that immediately followed, as well as BlueHippo's website, all made clear that payments were non-refundable. *Id*. at 12-13.[7] The volume of orders while payments were non-refundable illustrates that at a minimum, BlueHippo consumers usually did not rely on the details of the refund policy.

This conclusion follows logically from BlueHippo's business model. Consumers who ordered computers agreed to pay more than $2,000 over a one-year period to obtain computers. These consumers were highly motivated to obtain computers. They would have been exceedingly unlikely to change their purchasing decisions on the possibility, which appeared remote at the time they placed their orders, that they might have to pay taxes or shipping and

---

[6] This number of orders is reflected in the attachment to a November 8, 2007 letter from counsel for BlueHippo to the FTC, incorporated by reference in the Consent Order. See Consent Order at Section VII (A). The letter itself is Rensin Exhibit II. The attachment was not included in the exhibit, but because it is incorporated in the Consent Order, it is part of the record. A copy of the letter with the attachment is attached as Exhibit A. The letter explains that these are just the orders for which consumers did not receive computers. The record does not reflect how many additional orders were placed during this period that are not included because consumers received computers.

[7] The FTC alleged that the disclosures that payments were nonrefundable were not sufficiently "clear and conspicuous." Complaint ¶ 18. The FTC did not deny, however, that BlueHippo disclosed to consumers, before they purchased and during the recorded sales verification, that payments were nonrefundable.

4870564.21

handling after: (1) canceling the computer order, (2) obtaining a store credit, (3) visiting the online store, and (4) selecting online store merchandise that cost less than their store credits.

The Court need not reach any of these considerations. It should hold in the first instance that the FTC did not establish that BlueHippo charged shipping, handling, or taxes – certainly not with any frequency – and absent such evidence, it did not establish that the online store policy was of a kind on which reasonable prudent consumers usually relied. But alternatively, the circumstances of these transactions do not support the FTC's claim that consumers usually relied on BlueHippo's omissions. More likely, *not a single consumer* who ordered a computer would have made a different decision had these details of BlueHippo's store credit policy been included in the script.

## III.   Law of the Case does not Apply to the Question on Remand.

### A.   Law of the Case does not Apply because neither this Court nor the Court of Appeals Previously Decided the Same Issue.

The law-of-the-case doctrine has two branches, known as the mandate rule and the prior decision rule. The mandate rule requires inferior courts to follow a superior court's previous ruling on an issue in the same case. *United States* v. *Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). The prior decision rule generally requires the same court to adhere to its own decisions on an issue in subsequent stages of the same case "unless cogent and compelling reasons militate otherwise." *Id.* Both the mandate rule and the prior decision rule have limits and exceptions, some of which apply to both branches and some of which apply to only one.

Law of the case in both its forms – the mandate rule and the prior decision rule – only applies when a court has previously decided the same issue under the same standard of review. *See Quern* v. *Jordan,* 440 U.S. 332, 347 n. 18 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined."); 18B C. Wright & A. Miller,

FEDERAL PRACTICE AND PROCEDURE § 4478, at 660 (2d ed. 2002) ("decision of one issue does not ordinarily imply decision of another"); *United States* v. *Johnson*, 616 F.3d 85, 93 (2d Cir. 2010) ("application of law-of-the-case doctrine is generally inappropriate when relevant issues are governed by different standards of review").

This Court previously decided that "[i]nformation concerning cost … is presumed material," and because "the cost of shipping, handling, and taxes increases the overall cost of merchandise, these costs are material." Op. at 8. That is far different from the issue the Court of Appeals directed this Court to decide on remand: whether the omissions "were of a kind usually relied upon by reasonable prudent persons." This Court has never answered that question.

