UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

FEDERAL TRADE COMMISSION,

        *Plaintiff,*

   -against-

BLUEHIPPO FUNDING, LLC, et al.,

        *Defendants.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-6-15

08 Civ. 1819 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

On July 27, 2010, the Court issued an order granting in part Plaintiff Federal Trade Commission's ("FTC") motion for contempt related to violations of a Stipulated Final Judgment and Order of Permanent Injunction (the "Consent Order") by Defendants BlueHippo Funding, LLC and BlueHippo Capital, LLC (collectively "BlueHippo") and Joseph K. Rensin, BlueHippo's CEO. The FTC appealed the damages portion of that order as to material omissions regarding BlueHippo's store credit and refund policy. On August 14, 2014, the United States Court of Appeals for the Second Circuit vacated the damages portion of the order and remanded to this Court to determine if a presumption of consumer reliance applies to the facts of the case and for reconsideration of damages. The Court now holds that the presumption applies.

## BACKGROUND

The Court assumes familiarity with the underlying facts and procedural history, in particular this Court's July 27, 2010 Order and the Second Circuit's Mandate & Opinion. *See* Dkt. 76; *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238 (2d Cir. 2014). The following

1

recitation of relevant facts is drawn from those documents.

BlueHippo was an installment credit company that marketed computers and other electronic products to credit-challenged consumers. Under BlueHippo's installment credit financing plan, BlueHippo sent installment credit agreements to consumers who made an initial down payment followed by thirteen additional payments. BlueHippo would then send a computer to those consumers who successfully made the series of payments, which served as partial satisfaction of the full price of the computer. The consumer would then be enrolled in BlueHippo's financing plan to pay the remaining balance.

In 2006, BlueHippo instituted the store credit and refund policy at issue. As implemented, BlueHippo informed consumers at the time of their initial payment that they could request a refund within seven days of the payment. After seven days, BlueHippo would not issue a refund; instead, consumers would receive store credits that they could use to buy merchandise in BlueHippo's online store. But BlueHippo did not inform consumers at the time of their initial payment that store credits could not be applied to any applicable shipping and handling fees or taxes. Consumers were informed of those details only when they attempted to make a purchase in the online store.

In February 2008, the FTC initiated this action alleging that BlueHippo, in its advertising, sales pitches, and representations to consumers, had engaged in persistent practices of deception since 2003 in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1). The FTC sought permanent injunctive relief and disgorgement of the proceeds BlueHippo had obtained through those allegedly deceptive practices. In April 2008, the parties resolved the suit through entry of the Consent Order.

In November 2009, based on compliance materials BlueHippo had provided to the FTC,

2

the FTC moved to hold BlueHippo and Rensin in civil contempt for violation of the Consent Order. Among other claims, the FTC alleged that BlueHippo had violated the part of the Consent Order enjoining it from making representations about its "refund, cancellation, exchange, or repurchase policy without disclosing clearly and conspicuously, prior to receiving any payment from customers all material terms and conditions of any refund, cancellation, exchange, or repurchase policy." Consent Order at 4. The FTC sought $14,062,627.51 in damages, which represented the losses of the 55,892 customers that had made at least one payment in the relevant time period, but had received neither a computer nor store merchandise.

On July 27, 2010, this Court held BlueHippo in contempt and found that Rensin was jointly and severally liable for any damages.[1] *See* Dkt. 76. As relevant here, the Court found that BlueHippo had violated the Consent Order by failing to disclose to consumers that store credits could not be used to pay for shipping and handling fees and taxes for online orders. *Id.* at 8. Specifically, the Court held: "Information concerning cost [] is presumed material. Since the cost of shipping, handling, and taxes increases the overall cost of merchandise, these costs are material and BlueHippo should have clearly and conspicuously disclosed this information to consumers." *Id.* (internal citations omitted). The Court awarded $609,856.38 in damages, which represented the losses of the 677 consumers who had made all of the requisite installment payments to qualify for BlueHippo's financing plan but had received neither a computer nor store credit. *Id.* at 10. The Court wrote that "[f]or BlueHippo's remaining violations [including the store credit policy], however, the FTC has conceded that it has failed to provide record evidence approximating the damage to consumers." *Id.* at 10-11. The FTC appealed the

---

[1] On November 23, 2009, BlueHippo filed for Chapter 11 bankruptcy relief. *See* Dkt. 69. Through its trustee, BlueHippo declined to participate in the contempt proceedings, the subsequent appeal before the Second Circuit, and the present proceedings on remand.

damages portion of the Order.

