## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,
      Plaintiff,

v.

BLUEHIPPO FUNDING, LLC,

    and

BLUEHIPPO CAPITAL, LLC,
      Defendants.

Civil No. 08 CV 1819 (PAC)

## PLAINTIFF FEDERAL TRADE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SHOW CAUSE WHY DEFENDANT JOSEPH RENSIN SHOULD NOT BE HELD IN CONTEMPT AND COERCIVELY INCARCERATED FOR HIS FAILURE TO PAY

## I.   INTRODUCTION

On April 19, 2016, this Court ordered Contempt Defendant Joseph Rensin to pay $13,400,627.60 to redress the injuries caused by his failure to disclose the material terms of BlueHippo's refund policy to over 55,000 consumers who ordered computers from the company. *See* ECF 139. Rensin has not paid a single cent in satisfaction of that order – despite having significant assets, including a million-dollar home and approximately $2 million in annuities that he uses to fund a lavish lifestyle. Rensin's failure to pay constitutes an unequivocal contempt of the April 19 Order. Given both his complete refusal to comply with this Court's order and his efforts to place assets out of the reach of the FTC, incarceration is the only contempt sanction that will coerce Rensin's compliance with the April 19 Order. Accordingly, the FTC respectfully requests that the Court hold Rensin in contempt and order him incarcerated until he exhausts all assets held in his name or for his benefit to satisfy the order to pay.

1

## II.       RENSIN HAS VIOLATED THE APRIL 19, 2016 ORDER TO PAY.

In the Second Circuit, a party seeking a contempt finding must show two things.  First, it must show that the court entered a clear and unambiguous order.  *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).  Second, it must show by clear and convincing evidence that "the order was not complied with."  *Id.*  Here, there is no question that the FTC meets both elements, and Rensin is in contempt of the Court's April 19, 2016 order ("April 19 Order").

The April 19 Order is clear and unambiguous.  Specifically, the Court ordered that Rensin pay $8 million within seven days of entry of the order and secure the remaining balance within 30 days of entry of the Order.  ECF 139 at 6-8 (Section I.B).  If Rensin failed to meet either condition, the Court ordered that he is required to pay the entire $13,400,627.60.  *Id.* at 8 (Section I.C) ("Should Defendant fail to satisfy the conditions set forth in either Section I.B.1 or Section I.B.2, ***he is ordered to immediately pay*** the full amount of the judgment ($13,400,627.60) . . . .") (emphasis added).

Rensin has not complied with the order because has failed to pay the required amount or any portion of it.  To date, the FTC has received no payments from Rensin.  *See* ECF 141-1 at 3-4 (notifying Rensin of failure to satisfy conditions of judgment).  Accordingly, Rensin is in contempt of the April 19 Order.

## III.      RENSIN CANNOT DEMONSTRATE AN INABILITY TO COMPLY WITH THE ORDER TO PAY.

Once contempt has been demonstrated, the burden shifts to defendant to show a "complete inability, due to ***poverty*** or ***insolvency***, to comply with an order to pay court-imposed monetary sanctions."  *Huber*, 51 F.3d at 10 (emphasis added).  This burden is a steep one, as the alleged contemnor must "establish his inability, clearly, plainly, and unmistakably."  *Id.*; *Sec. & Exch. Comm'n v. Universal Exp., Inc.*, 546 F. Supp. 2d 132, 135 (S.D.N.Y. 2008) (holding that a

2

party "must demonstrate his inability categorically and in detail") (citations omitted). Rensin cannot meet this heavy burden because he is neither impoverished nor insolvent, nor does he have a complete inability to pay.

