```
┌─────────────────────────────┐
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____          │
│ DATE FILED:  3-28-2017      │
└─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

FEDERAL TRADE COMMISSION,

           *Plaintiff*,

    -*against*-

BLUEHIPPO FUNDING, LLC,

    *and*

BLUEHIPPO CAPITAL, LLC,

           *Defendants*.

-------------------------------------------------------------X

08 Civ. 1819 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff, the Federal Trade Commission (the "FTC" or "Commission"), seeks an order

holding Defendant Joseph K. Rensin ("Rensin" or "Defendant") in contempt for failure to

comply with a final judgment (ECF 138, April 19, 2016) imposing compensatory contempt

sanctions in the amount of $13,400,627.60; and an order determining that coercive incarceration

is the appropriate sanction, but that order is to be stayed pending resolution of Rensin's

bankruptcy proceedings.[1]  ECF 146; ECF 165; ECF 170.

The Court held an evidentiary hearing on the issues on January 4, 2017 and set a schedule

for post-hearing briefing.  ECF 154 at 187.  Two days before his post-hearing briefing was due

on February 17, 2017, Rensin filed a Chapter 7 Bankruptcy petition in the U.S. Bankruptcy

---

[1] The FTC suggests that the Court may determine the merits of the instant contempt motion and assess the
appropriate sanction pursuant to the governmental unit regulatory exception to the automatic bankruptcy stay, 11
U.S.C. § 362(b)(4), but under the "exception to the exception," any effectuation or enforcement of such sanction
should be stayed. *See* ECF 165 at 5; ECF 170 at 1 n.2, 9–10; *S.E.C. v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000).

Court, Southern District of Florida. *See* ECF 159. Rensin immediately filed a suggestion of

bankruptcy in this Court and claimed that these proceedings were automatically stayed pursuant

to § 362(a) of the Bankruptcy Code. *Id.* The FTC opposed. ECF 160.

On March 6, 2017, this Court denied Rensin's motion to hold the post-hearing briefing

schedule in abeyance, ECF 161. The Court determined that the automatic bankruptcy stay was

inapplicable pursuant to the governmental unit regulatory power exception of 11 U.S.C. §

362(b)(4). ECF 166. Rensin has filed a Notice of Interlocutory Appeal. *See* ECF 167.

The Court now proceeds to determine the merits of the instant contempt motion.

## FINDINGS OF FACT

After holding the January 4, 2017 hearing and reviewing the parties' submissions, the

Court makes the following findings of fact:

## A. This Court Found Defendant in Contempt of the Consent Order and Ordered Him to Pay $13,400,627.60 as a Compensatory Sanction

1.  The Court has jurisdiction over the subject matter of this case and each of the parties.
    Venue is appropriate.

2.  On February 22, 2008, the FTC brought this action against BlueHippo Funding, LLC and
    BlueHippo Capital, LLC (collectively, "BlueHippo") pursuant to Section 13 of the FTC
    Act, 15 U.S.C. § 53(b), for alleged violations of federal statutes and regulations. ECF 1.

3.  On April 9, 2008, the parties consented to the entry of a Stipulated Final Judgment and
    Order of Permanent Injunction (the "Consent Order"). ECF 2.

4.  On July 27, 2010, this Court found "BlueHippo in civil contempt for violating the
    Consent Order by failing to disclose material terms relating to its Store Credit Policy"
    (the "July 2010 Contempt Order"). ECF 76 at 9. The Court held Rensin, BlueHippo's

2

CEO, liable for BlueHippo's contempt; and held Rensin and BlueHippo jointly and

severally liable for $609,856.38 in consumer harm caused by the violations. *Id.* at 11–12.

5.  On appeal, the Second Circuit upheld the contempt finding, but determined that this

Court had incorrectly calculated the damages. ECF 86-1 at 12–13; *F.T.C. v. BlueHippo*

*Funding, LLC*, 762 F.3d 238, 246 (2d Cir. 2014).