The Court of Appeals' new rule establishes a different standard for materiality in determining whether there is a presumption of reliance than the Court applied in reaching its contempt determination. The Court of Appeals recognized the difficulty of establishing that each of thousands of consumers relied upon a misrepresentation or omission, as the FTC must do absent a presumption of reliance. 762 F.3d at 244. The Court therefore permitted a presumption of reliance, but only "[o]nce the FTC makes a showing sufficient to trigger this presumption." *Id.* Because the effect of the showing is to trigger a presumption of enormous consequence – in this case, that more than 55,000 consumers relied upon an omission – and the subject of the presumption is reliance, it necessarily must be based upon a showing that is reasonably predictive of actual reliance by most people in the same or similar circumstances. That is why the Second Circuit and other appellate courts have permitted such a presumption only upon a showing that the representation or omission was of a kind "*usually relied upon*" by reasonable prudent persons. By contrast, the materiality requirement for contempt does not relieve the FTC

of the need to show reliance, and thus the showing required to establish materiality in that context has is separate from reliance.

In deciding that the store credit omissions are material for purposes of its contempt finding, this Court merely found that the omissions related to cost, and then followed another district court's suggestion that information related to cost is presumed material. The Court made no finding concerning *reliance*, and it certainly did not find that the store credit omissions were of a kind *usually relied upon* by reasonable prudent persons. The Court of Appeals made exactly this point, twice stating that "the district court's opinion and order does not reflect the application of this principle." 762 F.2d at 242; *see also id.* at 246.[8]

Because the issue now before the Court has not previously been decided either by this Court or by the Court of Appeals, neither branch of the law of the case doctrine is applicable. This Court should decide the merits of defendants' arguments set forth above. Although this analysis, without more, disposes of the law of the case concern, we address below additional reasons why neither branch of the doctrine applies.

**B.     Law of the Case does not Apply because the Court of Appeals Remanded for this Court to Decide whether the Presumption of Reliance Applies.**

The mandate rule inherently permits a district court to take action that is specifically contemplated by the appellate court's mandate. When considering the scope of the mandate, "the trial court should look to both the specific dictates of the remand order as well as the broader

---

[8] At the pre-motion conference, the court commented that the Second Circuit's remand for determination whether the FTC established the preconditions for a presumption of reliance does not necessarily mean that it believed that this Court had not already decided the issue on remand, because the Second Circuit, as an appellate court, does not like to make findings. But if the Second Circuit believed that this Court's opinion and order addressed the issue on remand, it would have had no need to make findings; it would simply have held that the necessary findings had already been made by this Court. Moreover, even accepting the Court's observation in other circumstances, in this case the Second Circuit did not merely remand for findings without elaboration; it stated, and then repeated, that this Court *had not addressed* the issue for remand. The remand requires this Court to address the issue that the appellate court found it had not previously addressed.

spirit of the mandate." *United States* v. *Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (internal quotations omitted). In this case, the Court of Appeals explicitly remanded so this Court could determine whether the presumption of reliance applies. As the Court of Appeals stated, "in light of our recognizing today a presumption of consumer reliance, the district court erred in not assessing, in the first instance, whether the FTC demonstrated the prerequisite conditions entitling it to a presumption of consumer reliance." 762 F.3d at 246. Thus, "[b]ecause the district court did not specifically address the issue in this context," the Court "remand[ed] to allow [this Court] *to determine in the first instance that the FTC has established the presumption appropriately applies on the facts of this case.*" *Id.* (emphasis added).[9]

The "spirit of the mandate" cannot be read to mean that the Court of Appeals decided that the presumption of reliance applies, expressly or impliedly. On the contrary, the Court of Appeals explicitly directed this Court to make that determination under the new three-part test it adopted. Law of the case cannot bar this Court from considering the precise issue that the Court's mandate requires it to decide: whether the presumption of reliance applies. It necessarily follows that the mandate rule does not bar this Court from reconsidering any prior conclusions that might have been affected by the Court of Appeals' new test. *See*, *e.g.*, *EEOC* v. *Joint Apprenticeship Comm.*, 186 F.3d 110 (2d Cir. 1998).[10]

---

[9] *See also id.* ("*If* the court concludes that the FTC has demonstrated the conditions necessary to establish a presumption of consumer reliance" it should go on to calculate damages according to the criteria set forth in the opinion.) *Id.* (emphasis added).