On August 14, 2014, the Second Circuit issued its Mandate & Opinion. As an initial matter, the Second Circuit noted that "BlueHippo, as the district court found and the defendants do not dispute, violated the Consent Order" by failing to disclose material details about its store credit policy. *BlueHippo*, 762 F.3d at 246. Consumer injury "occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions." *Id.* at 244. The court emphasized that information about the shipping and handling fees and taxes, "if it had been revealed to consumers before they purchased computers from BlueHippo, in all likelihood would have influenced their purchasing decisions." *Id.* at 246.

The Second Circuit vacated the order as to damages and remanded to this Court for a determination of whether the FTC is entitled to a presumption of consumer reliance in the calculation of damages. *Id.* at 242, 246. Recognizing the "inherent difficulty of demonstrating individual harm," the Second Circuit wrote that "[p]ermitting a presumption of reliance in FTC claims for contempt damages would thus further the Commission's statutory purpose to protect consumers." *Id.* at 244. The court held that "the FTC is entitled to a presumption of consumer reliance upon showing that (1) the defendant made material misrepresentations or omissions that were of a kind usually relied upon by reasonable prudent persons; (2) the misrepresentations or omissions were widely disseminated; and (3) consumers actually purchased the defendants' products." *Id.* (internal quotation marks omitted). If the FTC is entitled to the presumption, then the court held that "the calculation of the appropriate measure of loss begins with the defendants' gross receipts derived from [the material misrepresentations]." *Id.* at 245. Defendants can rebut the gross receipts baseline by "put[ing] forth evidence showing that certain amounts should offset the sanctions assessed against them." *Id.* (internal quotation marks omitted).

4

## DISCUSSION

On remand, the FTC and Rensin dispute the meaning of the Second Circuit's opinion and whether the FTC is entitled to a presumption of consumer reliance. Rensin concedes that the second and third elements of the test are met (wide dissemination of misrepresentations or omissions; and actual purchasing), arguing only that the FTC has not met its burden on the first element (misrepresentations or omissions of the kind usually relied upon by reasonable prudent persons). Transcript of Proceedings, June 19, 2015 ("Tr."), Dkt. 100, at 3-4 (The Court: "I take it you don't quarrel with two and three . . . ." Counsel: "That's right."). Rensin also apparently does not dispute the Court's initial finding that BlueHippo's omissions regarding shipping and handling fees and taxes were material. *Id.* at 4 (Counsel: "We are not asking the Court to find, to reject the finding of materiality . . . .").[2]

Rather, Rensin argues only that the FTC failed to establish that those material omissions "were of a kind usually relief upon by reasonable prudent persons." *See* Rensin Mem., Dkt. 95 at 5-16. He contends that the FTC must (and did not) establish that BlueHippo actually charged shipping, handling, or taxes to a significant number of consumers. *Id.* at 5-12. Absent that showing, Rensin asserts, the FTC has not shown that the omissions were "of a kind usually relied upon," and so it is not entitled to a presumption of consumer reliance. *Id.* at 13-16.

The FTC responds that it has fully satisfied the first element, and that the Court already found as such in its initial order. FTC Mem., Dkt. 96 at 5-11. The FTC argues that the

---

[2] We agree with Rensin that he did not waive the right to challenge the materiality findings on remand by declining to raise the issue before the Second Circuit. *See* Rensin Mem. at 23-24. Since the Court did not award damages based on the store credit policy omissions, Rensin did not have an incentive to—and perhaps could not—raise the materiality issue on appeal. *See United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) ("An issue is not considered waived [] if a party did not, at the time of the purported waiver, have both an opportunity and an incentive to raise it."); *Mathias v. WorldCom Tech., Inc.*, 535 U.S. 682, 684 (2002) (per curiam) ("As a general rule, a party may not appeal from a favorable judgment simply to obtain review of findings it deems erroneous.").

frequency with which BlueHippo actually charged for shipping, handling, or taxes is irrelevant because, as the Second Circuit held, the injury to the consumer (and thus BlueHippo's violation) occurs at the moment the consumer makes his or her initial payment. *Id.* at 11-15. As such, the FTC contends that it is entitled to a presumption of consumer reliance and baseline damages of BlueHippo's gross receipts of $14,062,627.51.