Rensin, by his own admission, has significant assets. Specifically, he controls approximately $2 million in two offshore annuities. *See* Ex. 1 at 8. The first, which Rensin's attorneys valued at $1.7 million, *see id.*, was acquired on October 14, 2015 – just two weeks prior to this Court's decision setting the compensatory baseline at $14 million. *Compare* Ex. 2 at 1 *with* ECF 107. Each month, Rensin draws a minimum of $15,000 from that annuity. *See* Ex. 2 at 3-4 (RENSIN Subp DT - 000986 (identifying "Joseph Rensin" as the "Annuitant"), RENSIN Subp DT -000987 ("The annuity shall pay on the Annuity Starting Date a minimum amount of $15,000 per month.")); Ex. 3 (wire transfer for $15,000 to Beneficiary "Joseph K. Rensin" identified as "1May16 Annuity Payment for Advantage Life And Annuity Company"); Ex. 4. The second annuity, which Rensin started shortly ***after*** the Court's compensatory baseline ruling, has an approximate value of $300,000. *See* Ex. 5 at 6 (RENSIN Subp DT – 001004 (identifying Rensin as the "Annuitant" and an "Issue Date" of "31-Dec-2015")); Ex. 1 at 8.

In addition, Rensin owns a home in Florida worth approximately $1 million dollars. Rensin purchased that property on September 29, 2014 – less than six weeks after the Second Circuit determined that this case should be remanded for consideration of whether the presumption of reliance applied – for a purchase price of $940,000. *See* Ex. 6 at 1 (RENSIN Sub DT – 001245). Rensin admits that there is no mortgage on this property. Ex. 1 at 3-4. The home currently has a current estimated value of over $1 million. *See* Ex. 7 (Zillow estimate); Ex. 8 (Homes.com estimate); Ex. 9 at 34.

That the value of these assets is less than the full judgment amount has no relevance to the Court's evaluation of any claimed inability on Rensin's part.  When, as here, there is an order to pay a sum certain, "a mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt . . . .  [T]he party must pay what he or she can."  *Sec. & Exch. Comm'n v. Musella*, 818 F. Supp. 600, 602 (S.D.N.Y. 1993); *Sec. & Exch. Comm'n v. Zubkis*, 2003 WL 22118978, at *4 (S.D.N.Y. Sept. 11, 2003) (holding that "inability to pay is a defense only when it is ***impossible for the contemnor to pay any portion*** of the ordered disgorgement") (emphasis added).

To the extent that Rensin claims that these properties are exempt from execution, garnishment, or levy pursuant to various Florida statutory provisions, *see* Ex. 1 at 3, such claims are irrelevant to his ability to pay.[1]  The law is clear that as long as Rensin "has ***any*** assets that can be used" to satisfy the order to pay, he "is in continuing contempt of this [c]ourt's order." *Zubkis*, 2003 WL 22118978, at *4 (emphasis added); *see also Musella*, 818 F. Supp. at 602. That the FTC may not be able to reach the assets through process does not create an inability to pay on Rensin's part.  *See Sec. & Exch. Comm'n v. Aragon Capital Advisors, LLC*, 2011 WL 3278907, at * 7 (S.D.N.Y. July 26, 2011) (holding that state law exemptions have "no bearing" on a party's obligations to pay a sum certain); *Musella*, 818 F. Supp. at 602 (holding that "the extent to which [the defendant's] assets and income would be exempt from attachment under [state] law does not alter his duty to pay the amount he owes under the order") (citing *Badgley v. Santacroce*, 800 F.2d 33, 37-38 (2d Cir. 1986)).  Thus, Rensin cannot meet the standard for

---

[1]  It is clear that Rensin's assertions of exemption are, in at least some cases, overbroad.  For example, Rensin claims that a bank account held at Palm Beach Community (ending in -0536) is an "Annuity" that is "exempt from execution, garnishment, or levy pursuant to F.S. § 222.21."  *See* Ex. 1 at 2.  However, the account opening documents for the -0536 account reveal that it is not an annuity at all, but rather a simple "Senior Checking Plus" account.  *See* Ex. 10 at 1.

inability to comply as long as he holds assets that may be liquidated to pay the April 19 Order.

*See Aragon Capital Advisors*, 2011 WL 3278907, at *9; *Zubkis*, 2003 WL 22118978, at *4.