6.  The Second Circuit held that once the FTC makes the proper showing, it is entitled to a

presumption of consumer reliance in compensatory contempt proceedings. ECF 86-1 at

9–10; *BlueHippo*, 762 F.3d at 244–45. The Second Circuit vacated the damages award

and remanded for determination of whether the presumption applied. ECF 86-1 at 13;

*BlueHippo*, 762 F.3d at 246. Upon a finding that the FTC had made a sufficient showing,

the Second Circuit instructed the District Court to "use the defendants' gross receipts as a

baseline for calculating the actual loss to consumers caused by defendants' conduct" and

"give the defendants the opportunity to rebut the determined baseline loss calculation."

ECF 86-1 at 13; *BlueHippo*, 762 F.3d at 246.

7.  On November 6, 2015, after briefing and oral argument, the Court held that the

presumption of consumer reliance applied, and that BlueHippo's gross revenue of

$14,062,627.51 was the appropriate compensatory baseline. ECF 103 at 7–8.

8.  Rensin proffered rebuttal evidence to offset the baseline, ECF 107, certain categories of

which the FTC moved *in limine* to exclude. ECF 120.

9.  The Court held a telephonic hearing after the parties fully briefed the issue on April 6,

2016. ECF 131. During the hearing, the Court made several minor adjustments and

found that Rensin was liable for $13,400,627.60 in compensatory damages. *Id.*

10. The Court directed the FTC to submit a proposed order memorializing its oral rulings,

3

which the FTC did on April 13, 2016.  ECF 131 at 12; ECF 138 at 1.

11.     Rensin objected to the form of the FTC's proposed order, including to the language

        affirmatively ordering Rensin to pay, and attached a proposed judgment that did not

        contain any affirmative obligation to pay.  ECF 136; ECF 136-2.

12.     On April 19, 2016, the Court issued a Final Judgment Imposing Compensatory Contempt

        Sanctions in the amount of $13,400,627.60 (the "April 19, 2016 Order").  ECF 139.

13.     In an accompanying opinion, the Court "adopt[ed] the [FTC's] Proposed Final Judgment

        (with a few typographical corrections), since it is an accurate recitation of the procedural

        history and the Court's oral order of April 6, 2016, which resolved all open disputes."

        ECF 138 at 1.  The Court also held that "Rensin's objections are denied as meritless."  *Id.*

14.     On May 18, 2016, Rensin filed a Notice of Appeal.  ECF 140.  He raised two issues, both

        pertaining to the Court's refusal to permit discovery regarding certain offsets.  *F.T.C. v.*

        *BlueHippo Funding, LLC*, No. 16-1599 (2d Cir. Aug. 29, 2016), ECF 30 at 1–2.  The

        appeal is pending.

   **B.  The April 19, 2016 Final Judgment Imposing Compensatory Contempt Sanctions**
       **Was Clear and Unambiguous**

15.     Section I.B.1 obligated Rensin to pay $8,000,000 to the FTC, to be deposited into the

        Redress Fund, within seven days of entry of the Final Judgment.  ECF 139 at 6.

16.     Section I.B.2 required Rensin to secure the remaining balance of $5,400,627.60 within

        thirty days, to be subsequently turned over to the FTC for deposit into the Redress Fund

        "[u]pon motion of the FTC and upon proof that the Initial Redress Sum will be

        exhausted."  *Id.* at 6–8.

17.     Section I.C specified that should Rensin fail to satisfy either condition, "he [was] ordered

4

to immediately pay the full amount of the judgment ($13,400,627.60) to the Commission to be deposited into the Redress Fund." *Id.* at 8.

### C. **Defendant Has Not Paid Nor Secured Any Portion of the $13,400,627.60**

18. As of April 26, 2016, Rensin had paid the FTC none of the $8,000,000 required to comply with Section I.B.1 of the April 19, 2016 Order. ECF 148 ¶ 6.