[10] In *EEOC* v. *Joint Apprenticeship Comm.*, the EEOC alleged that the Joint Accrediting Committee (JAC) of the entity that trained electrical workers unfairly discriminated against African Americans and women by imposing educational and age restrictions on eligibility. The EEOC moved for partial summary judgment on liability, and JAC defended the motion by challenging the EEOC's prima facie case. After oral argument on the motion, JAC attempted to introduce an affidavit to show business justifications for the requirements. The district court struck the affidavit and granted the EEOC's motion on liability. The Court of Appeals vacated the district court's decision and remanded "on the grounds that the district court had failed to find … that the challenged requirements had caused the statistical disparities." *Id.* at 115. On remand, the district court found causation and again entered summary judgment for the EEOC. The court refused to reconsider JAC's affidavit or other evidence of (footnote continued on next page)

4870564.21

**C.** **The Court's Prior Decision on the Materiality of Cost Cannot Support a Finding that Reasonable Prudent Persons Usually would have Relied on the Store Credit Omissions.**

For the reasons explained above, defendant's argument on remand does not require the Court to reconsider its finding that store credit omissions were "material" because they concerned "costs." That finding, based on a presumption of materiality for purposes of determining contempt, was simply not the same as the question under the legal standard newly adopted by the Second Circuit for purposes of determining whether a presumption of reliance applies: whether the FTC established that the omission of the store credit policy was a material omission of a kind on which reasonable prudent consumers usually rely. A finding that the FTC failed to meet its burden to establish the precondition for a presumption of reliance is entirely consistent with the Court's finding concerning materiality for contempt purposes. But the mandate rule does not bar the Court from revisiting findings necessary to decide the question on remand. Moreover, the prior decision rule is always discretionary, and courts often depart from the rule to prevent injustice or for other reasons. *E.g.*, *Dictograph Prods. Co.* v. *Sonotone Corp.*, 230 F.2d 131, 135-36 (2d Cir. 1955) (Hand, J.). If the Court concludes that its finding of materiality for contempt purposes constrains its determination of the question that the appellate court required to decide the issue on remand, it can reconsider that finding. There is ample reason for the Court to reach a different conclusion.

---

(footnote continued from preceding page)

business justification. *Id.* On a second appeal, the Court of Appeals concluded that the district court erred in not allowing JAC to present any evidence of business justification on remand. "We reach this conclusion not because we believe that the district court abused its discretion in striking JAC's late-filed affidavit. Rather, we conclude that this court's somewhat ambiguous [earlier] opinion was intended to have the effect of re-opening the business justification inquiry." *Id.* at 116. In this case, there is no such ambiguity; the Court of Appeals remanded for this Court to determine, in the first instance, whether the FTC could meet the new three-prong test for applicability of a presumption of reliance, authorizing, and indeed commanding, this Court to weigh the record evidence against this new test. This Court's prior finding of "materiality" was not made under the new standard, and in any event it must yield to the opinion of the Court of Appeals.

4870564.21

As a legal matter, the Court's finding was based on the district court decision in *FTC* v. *Crescent Pub'g Co.*, 129 F. Supp. 2d 311, 321 (S.D.N.Y. 2001). The facts in *Crescent Publishing* are far afield from the store credit omissions now at issue in this case. In *Crescent Publishing*, the defendants operated pornography web sites that offered visitors "free tours" of the site and promised visitors that their credit card numbers, which were ostensibly required to verify the visitors' age, would not be billed during the tour. In fact, the defendants began billing the credit cards after the visitors clicked through various explicit pages touting the site's "FREE" services, with one page inconspicuously and ambiguously suggesting that further clicks would incur charges. *See id.* at 314-15, 321. "Defendants appear to have done their level best, at least prior to September 20, to lead users to believe that their credit cards would not be charged for exploring these web sites." *Id.* at 321. In that context, the district court commented that "[i]nformation concerning prices or charges for goods or services is material, as it is 'likely to affect a consumer's choice of or conduct regarding a product.'" *Id.*