The Court holds that the FTC has met its burden and is entitled to a presumption of consumer reliance. We are unconvinced by Rensin's attempted distinction between whether, on the one hand, the omissions were "material" and, on the other hand, the omissions were "of a kind usually relied upon by reasonable prudent persons." The Consent Order defines "material" as "likely to affect a person's choice of, or conduct regarding, goods or services." Consent Order at 3. That definition mirrors the widely accepted definition as used in the context of deceptive business practices. *See In re Thompson Medical Co., Inc.*, 104 F.T.C. 648, 816 (1984), *aff'd* 791 F.2d 189 (D.C. Cir. 1986) ("A 'material' misrepresentation or practice is one that is likely to affect a consumer's choice of or conduct regarding a product").

Assuming it is theoretically possible for an omission to be "material," but not be "of a kind usually relied upon by reasonable prudent persons," that is not the case here. Rensin argues that to satisfy the latter, the FTC must introduce evidence that BlueHippo actually charged shipping, handling, or taxes to consumers seeking to make online purchases with store credits. *See* Rensin Mem. at 5-9. He also argues that the omission here was less likely to be relied upon because "[a] consumer is less likely to rely upon the cost of merchandise that *may* be purchased with a store credit *if* the consumer cancels the initial purchase than the cost of the item he is purchasing." *Id.* at 21-22.

Those arguments mischaracterize the nature of the injury at issue. As the Second Circuit

confirmed, "[t]he injury to a consumer occurs at the instant of a seller's misrepresentations, which taint the consumer's subsequent purchasing decisions." Dkt. 97, at 8. The injury here arose from the fact that BlueHippo led financially strapped consumers to believe, when they made their initial payment, that they were making an essentially risk-free payment—either they would eventually make adequate payments to receive a computer or, if not, they could apply their payments towards purchases from the online store. BlueHippo's misrepresentation was misleading because the payment was not actually risk-free; there was a possibility that consumers would have to make additional payments in the form of shipping, handling, or taxes if they sought to utilize the online store option. A reasonably prudent consumer would rely on the representation that their payments were risk-free, so knowing that they might incur additional fees later—even if they were not ultimately charged those fees—would affect a consumer's decision to begin making payments in the first place.

Even if few or no consumers actually paid shipping, handling or taxes (as Rensin claims), that says nothing about whether those fees, when eventually disclosed, deterred cash-strapped consumers from making online purchases at all. Indeed, the FTC introduced evidence of exactly that occurring. *See* FTC Mem. at 14 n.13. The Second Circuit also reached this conclusion when it wrote that "[t]his information, if it had been revealed to consumers before they purchased computers from BlueHippo, in all likelihood would have influenced their purchasing decisions." *BlueHippo*, 762 F.3d at 246. The Court holds that Defendants "made material misrepresentations or omissions that were of a kind usually relied upon by reasonable prudent persons." Since the second and third elements are uncontested, the FTC is entitled to a presumption of consumer reliance.

The next step is to determine whether Defendants are entitled to any offsets in damages

from the gross receipts baseline of $14,062,627.51. *Id.* At oral argument, counsel for the FTC recommended permitting Defendants to make a proffer of the evidence they intend to put forward to show any offset. *See* Tr. at 23. That proffer would allow the FTC to file any motions *in limine* and allow the Court to determine the proper scope of any further discovery. The Court adopts that procedure and directs Defendants to proffer the evidence, if any, they intend to put forward showing offsets of damages against them.

## CONCLUSION

The Court holds that the FTC has established that it is entitled to a presumption of consumer reliance. Defendants are directed to proffer the evidence they intend to offer, if any, to offset the compensatory baseline of gross receipts.

Dated: New York, New York  
November 5, 2015

SO ORDERED

*[signature]*

PAUL A. CROTTY  
United States District Judge

8