## IV.     COERCIVE INCARCERATION IS THE NECESSARY AND APPROPRIATE CONTEMPT SANCTION.

The Court may impose contempt sanctions for either or both of two purposes:  1) to coerce the defendant into compliance with a court order; and 2) to compensate the complainant for losses sustained.  *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947); *see also Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).  Here, coercive sanctions are necessary to compel Rensin's compliance with the April 19 Order before he can further dissipate funds that rightfully belong to the consumers injured by his previous order violations.

In fashioning an appropriate coercive sanction, courts should consider three factors:

> 1) the character and magnitude of the harm threatened by the continued contumacy, 2) the probable effectiveness of the sanction in bringing about compliance, and 3) the contemnor's financial resources and the consequent seriousness of the sanction's burden.

*Weston Capital Advisors, Inc. v. PT Bank Mutiara, TKB*, 2015 WL 5246984, at *5 (S.D.N.Y. Sept. 8, 2015).  Courts have recognized that incarceration is an appropriate coercive sanction where, as here, a defendant fails to pay a multi-million dollar disgorgement order.  *See, e.g., Universal Exp., Inc.*, 546 F. Supp. 2d at 142 ("Imposing escalating fines on a defendant who has brazenly refused to pay an already large judgment would be an empty gesture."); *Sec. & Exch. Comm'n v. Durante*, 2013 WL 6800226, at *14 (Dec. 19, 2013) (holding that, under such circumstances, imposing coercive fines as a lesser sanction "is an exercise in futility"); *Sec. & Exch. Comm'n v. Bremont*, 2003 WL 21398932, at *6-7 (S.D.N.Y. June 18, 2003) (same); *Sec.*

*& Exch. Comm'n v. Margolin*, 1996 WL 447996, at *5 (S.D.N.Y. Aug. 8, 1996) (finding that "failure to comply with the final judgment is a harm of substantial magnitude").

Given Rensin's failure to pay anything towards the judgment despite having significant assets at his disposal, a daily monetary fine will not be sufficient to coerce his compliance with the April 19 Order. Moreover, the specter of this Court's judgment has done nothing to curtail Rensin's lavish lifestyle. Since the Court set the compensatory baseline at $14 million on November 6, 2015, Rensin has continued to spend money at an exorbitant rate. For example, on November 16, 2015, ten days after the Court placed Rensin on notice that a $14 million judgment was possible, he leased a 2016 Lexus valued at $47,879.02, placing $3,280 down and carrying payments of $517.70 a month. *See* Ex. 1 at 6-7; Ex. 11 (check for down payment). Similarly, between November 2015 and September 2016, Rensin charged between $5,983.99 and $21,949.15 **per month** on one of his credit card accounts. *See* Ex. 12.[2] Indeed, on April 18, 2016, just one day prior to the Court's entry of its contempt judgment, Rensin prepaid $20,000 on that credit card, lest any collection efforts by the FTC put a crimp in his exorbitant lifestyle.[3] *Id.* at 28; *see also Universal Exp.*, 546 F. Supp. 2d at 138 (noting that "profligate spending does not shield one from a judgment of contempt").

Moreover, significant evidence demonstrates that since the Second Circuit's August 12, 2014, decision remanding the case, Rensin has made a concerted effort to place his assets out of the reach of the FTC and beyond this Court's powers. Tellingly, Rensin either retained or consulted with several law firms that specialized in asset protection. For instance, on August 19, 2014, one week after the Second Circuit's decision, Rensin paid a $25,000 retainer to the Jeffrey

---

[2] Due to their volume, the FTC has included only the relevant portions of Rensin's credit card statements. Full copies have been furnished to Rensin's counsel and will be submitted to the Court as part of any evidentiary hearing.

[3] In the months following entry of the April 19 Order, Rensin spent the following on his Barclaycard alone: $10,562.67 (April 27, 2016 – May 26, 2016); $10,727.98 (May 27, 2016 – June 26, 2016); $7,385.22 (June 27, 2016 – July 26, 2016); and $12,727.47 (July 27, 2016 – August 26, 2016). *See* Ex. 12 at 1-4.