19. Nor has Rensin paid the FTC any money required to comply with Section I.C of the April 19, 2016 Order. *Id.*; *see also* Hearing Tr. 24:12–15, Jan. 4, 2017, ECF 156.

### D. **Defendant Has Assets**

20. Notwithstanding his contention that he is without assets, Rensin enjoys a comfortable lifestyle. He lives in a 5,000(+) square foot home in Florida, which he purchased in September 2014 for $940,000 without a mortgage. FTC Ex. 1 at 4; Hearing Tr. at 29–31.

21. Rensin is the grantor and a beneficiary of an irrevocable trust (the "Joren Trust") that owns two offshore annuities valued at approximately $1,700,000 and $300,000. FTC Ex. 1 at 8; Hearing Tr. at 24–28, 57–60.

22. As sole beneficiary of the Joren Trust, Rensin receives $15,000 each month. FTC Ex. 2 at 4; Hearing Tr. at 24–28, 60–61.

23. Rensin has several investment and bank accounts, including an individual retirement account at TD Ameritrade and a checking account at Regions Bank. FTC Ex. 1 at 6; FTC Ex. 24 at 1; Hearing Tr. at 28, 49. In an ironic twist of fate, Rensin testified that his decision to move his money into a checking account at Regions Bank stemmed from Wells Fargo's deceptive and deceitful consumer practices of charging him for accounts opened without his consent. Hearing Tr. at 40–41, 47–50.

24. Rensin has a BarclayCard credit card account. FTC Ex. 12; FTC Ex. 29; FTC Ex. 30.

5

25.     Since the April 19, 2016 Order, Rensin has used his BarclayCard credit card to finance

his lifestyle, including airfare, hotels, restaurants, as well as a lease of a Lexus ES 350

with monthly payments of $517.70. *See* FTC Ex. 1 at 6–7; FTC Ex. 11; FTC Ex. 12;

FTC Ex. 29; FTC Ex. 30; Hearing Tr. at 37–39.

## CONCLUSIONS OF LAW

**I.      Contempt Sanctions are Available for Failure to Comply with the April 19, 2016
Order**

Contempt sanctions are appropriate "for the violation of courts' orders to render payment

[where] the reliefs are usually the kinds that are traditionally available in equity." *Ecopetrol S.A.*

*v. Offshore Exploration and Prod. LLC*, 172 F. Supp. 3d 691, 695 (S.D.N.Y. 2016). Orders for

monetary consumer redress as a compensatory contempt sanction is a form of disgorgement. *See*

*BlueHippo*, 762 F.3d at 245 ("We held first that disgorgement, or equitable restitution, was the

proper measure of damages . . . Our holding today adheres to this framework. That we required

a different method for calculating disgorgement in *Verity* from that which we are endorsing

today merely reflects the material factual disparities between the two cases." (discussing *F.T.C.*

*v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006)). Orders under Section 13(b) of the FTC Act are

equitable in nature, even where they grant consumer restitution, and "comport[] with the

equitable remedy of disgorgement." *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359 at 372, 365,

373–75 (2d Cir. 2011) (noting that Section 13(b) "carries with it the full range of equitable

remedies, including the power to grant consumer redress").

The FTC brought this action under Section 13(b) seeking equitable remedies. *See* ECF 1.

Indeed, the Second Circuit characterized the consumer redress sought *in this action* as a form of

disgorgement or equitable restitution, the recovery of which is available through contempt

6

damages, irrespective of the fact that calculation of the measure of loss in this case "begins with the defendants' gross receipts derived from such contumacious conduct." *BlueHippo*, 762 F.3d at 245. Contempt sanctions are available for a violation of the April 19, 2016 Order. *See Bronson*, 654 F.3d at 373. The FTC is not limited to the remedies provided by the Federal Debt Collection Procedures Act or Fed. R. Civ. P. 69(a), as Rensin erroneously contends; furthermore, Rensin's subsequent argument that Florida state law exempts his assets from execution under either remedy is irrelevant.[2] *See id.*; *see also* 28 U.S.C. § 3003(c)(8)(C) ("This [Federal Debt Collection Procedure] chapter shall not be construed to supersede or modify the operation of . . . the authority of a court . . . to exercise the power of contempt under any Federal law."); *S.E.C. v. Aragon Capital Advisors, L.L.C.*, No. 07-CV-919 (FM), 2011 WL 3278907, at \*7 (S.D.N.Y. July 26, 2011) (state law exemptions have "no bearing on [Defendant's] obligations pursuant to the Final Judgment" and "cannot save [Defendant] from a finding of contempt").