Nothing in *Crescent Publishing* establishes a general rule that all information about cost or pricing is material; the materiality of cost information turns on the facts of individual cases, and the facts were egregious in *Crescent Publishing*. And even if *Crescent Publishing* has any general application, it concerns the cost of the item a consumer is purchasing, not of goods or services a consumer might purchase if he cancels the original purchase and obtains store credit, or exchanges the purchased product. Unlike in *Crescent Publishing*, in which consumers were charged for online pornography that defendants had represented was free, in this case the omission at issue did not concern the cost of the computers that consumers were ordering. The cost it affected – if it affected cost at all – was of online store merchandise. A consumer is less likely to rely upon the cost of merchandise that *may* be purchased with a store credit *if* the

21

consumer cancels the initial purchase than the cost of the item he is purchasing. Indeed, consumers did not even know the cost of items they might purchase with store credits – nor, for that matter, did they even know which items they would choose.[11]

In addition, the factual underpinning of the Court's prior decision lacked an evidentiary basis. The Court's finding was based on its acceptance of the FTC's assumption that tax and shipping and handling were charged on every online store transaction. *See* Op. at 8 ("in advance of fulfilling their store credit orders, consumers had to send BlueHippo additional money to cover shipping, handling, and taxes for online purchases."). In fact, the store credit policy simply does not state that shipping, handling, and taxes were charged on every, or some, or any online store transaction, the FTC offered no evidence of such charges, and the evidence elicited by Mr. Rensin disproves the FTC's assumption. *See supra* Part II.

Thus, even if this Court's materiality finding concerned the same issue presented on remand, the mandate of the Court of Appeals would permit the Court to revisit that issue, and there would be good reason to do so. But it is abundantly clear that the issue the Court decided and the one now before it are not the same. The Court of Appeals furnished a new standard of materiality – or supplemented the requirement of materiality – for purposes of determining the applicability of a presumption of reliance. The Court of Appeals' test (the defendant must have "made material misrepresentations or omissions that were of a kind usually relied upon by reasonable prudent persons") could be read to add a requirement – the omissions must be both "material" and "of a kind usually relied upon by reasonable prudent persons" – or to modify and

---

[11] Moreover, in *Crescent Publishing*, the defendants misrepresented that a service had no cost and then charged the consumer $50/month, in some cases continuing such charges notwithstanding the consumer's attempts to discontinue the monthly charges. In that respect as well, *Crescent Publishing* is far more egregious than this case, in which the omission not only did not concern the cost of the computer, but even as to the online store item it concerned the permissible method of payment for a collateral charge – whether it was payable with a store credit or only with cash.

explain the former phrase with the latter in this context. Under either interpretation, this Court must determine based on the record evidence that the FTC satisfied its burden to show that the store-credit omissions were of a kind (1) usually (i.e., not casually or occasionally or intermittently) (2) relied upon (i.e., affected the choice to purchase a computer) (3) by reasonable prudent persons (i.e., a hypothetical typical BlueHippo customer deciding whether to agree to enter into a layaway contract to purchase a computer).

This Court has not previously made the determination that the Court of Appeals instructed it to make on remand, and even if it had, the Court of Appeals' decision requires it to reconsider the decision under the new test.

### D.  Defendant did not Waive the Right to Challenge the Materiality Findings on Remand by Declining to Appeal from the Store Credit Findings.

The fact that Mr. Rensin did not appeal this Court's prior finding on materiality does not make that finding unreviewable on remand. Even if a party has not appealed an issue, "on remand a trial court may reopen an issue despite a party's failure to raise the issue on appeal, if 'the mandate can *reasonably be understood* as permitting it to do so.'" *Oneida Indian Nation* v. *County of Oneida*, 214 F.R.D. 83, 94 (N.D.N.Y. 2003) (quoting *Ben Zvi*, 242 F.3d at 95). Given the Court of Appeals' unequivocal statements that this Court must determine the applicability of the presumption of reliance in the first instance, the mandate can reasonably be understood not only as permitting the Court to revisit its prior finding on materiality, but requiring it to do so, if necessary to determine whether the FTC established its burden.