Verdon Law Group, a firm that specializes in both foreign and domestic asset protection vehicles. *See* Ex. 13; Ex. 14.

Similarly, on August 18, 2014, Rensin paid $750 to Alper Law, a firm that claims its primary services are "asset protection planning and collection defense." *See* Ex. 15 at 1; Ex. 12 at 28. The Alper Law website features a page on "Florida Asset Protection," which contains the following advice: "People anticipating substantial civil judgments often move from other states to Florida to become a Florida resident for asset protection purposes." *See* Ex. 16 at 1; *see also id.* at 2 ("The most important and well-known Florida protection is the homestead exemption of real property.").[4] Notably, on August 23, 2014, five days after he first consulted with Alper Law, Rensin flew to Florida, *see* Ex. 12 at 28, and approximately a month later had purchased his million-dollar, mortgage-free Florida residence, *see* Ex. 6.

In addition to his efforts to utilize various asset protection maneuvers, Rensin also has taken steps to keep his liquid assets beyond the reach of the FTC and the Court. Specifically, on April 6, 2016, the day of the telephonic hearing where the Court outlined its judgment, Rensin withdrew $42,406.40 from his primary bank account at Wells Fargo, virtually emptying the account in the process. *See* Ex. 17; Ex. 18. He used those funds to open a new account at Palm Beach Community Bank on that same day. *See* Ex. 19. He maintained that account until August 23, 2016, just four days after his attorneys disclosed its existence to the FTC in discovery responses. *Compare* Ex. 20 at 5 *with* Ex. 1 at 2. At that point, he withdrew $20,000, leaving the account with a balance of less than $1,000. *See* Ex. 20 at 4. It appears that Rensin is engaging in a shell game using various bank accounts to evade any collections efforts that the FTC may take.

Taken together, these facts demonstrate Rensin's utter contempt of the April 19, 2016 order and clearly show that coercive incarceration is the only sanction likely to coerce his

---

[4] Rensin consulted with Alper Law a second time on August 21, 2014. Ex. 12 at 28.

compliance.  *See, e.g., Bremont*, 2003 WL 21398932, at *6-7 (finding that where defendant consciously took steps to voluntarily place assets beyond reach of SEC and court, incarceration was warranted).  Accordingly, the FTC respectfully requests that the Court order Rensin to be incarcerated until he:  1) liquidates all available assets, 2) pays those proceeds to the FTC, and 3) categorically and in detail demonstrates that any further payment is impossible.

V.      **EXPEDITED CONSIDERATION IS NECESSARY TO PREVENT THE FURTHER DISSIPATION OF ASSETS.**

        Expedited consideration is necessary.  During the pendency of the remand, Rensin has dissipated significant assets both through various asset protection techniques and by living a lavish lifestyle.  As a result, time is of the essence in imposing an appropriate sanction to force Rensin's compliance to prevent consumers from being irrevocably harmed by Rensin's further dissipation of assets.  *See* ECF 131 at 11.


Dated: November 15, 2016                    Respectfully submitted,


                                            *Amanda C. Basta*
                                            AMANDA C. BASTA
                                            abasta@ftc.gov
                                            COLIN D. A. MACDONALD
                                            cmacdonald@ftc.gov
                                            FEDERAL TRADE COMMISSION
                                            600 Pennsylvania Avenue, N.W.
                                            Mailstop CC-9528
                                            Washington, DC  20580
                                            Tel.:   (202) 326-2340  (Basta)
                                                    (202) 326-3192  (MacDonald)

                                            *Counsel for Federal Trade Commission*

**Certificate of Service**

I, Amanda C. Basta, hereby certify that on November 15, 2016, I caused a true and correct copy of Plaintiff Federal Trade Commission's Memorandum of Law in Support of Motion to Show Cause Why Joseph Rensin Should Not Be Held in Contempt and Coercively Incarcerated for His Failure to Pay to be served on the following counsel via email and Federal Express:

Joseph A. DiRuzzo, III (jdiruzzo@fuerstlaw.com)
Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive
32nd Floor
Miami, FL 33131


AMANDA C. BASTA