These contempt proceedings fall within the governmental unit exception to the automatic bankruptcy stay. *See* ECF 166; 11 U.S.C. § 362(b)(4). Even though the FTC may not effectuate or enforce any contempt sanctions ordered herein prior to resolution of Rensin's bankruptcy, that does not bar this Court from determining that Rensin is in contempt of the April 19, 2016 Order, and if so, what the appropriate sanctions should be. *See S.E.C. v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (under § 362(b)(4) exception, SEC could seek finding of liability and appropriate sanction, but effort to enforce sanction through court order directing defendant to repatriate assets "fits within the exception to the governmental unit exception and . . . violates the

---

[2] Rensin claims that, in contrast to an equitable disgorgement order enforceable through contempt sanctions, the April 19, 2016 Order is a money judgment for compensatory damages and enforceable only through a writ of execution, as per Fed. R. Civ. P. 69(a), or as a debt via garnishment, pursuant to the Federal Debt Collection Procedures Act ("FDCPA"). *See* ECF 151 at 10–14; ECF 169 at 15–19. This is consistent with Rensin's efforts to shield and secrete his assets so he can avoid paying restitution to the poor people he has bilked.

automatic stay"); *S.E.C. v. Miller*, 808 F.3d 623, 632–33 (2d Cir. 2015) (asset freeze order did not "rise to the level of impermissible *enforcement* of a money judgment" and thus fell within governmental unit exception) (emphasis in original) ("We did not intend in *Brennan* to impose a one-factor timing test whereby orders entered pre-judgment are always exempt from the automatic stay provision while orders entered (or with continuing force) post-judgment are always subject to the stay."); *S.E.C. v. Bilzerian*, 131 F.Supp.2d 10, 14–15 (D.D.C. 2001) (civil contempt proceeding imposing sanction of defendant's incarceration until he provided full accounting of assets did not violate automatic stay: court did not require payment of disgorgement or seizure of assets, but rather, addressed whether defendant complied with temporary purgation conditions); *S.E.C. v. Kenton Capital, Ltd.*, 983 F. Supp. 13, 15 (D.D.C. 1997) (where automatic bankruptcy stay is inapplicable, a court may "take actions consistent with a civil contempt proceeding" despite its inability to require payment of disgorgement or enforcement of a judgment while bankruptcy is pending) ("The Court has the right to determine whether or not defendant [] has defrauded the Court by not paying the disgorgement due well before the bankruptcy stay. Although the filing of the bankruptcy petition has frustrated the ability of the Commission to collect the disgorgement, the Court can properly limit its inquiry into how the future damage to the Commission can be mitigated."). Rensin's bankruptcy filing does not strip this Court of its ability to exercise its civil contempt powers to vindicate its authority. *See Bilzerian*, 131 F. Supp. at 14–15; *see also CBS Broadcasting, Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) ("The contempt power serves to protect the due and orderly administration of justice and to maintain the authority and dignity of the court.") (internal quotations, alternation, and citations omitted).