Moreover, courts will not find a waiver of an issue on appeal if the party did not have "*both* an *opportunity and* an *incentive* to raise it … on appeal." *Oneida Indian Nation*, 214 F.R.D. at 94 (quoting *United States* v. *Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)). Because this Court did not award any damages for the store credit omissions, it is doubtful that Mr.

Rensin had an opportunity to appeal the findings that underlay that theory. Parties appeal from judgments or orders, not from findings fact. "As a general rule, a party may not appeal from a favorable judgment simply to obtain review of findings it deems erroneous." *E.g.*, *Mathias* v. *WorldCom Techs.*, 535 U.S. 682, 684 (2002). There was a single judgment finding Mr. Rensin in contempt and awarding $609,856.38 in compensatory relief. Mr. Rensin could have appealed from the judgment if he challenged the $609,856 in compensatory relief, or if he challenged the contempt finding. But he accepted both, and could not have pursued an appeal while accepting that he was in contempt and that the compensatory damages were as set forth in the judgment. The only basis for an appeal would have been "to obtain review of findings [he] deems erroneous." *Id.* Such an appeal is not permitted.

And even if Mr. Rensin had been able to appeal the contempt finding for the store credit omissions without appealing the judgment of contempt or the sanction, his failure to do so did not waive the right to challenge the Court's materiality finding because he had no incentive to appeal. An appeal would have challenged either a monetary award that was roughly four percent of what the FTC sought, or a finding of fact that had no bearing on the contempt judgment or the monetary relief. *Compare Oneida Indian Nation*, 214 F.R.D at 94 (party had little incentive to raise prejudgment interest on appeal when liability was still uncertain); *Quintieri*, 306 F.3d at 1229-30 ("if a sentencing determination had no practical effect on a defendant's sentence at the original sentencing but became relevant only after appellate review, a defendant is free to challenge that sentencing determination on remand, and ultimately on reappeal, despite the failure to challenge that determination initially"). Accordingly, the mandate rule cannot bar Mr. Rensin from challenging the Court's prior finding on materiality.

4870564.21

**E.      The Prior Decision Rule also does not Apply because the Court of Appeals' New Test Constitutes an Intervening Change in the Law.**

The prior decision rule does not apply when there has been an "intervening change of controlling law." *Doe* v. *New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). The Court of Appeals' decision in this case obviously constitutes such a change. The Court of Appeals recognized that the FTC could benefit from a presumption of reliance in enforcement actions, but only if the FTC met the requirements of a new, three-part standard. The decision made new law in this Circuit.  *See* 762 F.3d at 242 ("We… *join our sister circuits* in holding today that the FTC is entitled, when the proper showing has been made, to a presumption of consumer reliance.") (emphasis added). This new standard constitutes an intervening change of the law, and accordingly the prior decision rule is no bar to reconsideration the Court's prior decision on the effect of the store-credit omissions on BlueHippo customers.

**IV.     Conclusion**

For the reasons stated, the Court should hold that the FTC is not entitled to a presumption of reliance in this case and re-enter judgment for the FTC.

Dated:          April 10, 2015                    Respectfully submitted,


                                                  __/s/ *Martin S. Himeles, Jr.*_____
                                                  Martin S. Himeles, Jr.
                                                  John J. Connolly
                                                  ZUCKERMAN SPAEDER LLP
                                                  100 E. Pratt Street, Suite 2440
                                                  Baltimore, MD  21202
                                                  (410) 332 0444 (telephone)
                                                  (410) 659 0436 (facsimile)
                                                  mhimeles@zuckerman.com
                                                  jconnolly@zuckerman.com

25

4870564.21