8

## II.  Rensin is in Contempt of the April 19, 2016 Judgment and Order

"[T]o hold an alleged contemnor in [civil] contempt, the court need only (1) have entered a clear and unambiguous order, [and] (2) find it established by clear and convincing evidence that the order was not complied with." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d. Cir 1995). The alleged contemnor then bears the burden of "clearly establish[ing] his inability to comply with the terms of the order." *Id.*

### A.  The April 19, 2016 Order Clearly and Unambiguously Ordered Rensin to Pay

The underlying order which serves as the basis of a contempt finding must "be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985)). "To be clear and unambiguous, an order must leave 'no uncertainty in the minds of those to whom it is addressed.'" *In re MarketXT Holdings Corp.*, 336 B.R. 39, 51 (Bankr. S.D.N.Y. 2006) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

Rensin contends, without citing any legal authority, that "the issue is whether the order itself is unambiguously an order of disgorgement as to Rensin such that state law exemptions would not apply," and that the April 19, 2016 Order is "on its face [] ambiguous as to whether it is a disgorgement as to Rensin."[3] ECF 169 at 19–20. This first argument misunderstands the legal standard. *See Terry*, 886 F.2d at 1352. The second is simply incorrect and belied by the plain text of the April 19, 2016 Order.

---

[3] To the extent Rensin maintains his contentions that he did not understand the April 19, 2016 Order to affirmatively obligate him to pay, *see* Hearing Tr. at 22:18–23:25, they are insufficient in light of the unambiguous plain text and the fact that Rensin explicitly objected to wording affirmatively ordering him to pay and submitted a proposed order without such affirmative obligation, which the Court rejected. *See* ECF 136 at 2, ECF 136-2, ECF 138.

The April 19, 2016 Order clearly specifies Rensin's obligations. First, "Rensin is ordered to turn over the sum of eight million dollars ($8,000,000) to the Commission to be deposited into the Redress Fund within seven (7) days of entry of this Final Judgment." ECF 139 at Section I.B.1. Then, Rensin must secure the balance of $5,400,627.60 through a letter of credit or bond, *id.* at Section I.B.2., to be subsequently turned over to the FTC for deposit into the Redress Fund "upon motion of the FTC and upon proof that the Initial Redress Sum will be exhausted." *Id.* at Section I.B.3. Finally, should Rensin "fail to satisfy the conditions set forth in either Section I.B.1. or Section I.B.2., he is ordered to immediately pay the full amount of the judgment ($13,400,627.60) to the Commission." *Id.* at Section I.C.

This language affirmatively commands Rensin to pay the FTC, and is "specific and definite enough to apprise [Rensin] of the conduct that is being proscribed." *Terry*, 886 F.2d at 1352. The April 19, 2016 Order is thus clear and unambiguous. *See Huber*, 51 F.3d at 10.

**B. Rensin Has Not Complied with the April 19, 2016 Order**

There is no dispute that Rensin has paid no money to the FTC. *See* Hearing Tr. at 24. Rensin's failure to pay the FTC $8,000,000 by April 26, 2016 constituted a violation of Section I.B.1. and triggered his obligation to comply with Section I.C. His subsequent failure to pay $13,400,627.60 constituted a violation of Section I.C. The evidence of Rensin's noncompliance with the April 19, 2016 Order is clear and convincing. *See Huber*, 51 F.3d at 10.

**C. Rensin Has Not Established Inability to Comply**

Since Rensin has not complied with a clear and unambiguous order imposing monetary sanctions, he now bears the burden as the alleged contemnor to show "complete inability, due to poverty or insolvency, to comply." *Id.* "[I]nability to pay is a defense only when it is *impossible for the contemnor to pay any portion* of the ordered disgorgement; '[o]therwise, the party must

10

pay what he or she can.'" *S.E.C. v. Zubkis*, 2003 WL 22118978, at * 4 (S.D.N.Y. Sept. 11, 2003) (emphasis added) (quoting *S.E.C. v. Musella*, 818 F. Supp. 600, 602 (S.D.N.Y. 1993). "[A] mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt." *Musella*, 818 F. Supp. at 602. "This burden is satisfied by making 'in good faith all reasonable efforts to comply.' We construe this requirement strictly." *Id.* at 609 (quoting *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir.) and holding that substantial, diligent or "in good faith" efforts are insufficient to rebut a prima facie showing of contempt). A party must demonstrate impossibility of compliance, and financial inability to make any payment, "categorically and in detail." *Id.* (quoting *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)).

Rensin now contends that his bankruptcy petition, filed two days before his post-hearing submissions were due, demonstrates his inability to comply with the April 19, 2016 Order because once he filed, "all of his assets, even those Rensin claims as exempt, [became] at least initially part of the 'bankruptcy estate' under 11 U.S.C. § 541." ECF 169 at 21. But where a contempt proceeding is not subject to the automatic bankruptcy stay, an alleged contemnor, even after filing for bankruptcy, may still have ability to pay in the contempt inquiry context. *See Kenton*, 983 F.Supp. at 16–17 (holding defendant in civil contempt where he filed for bankruptcy after effectuation of court order ordering him to pay disgorgement) ("Defendant [] has not met his burden of proving that he lacks financial ability to pay the disgorgement at this time, or at any time since the court order in this case. To the contrary, it is clear to the Court that [defendant] has had more than sufficient funds or assets to make the required payment, but has either dispersed or spent the funds and assets with no credible explanation as to what other obligations he has which would take precedence over the obligations to the court.").

11

Rensin's argument that he does not control, and thus cannot liquidate, the Joren Trust's offshore annuities, *see* ECF 151 at 20–21; ECF 169 at 21–22, is does not establish inability to pay. *See F.T.C. v. Affordable Media*, 179 F.3d 1228, 1240–41 (9th Cir. 1999) (affirming finding of civil contempt where district court determined defendants, despite their removal as co-trustees of offshore trust, "remained in control of the trust and rejected their assertion that compliance with the repatriation provisions of the trust was impossible" and noting "especially high" burden of proving impossibility defense in asset protection foreign trust context). Rensin's contention that Florida statutory law exempts some assets is irrelevant to his ability to pay. *See* ECF 151 at 21; *Aragon*, 2011 WL 3278907, at *7.

Since the April 19, 2016 Order, Rensin has controlled various assets and decided to spend money on travel, food, a luxury car rental, and hotels. *See* Findings of Fact, Section D, *supra* at 20 − 25.[4] Any of these assets could have be used to make payments, however small, towards satisfaction of the April 19, 2016 Order. *See Zubkis*, 2003 WL 22118978, at *4 ("So long as [Defendant] has any assets that can be used to pay down the disgorgement order against him, [he] is in continuing contempt."); *Kenton*, 983 F. Supp. at 16–17. Furthermore, no law or case cited by Rensin suggests an argument that he can continue to live in a $900,000 home while this judgment goes completely unsatisfied.

Rensin has not met his burden of establishing "complete inability, due to poverty or insolvency, to comply." *Huber*, 51 F.3d at 10.

The Court finds Rensin in contempt of the April 19, 2016 Order.

**III.    Sanctions**

---

[4] Moreover, three weeks after the evidentiary contempt hearing, Rensin apparently traded his leased 2016 Lexus for a 2017 model with a $150 per month higher payment. See ECF 169-2 at 57–58.

12

"In a civil contempt proceeding, the district court has broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions." *EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001) (internal quotations and citations omitted). "When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Terry*, 886 F.2d at 1353.

The FTC argues that incarceration is the sole sanction likely to coerce Rensin's compliance: "the specter of this Court's judgment has done nothing to curtail Rensin's lavish lifestyle," as exhibited by Rensin's continued expenditure of money "at an exorbitant rate" since the Court set the compensatory baseline in November 2015.[5] ECF 147 at 1, 6, 7–8. After determining that incarceration is the appropriate sanction, the FTC urges, the Court should stay effectuation of the incarceration order pursuant to the bankruptcy stay, and set it to expire automatically upon termination or alteration of the stay by either the Bankruptcy Court or operation of law. *See* ECF 160; ECF 165; ECF 170 at 10; *Brennan*, 230 F.3d at 71; *Miller*, 808 F.3d at 632–33; *Bilzerian*, 131 F.Supp.2d at 14–15.

Prior to filing his bankruptcy petition, Rensin argued that incarceration was a severe and disproportionate sanction: he urged the Court to consider that the $15,000 monthly annuity payments are his sole source of income, the full liquidation of which would make him a "ward of the state;" and that selling his home would "render him destitute." ECF 151 at 21–23. Now,

---

[5] For example, just ten days after the compensatory baseline was set at $14 million, Rensin leased a 2016 Lexus with payments of $517.70 per month, and from then through September 2016, has charged "between $5,983.99 and $21,949.15 per month on one of his credit card accounts." ECF 147 at 6.

13

Rensin contends that this Court cannot even determine whether he is in contempt until the Bankruptcy Court determines whether the April 19, 2016 Order is dischargeable; doing otherwise would make Rensin "the subject of a non-purgeable contempt order." ECF 169 at 9–11.

But again, Rensin fails to understand that his bankruptcy filing does not deprive this Court of its authority to make a civil contempt finding and determine the appropriate sanction. *See Kenton*, 983 F.Supp. at 16–17; *Bilzerian*, 131 F. Supp. at 14–15; *CBS Broadcasting, Inc.*, 814 F.3d at 98. In any case, since the Court determines that the appropriate sanction is a command for Rensin to meet and negotiate in good faith with the FTC a payment schedule, Rensin will be able to satisfy the purgation conditions.

As ordered below, in determining the appropriate sanction and ordering that effectuation be stayed, and set to expire automatically upon the termination or alteration of the bankruptcy stay by either the Bankruptcy Court or operation of law, this Court goes no farther than permitted by *Brennan* and its progeny. *See Brennan*, 230 F.3d at 71.

The Court GRANTS the part of the FTC's motion seeking to hold Rensin in contempt, and DENIES the part of the FTC's motion seeking to incarcerate Rensin. As outlined below, the Court will order Rensin to, within 30 days, meet in good faith with the FTC and negotiate a payment schedule, pursuant to which he shall pay the FTC a portion of the April 19, 2016 Order each month. The Court does not believe that a reduction in his monthly annuity payments of $15,000, or the sale of his $900,000 home, or changing his lease to a non-luxury car would impoverish Rensin. Over 87% of the households in this country live on an annual income of less than $150,000; few live in a $900,000 home or lease Lexus cars. *See* Bernadette D. Proctor, *et al.*, Table A-1, *Income and Poverty in the United States: 2015*, United States Census Bureau

14

(Sept. 2016), www.census.gov/library/publications/2016/demo/p60-256.html.   Indeed, the United States' 2015 median household income was $56,516. *See id.*

Should Rensin fail to comply with the order below, the Court may impose additional sanctions, including incarceration.  The Court will order that effectuation of the sanction is stayed; such stay shall expire immediately upon termination or alteration of the bankruptcy stay by either the Bankruptcy Court or operation of law.

## ORDER

I.    **Sanction for Contempt Relief**

**IT IS HEREBY ORDERED** that:

A.    Within 30 days of this Order, Defendant Joseph K. Rensin must meet with the FTC and negotiate in good faith a payment schedule, pursuant to which Defendant shall pay the FTC a portion of the April 19, 2016 Order each month, to be deposited into the Redress Fund.

B.    Should Defendant fail to comply with Section **I.A.**, additional sanctions, including incarceration, may be imposed.

II.    **Stay of Effectuation of Sanction**

**IT IS FURTHER ORDERED** that effectuation of the sanction set forth in this Order is stayed.  The stay shall dissolve immediately upon termination or modification of the automatic stay under 11 U.S.C. § 362(c) or (d).

III.    **Retention of Jurisdiction**

**IT IS FURTHER ORDERED** that this Court retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

15

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART the FTC's motion.

The parties are directed to notify the Court within seven days of the final order in the bankruptcy proceedings. The Clerk is directed to terminate all open motions.

Dated: New York, New York
March 28, 2017

SO ORDERED

PAUL A. CROTTY
United States District Judge

16